**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SEADRILL LIMITED, *et al.*,[1] | ) | Case No. 17-60079 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**FEE EXAMINER'S REPORT REGARDING REVIEW OF THE FIRST INTERIM FEE
APPLICATIONS SCHEDULED FOR HEARING ON MAY 8, 2018
[Relates to Docket Nos. 1042, 1046, 1049, 1050, 1052, 1060, 1061, 1065, 1066, 1067, 1068,
1069, 1070, 1073, and 1074]**

TO THE HONORABLE DAVID R. JONES, UNITED STATES BANKRUPTCY JUDGE:

Charles A. Beckham, Jr., in his capacity as the fee examiner (the "Fee Examiner") in the

Chapter 11 Cases of Seadrill Limited and its debtor affiliates (collectively, the "Debtors"), files

this report (the "Examiner Report") pursuant to the Court's *Order Appointing Fee Examiner and*

*Establishing Procedures for Consideration of Requested Fee Compensation and Reimbursement*

*of Expenses* [Docket No. 1057] (the "Fee Examiner Order").

**Preliminary Statement[2]**

1.     This Examiner Report concerns the fourteen (14) first interim fee applications

(each a "Fee Application," and collectively, the "Fee Applications") of:  (1) Kirkland & Ellis

LLP and Kirkland & Ellis International LLP [Docket No. 1061]; (2) Alvarez & Marsal North

America and Alvarez & Marsal Europe [Docket No. 1042]; (3) KPMG LLP [Docket No. 1049];

---

[1] Due to the large number of Debtors in these Chapter 11 cases (the "Chapter 11 Cases"), for which joint
administration has been granted, a complete list of the Debtors and the last four digits of their tax identification,
registration, or like numbers is not provided herein.  A complete list of such information may be obtained on the
website of the Debtors' claims and noticing agent at http://cases.primeclerk.com/Seadrill.  The location of Debtor
Seadrill Americas, Inc.'s principal place of business and the Debtors' service address in the Chapter 11 Cases is
11025 Equity Drive, Suite 150, Houston, Texas 75201.

[2] Capitalized terms used but not defined in this Preliminary Statement have the meanings ascribed to such terms
below.

(4) PricewaterhouseCoopers LLP [Docket No. 1050]; (5) Conyers Dill & Pearman Limited [Docket No. 1051]; (6) Skadden, Arps, Slate, Meagher & Flom LLP [Docket No. 1052]; (7) Slaughter and May [Docket No. 1060] (8) Willkie Farr & Gallagher LLP [Docket No. 1046]; (9) Baker Tilly Virchow Krause LLP [Docket No. 1070]; (10) Kramer Levin Naftalis & Frankel LLP [Docket No. 1065]; (11) Cole Schotz P.C. [Docket Nos. 1066, 1073, 1074]; (12) Perella Weinberg Partners LP [Docket No. 1067]; (13) Advokatfirmaet Selmer DA [Docket No. 1068]; and (14) FTI Consulting, Inc. [Docket No. 1069] (each, an "Applicant," and collectively, the "Retained Professionals" or the "Applicants").  In total, the Retained Professionals seek approval of approximately $37,422,800.25 in fees and approximately $2,322,800.25 in expenses for work performed during the period from approximately September 12, 2017 to December 31, 2017 (the "First Interim Period").  The fees and expenses requested by each of the Applicants are summarized on the attached **Exhibit A**.

2.     After the Court entered the Fee Examiner Order, the Fee Examiner sent a memorandum to all the Retained Professionals to explain his duties, request certain documents, and provide a schedule of his review.  After the Retained Professionals filed the Fee Applications and began providing their Fee Detail to the Fee Examiner, the Fee Examiner and his counsel reviewed the Fee Applications for compliance with the Review Guidelines.  After this review, the Fee Examiner and his counsel held the Initial Conferences with the applicable Retained Professionals to discuss their Fee Applications.  Following the Initial Conferences, the Applicants had the ability to submit additional information regarding their fee and expense requests.  The Fee Examiner then served his Initial Reports on certain of the Applicants pursuant to the Fee Examiner Order.

3.      The Fee Examiner continues to discuss the Fee Applications with certain of the Retained Professionals.  In light of the approaching deadline for the Retained Professionals to file Final Fee Applications, subject to the Court's approval the Fee Examiner and the Retained Professionals other than KPMG LLP and Willkie Farr & Gallagher LLP (collectively, the "Consenting Professionals") have agreed to continue the hearing on the Consenting Professionals' Fee Applications until the hearing to consider the Consenting Professionals' Final Fee Applications.  Pending the hearing on the Final Fee Applications, the Fee Examiner consents to the continued hold back of five percent (5%) of the fees requested in the Consenting Professionals' Fee Applications and disbursement of the remaining fifteen percent (15%) of fees requested in the Fee Applications that have been held back to date (the "Holdback Disbursement").[3]  Nonetheless, the Fee Examiner submits this Examiner Report pursuant to the Fee Examiner Order.

4.      The Fee Examiner has reviewed each of the Fee Applications and, except as described below, discussed the Fee Applications with each of the Retained Professionals.  As discussed in further detail below, the Fee Examiner did not identify any questions or concerns with respect to the Fee Application filed by KPMG LLP ("KPMG").  The Fee Examiner therefore supports entry of an order approving the Fee Application filed by KPMG.  In addition, the Fee Examiner reviewed the Fee Application filed by Willkie Farr & Gallagher LLP ("Willkie") and raised a small number of questions regarding certain of the time entries in Willkie's Fee Application.  The Fee Examiner conferred with Willkie to discuss these questions on April 23, 2018.  Following the discussion, Willkie provided the Fee Examiner with additional information regarding the time entries questioned by the Fee Examiner.  Based on the additional

---

[3] For the avoidance of doubt, the Fee Examiner only consents to payment of the Holdback Disbursement to the Consenting Professionals.

information provided by Willkie, the Fee Examiner's questions were resolved. The Fee Examiner therefore supports entry of an order approving Willkie's Fee Application.

**Background**

**A.   The Chapter 11 Cases**

5.    On September 12, 2017 (the "Petition Date"), the Debtors commenced the Chapter 11 Cases in the United States Bankruptcy Court for the Southern District of Texas, Victoria Division (the "Court"). On September 22, 2017, the United States Trustee for Region 7 (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") for the Chapter 11 Cases. *See* Docket No. 175.

6.    On April 17, 2018 (the "Confirmation Date"), the Court entered the *Order Confirming the Second Amended Joint Plan (as Modified) of Reorganization of Seadrill Limited and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1181] (the "Confirmation Order"). Pursuant to the *Second Amended Joint Plan (as Modified) of Reorganization of Seadrill Limited and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, attached to the Confirmation Order as Exhibit A (the "Plan"), "[a]ll requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than 45 days after the Confirmation Date." Plan, art. II.B. Accordingly, final applications for approval of fees and expenses incurred during the Chapter 11 Cases (the "Final Fee Applications") are due by June 1, 2018.

**B.   The Interim Compensation Procedures**

7.    On October 31, 2017, the Court entered the *Order Establishing Procedures for Interim Compensation and Reimbursement of Professionals* [Docket No. 389] (the "Interim

Compensation Order"). Under the Interim Compensation Order, each Professional (as defined in the Interim Compensation Order) seeking compensation may file a Monthly Fee Statement (as defined in the Interim Compensation Order) for interim allowance of compensation for services rendered and reimbursement of expenses incurred during a given month on or after the twenty-first (21st) day of each month following the month for which compensation is sought. *See* Interim Compensation Order, ¶ 2.a. Upon the expiration of a twenty-one (21) day objection period, the Debtors are authorized and directed to pay the Retained Professional an amount equal to eighty percent (80%) of the fees and one-hundred percent (100%) of the expenses requested in the applicable Monthly Fee Statement that are not subject to an objection. *Id.* ¶ 2.b.

8.      The Interim Compensation Order further provides that Retained Professionals may file Interim Fee Applications (as defined in the Interim Compensation Order) for compensation and reimbursement of expenses at three (3) month intervals beginning with the period ending December 31, 2017. *Id.* ¶ 2.e. Upon the Court's allowance of a Retained Professional's Interim Fee Application, the Debtors are authorized and directed to promptly pay such Retained Professional all requested fees and expenses not previously paid, including the twenty percent (20%) of fees held back for previously submitted Monthly Fee Statements. *Id.* ¶ 2.f.

**C.      The Appointment of the Fee Examiner**

9.      On March 8, 2018, the Court entered the Fee Examiner Order, appointing Charles A. Beckham, Jr. as the Fee Examiner *nunc pro tunc* to February 1, 2018. *See* Docket No. 1057. On March 13, 2018, the Fee Examiner filed the *Fee Examiner's Application for Entry of an Order Authorizing the Employment and Retention of Haynes and Boone LLP as Counsel to the Fee Examiner Nunc Pro Tunc to February 1, 2018* [Docket No. 1075]. On March 28, 2018, the

Court entered the *Order Authorizing the Employment and Retention of Haynes and Boone LLP as Counsel to the Fee Examiner* Nunc Pro Tunc *to February 1, 2018* [Docket No. 1101].

**D.      The Fee Examiner Order**

10.      The Fee Examiner Order directs the Fee Examiner to review any interim fee application or final fee application served by each Retained Professional in the Chapter 11 Cases. The Fee Examiner Order also provides that the Fee Examiner may serve an Initial Report (as defined in the Fee Examiner Order) upon each Applicant within forty-five (45) days after the Applicant files an interim fee application or final fee application.  The Initial Report is:

> designed to quantify and present factual data and legal issues relevant to whether the requested fees, disbursements, and expenses are in compliance with the applicable standards of sections 330 and 331 of the Bankruptcy Code and whether the Applicant has made a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the U.S. Trustee Guidelines.

Fee Examiner Order, ¶ 5.c.

11.      The Fee Examiner Order further requires the Fee Examiner to file an Examiner Report (as defined in the Fee Examiner Order) at least seven (7) days prior to any hearing on any interim fee applications or final fee applications.  The Examiner Report is:

> designed to (i) quantify and present factual data and legal issues relevant to whether the requested fees and expenses of each applicable Retained Professional are in compliance with the applicable standards of sections 330 and 331 of the Bankruptcy Code, (ii) inform the Court, in general terms, of all issues raised in any Initial Report that have been consensually resolved and the nature of such resolution, and (iii) inform the Court, in general terms, of all issues raised in any Initial Report that have not yet been resolved.

Fee Examiner Order, ¶ 5.d.

E.      **The Fee Applications**

12.      Between March 7, 2018 and March 13, 2018, the Retained Professionals filed their Fee Applications.  *See* Docket Nos. 1042, 1046, 1049, 1050, 1052, 1060, 1061, 1065, 1066, 1067, 1068, 1069, 1070, 1073, and 1074.  On March 19, 2018, the Debtors filed the *Omnibus Notice of Hearing on First Interim Fee Applications of Professionals for Allowance and Payment of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses Incurred* [Docket No. 1082] (the "Notice").  As indicated in the Notice, the Court has scheduled a hearing (the "Fee Hearing") to consider the Fee Applications on May 8, 2018 at 11:00 a.m. (Central Time).

<b><u>Review Procedure</u></b>

13.      Shortly after entry of the Fee Examiner Order, on March 13, 2018, the Fee Examiner sent a memorandum to all of the Retained Professionals.  The memorandum explained the Fee Examiner's duties in the Chapter 11 Cases, requested certain documents, and provided a general schedule for reviewing the Fee Applications.  A copy of the memorandum is attached hereto as **Exhibit B**.  The memorandum also requested that the Retained Professionals submit to the Fee Examiner:  (i) their Fee Applications in Adobe Acrobat format, (ii) any legal electronic data exchange standards ("LEDES") information containing time entries and expense detail as required by the Fee Examiner Order, (iii) billing policies, if any, and (iv) their engagement letters with their respective clients.

14.      The Fee Examiner Order requires the Retained Professionals to provide the Fee Examiner the fee detail containing the daily time entries and the expense detail (the "Fee Detail") in the LEDES electronic format within three (3) business days after the Retained Professionals file Monthly Fee Statements, Interim Fee Applications, or Final Fee Applications.  Certain of the

Retained Professionals were unable to provide their Fee Detail for the Fee Applications in the LEDES electronic format. For such Retained Professionals, the Fee Examiner agreed to accept their Fee Detail in Microsoft Excel format.

15. After the Retained Professionals filed the Fee Applications and began providing their Fee Detail, the Fee Examiner and his counsel reviewed the Fee Applications for compliance with sections 330 and 331 of the Bankruptcy Code, the applicable orders approving the retention of the Retained Professionals, the applicable guidelines for fee applications promulgated by the U.S. Trustee (the "U.S. Trustee Guidelines"), and the Uniform Texas Rules for Complex Chapter 11 Bankruptcy Cases[4] (collectively, the "Review Guidelines"). The Fee Examiner and his counsel undertook a line-by-line review of the Fee Applications and used certain software to review the Fee Detail to assist with identifying time entries and expense items that may not comply with the Review Guidelines.

16. The Fee Examiner and his counsel then developed a list of questions and concerns regarding the Fee Applications that the Fee Examiner presented to each of the Applicants, except with respect to the Fee Application filed by KPMG. From April 20, 2018 to April 24, 2018, the Fee Examiner and his counsel engaged in initial discussions with each Applicant regarding their respective Fee Application (each, an "Initial Conference," and collectively, the "Initial Conferences"). During the Initial Conferences, the Fee Examiner presented the Applicants with the results of the review of the Fee Applications and raised questions regarding certain fee and expense requests, including specific examples of fee and expense requests that did not comply

---

[4] Pursuant to Bankruptcy Local Rule 1075-1, the United States Bankruptcy Court for the Southern District of Texas Procedures for Complex Chapter 11 Bankruptcy Cases (the "Southern District Complex Case Procedures") apply to the Chapter 11 Cases. The Southern District Complex Case Procedures provide that the Court subscribes to the Uniform Texas Rules for Complex Chapter 11 Bankruptcy Cases.

with the Review Guidelines.   In some instances, following the Initial Conferences, the Applicants submitted additional information regarding certain fee and expense requests.

17.     On April 26, 2018, the Fee Examiner served initial reports on certain of the Applicants (each, an "Initial Report," collectively, the "Initial Reports") pursuant to the Fee Examiner Order.[5]  The Fee Examiner did not serve an Initial Report on KPMG or Willkie. [6]

18.     The circumstances of the Chapter 11 Cases are unique given that the Court has confirmed the Plan.  Under the Plan, the Retained Professionals must file Final Fee Applications by June 1, 2018.  While the Fee Examiner continues to discuss the Fee Applications with the Retained Professionals, in light of the entry of the Confirmation Order and the June 1, 2018 deadline for the Retained Professionals to file Final Fee Applications, the Fee Examiner submits it would a more efficient use of the Court's and the Retained Professionals' time to consolidate any hearing on the Fee Applications and the Final Fee Applications into one hearing.  Therefore, subject to the Court's approval, the Fee Examiner and the Consenting Professionals have agreed to continue the hearing on the Consenting Professionals' Fee Applications until the hearing to consider the Final Fee Applications.  The Fee Examiner conferred with the Office of the U.S. Trustee, and the Office of the U.S. Trustee indicated that the U.S. Trustee has no objection to the deferral of the hearing on the Fee Applications to the hearing on the Final Fee Applications. Pending the hearing on the Final Fee Applications, the Fee Examiner consents to the payment of the Holdback Disbursement to the Consenting Professionals.   Although the Consenting

---

[5] Specifically, the Fee Examiner sent an Initial Report to (1) Kirkland & Ellis LLP and Kirkland & Ellis International LLP; (2) Alvarez & Marsal North America and Alvarez & Marsal Europe; (3) PricewaterhouseCoopers LLP; (4) Conyers Dill & Pearman Limited; (5) Skadden, Arps, Slate, Meagher & Flom LLP; (6) Slaughter and May; (7) Baker Tilly Virchow Krause LLP; (8) Kramer Levin Naftalis & Frankel LLP; (9) Cole Schotz P.C.; (10) Perella Weinberg Partners LP; (11) Advokatfirmaet Selmer DA; and (12) FTI Consulting, Inc.

[6] Because the Fee Examiner supports entry of an order approving KPMG's and Willkie's Fee Applications, the Fee Examiner did not serve an Initial Report on KPMG or Willie and did not continue any discussions with KPMG and Willkie regarding their Fee Applications.

Professionals will receive the Holdback Disbursement, the Fee Examiner believes the remaining five percent (5%) plus the twenty percent (20%) of the Applicants' fees held back for Monthly Fee Statements for January 2018 through April 17, 2018 are sufficient to protect the Debtors' estates with respect to any Applicant's non-compliance with the Review Guidelines.

### Initial Observations and Common Issues

19.      In reviewing the fees and expenses, the Fee Examiner and his counsel considered the complexity of the Chapter 11 Cases, the requirements for requesting fees and expenses in complex Chapter 11 cases, and the extraordinary legal circumstances presented in the Chapter 11 Cases.  Professional services must be both reasonable and necessary to the estate, regardless of circumstances, and the professional applying for compensation bears the burden of proving reasonableness.  *See Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Charles N. Wooten, Ltd. (In re Evangeline Ref. Co.)*, 890 F.2d 1312, 1326 (5th Cir. 1989) (explaining that "an application must be sufficiently detailed and accurate that, in conjunction with any proceeding in connection therewith and the record in the case, a court can make an independent evaluation as to what level of fees are actual, necessary and reasonable") (citing *In re Lawler*, 807 F.2d 1207, 1212 (5th Cir. 1987)); *see also In re Fibermark*, 349 B.R. 385, 395 (Bankr. Vt. 2006) (stating also "the applicant must present a carefully detailed application" to support an application for fees).

20.      The Fee Examiner and his counsel identified certain categories of time entries that did not comply with the Review Guidelines or for which the Fee Examiner required additional information to assess the necessity or reasonableness of the particular time entry.  The Fee Examiner and his counsel then identified and compiled time entries in each of the Fee Applications into one of the categories described below.  Certain of the Fee Applications raised additional issues that were unique to the individual Retained Professional's retention and the

particular services provided.  The Fee Examiner and his counsel also reviewed each Retained Professional's expenses and identified any requested expenses that did not appear to comply with the Review Guidelines or for which the Fee Examiner required additional information to assess the necessity or reasonableness of the particular expense request.  The following is a description of the categories of time entries and expenses for which the Fee Examiner identified issues or requested additional information from the Applicants.

A.      **Staffing**

21.      Certain of the Retained Professionals billed for instances in which numerous professionals attended hearings, meetings, or conference calls.  While there may be justification for more than a few professionals from a single firm to attend the same hearing, meeting, or conference call, those occasions should be uncommon.  *See, e.g., In re CCT Comms., Inc.*, No. 07-10210 (SMB), 2010 WL 3386947, at *10 (Bankr. S.D.N.Y. Aug. 24, 2010) ("[T]wo or more lawyers billing their time attending the same conference is [not] *per se* unreasonable.   In particular, the early stages of a chapter 11 case are often chaotic, require the performance of multiple tasks in a compressed time frame, and hence, necessitate frequent communication among lawyers in the same firm, between the lawyers and the client, and where required, between general and special counsel.").  Indeed, a firm may send as many partners, associates, and staff to a hearing or meeting as it likes, but estate compensation for multiple attendees should be supported by a compelling showing of each timekeeper's contributory role.  *See id.* (allowing multi-lawyer billing when the professionals were "heavily involved in the strategy and execution of the strategy [of the case]"); *see also In re Fibermark, Inc.*, 349 B.R. at 396 ("[W]hen a professional seeks compensation for meetings and conferences among multiple

professionals . . . the professional must demonstrate the benefit [to] the estate and document consistent amounts of time by all participants.").

**B.      Vague and Repetitive Time Entries**

22.     The U.S. Trustee Guidelines require a time entry, regardless of the amount of time, to contain sufficient information to identify the purpose of the work or the benefit to the Debtors' estate.  *See also Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326 (5th Cir. 1995) (stating that when adjusting a lodestar amount "the district court may properly reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review"); *In re Gemini Interests LLC*, No. 11-38815, at *4 (Bankr. S.D. Tex. Feb. 27, 2015) (explaining when considering the reasonableness of time entries under a lodestar evaluation that "time entries that are vague, duplicative, excessive, or fall outside of the professionals' appointment authority should be excluded. . . ."); *In re CCT Comms., Inc.*, 2010 WL 3386947, at *7 ("The failure to provide sufficient details to allow the court to perform its task of determining the nature and value of the time spent by the attorney for the debtor while engaged in those telephone calls compels a conclusion that they are not compensable.") (quoting *In re Citrone Dev. Corp.*, 16 B.R. 359 (Bankr. S.D.N.Y. 1989)).  Additionally, to be compensable, the Applicants should draft the time entries with sufficient detail to enable the Court to determine if the particular timekeeper complied with applicable Bankruptcy Code sections, rules, standards, and guidelines.  The U.S. Trustee Guidelines provide that generally, "attention to" or "read" followed by a general term is not sufficient detail to recommend estate compensation.  Further, narrative time entries that are duplicative or repetitive are inherently vague because these entries do not contain sufficient information to conclude that such identical work was reasonable and

necessary to the Debtors' estates.  These patterns also raise concerns that the timekeeper failed to keep accurate and contemporaneous records, leading to the repetitive or vague entries.

## C.      Seniority of Professionals Performing Work

23.      During the review of the Fee Applications, the Fee Examiner and his counsel identified certain instances in which partners or other higher billing rate professionals performed work that associates or lower billing rate professionals could have performed.  Such instances include preliminary drafting, research projects, document review, or other similar work.  Entries such as these require further explanation regarding why partners or higher billing rate professionals performed this work because the Fee Examiner must consider "whether the task at hand could have been performed competently by a less experienced professional at a lower cost to the estate." *In re Fibermark, Inc.*, 349 B.R. at 396.

## D.      Lumping; Failure to Bill in Increments of One-Tenth of an Hour

24.      Proper time record keeping enables the Court to determine the reasonableness of the work performed and any "uncertainties due to poor record-keeping will be resolved against the applicant." *See In re Poseidon Pools of America*, 216 B.R. 98, 100–01 (E.D.N.Y. 1997); *see also In re Digerati Techs., Inc.*, 537 B.R. 317, 334 (Bankr. S.D. Tex. 2015) (explaining that under the lodestar approach, "lumped entries prevent a court from accurately determining how many hours were reasonably billed") (citing *In re 900 Corp.*, 327 B.R. 585, 598 (Bankr. N.D. Tex. 2005) ("When time entries are vague or lumped together, such that the Court cannot determine how much time was spent on particular services, then the Applicant has not met its burden to show that its fees are reasonable.")).   The U.S. Trustee Guidelines require professionals to record time spent in tenth of an hour increments.  Block billing and lumping

violate these guidelines when the time entry is greater than a half hour increment for a particular time entry and not separated into tenth of an hour increments for each discrete task.

**E.**     **Invoicing**

25.     The U.S. Trustee Guidelines do not allow professionals to seek compensation for reviewing or revising time records or preparing, reviewing, or revising invoices.  The Fee Examiner has reviewed the Applications to determine whether any of the Applicants has requested compensation for these tasks.

**F.**     **Expenses**

26.     In reviewing the expenses requested in the Fee Applications, the Fee Examiner utilized a rubric applicable to travel expenses and identified:  (i) lodging expenses generally exceeding $350.00 in cities other than New York City and London; (ii) lodging expenses exceeding $500.00 in New York City and London; and (iii) international airfare expenses exceeding $9,000.00.

27.     As with the review of time entries, the Fee Examiner reviewed any vague or repetitive expenses.  Examples of vague expense requests are entries for which only the merchant and amount of the expense was provided and entries for travel expenses that failed to include origination or destination points.

## The Fee Applications

**A.**     **Debtors' Professionals**

i.     *Kirkland & Ellis LLP and Kirkland & Ellis International LLP*

28.     On September 29, 2017, the Debtors filed the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc

Pro Tunc *to the Petition Date* [Docket No. 192] (the "Kirkland Retention Application").   On October 31, 2017, the Court entered the *Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 366] (the "Kirkland Retention Order").

29.    On March 9, 2018, Kirkland & Ellis LLP and Kirkland & Ellis International LLP ("Kirkland") filed *the First Interim Fee Application of Kirkland & Ellis LLP and Kirkland & Ellis International LLP, Attorneys for the Debtors and Debtors in Possession, for the Period from September 12, 2017 Through and Including December 31, 2017* [Docket No. 1061] (the "Kirkland Fee Application").   In the Kirkland Fee Application, Kirkland seeks approval of fees of $10,913,123.00 and expenses of $477,935.28.   In the Kirkland Fee Application, Kirkland indicates that it discounted its fees by $354,021.50 and its expenses by $95,477.33 for the First Interim Period.  *See* Kirkland Fee Application, ¶ 69.

30.    In the Kirkland Retention Application, Kirkland describes its services as principal counsel to the Debtors as follows:

- advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

- advising and consulting on the conduct of these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

- attending meetings and negotiating with representatives of creditors and other parties in interest;

- taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

- preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

- representing the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

- advising the Debtors in connection with any potential sale of assets;

- appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

- advising the Debtors regarding tax matters;

- taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto;

- advising and consulting on the conduct of any proceedings ancillary to these chapter 11 cases;

- performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors; and (iii) advising the Debtors on corporate and litigation matters; and

- advising certain direct and indirect subsidiaries of the Debtors and non-Debtors with respect to matters related to the Debtors' restructuring.

*See* Kirkland Retention Application, ¶ 9.

31.     In the Kirkland Fee Application, Kirkland indicates that its timekeepers performed 12,662.70 hours of work at a blended rate of $923.41 per hour for professionals and $345.06 per hour for paraprofessionals.  *See* Kirkland Fee Application, at 3 of 1157.

32.     On April 20, 2018, the Fee Examiner and his counsel participated in the Initial Conference with Kirkland to discuss the Kirkland Fee Application.  The Fee Examiner and his counsel presented their observations regarding Kirkland's compliance with the Review Guidelines in the Kirkland Fee Application.  The Fee Examiner and his counsel also raised

questions regarding certain time entries and expenses.  Following the Initial Conference, Kirkland provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Initial Conference.

33.     The Fee Examiner and Kirkland continue to discuss the Kirkland Fee Application. To facilitate continued discussions regarding the Kirkland Fee Application and in light of the approaching deadline for final fee applications in the Chapter 11 Cases, Kirkland and the Fee Examiner have agreed to continue the hearing on the Kirkland Fee Application until the hearing on Kirkland's final fee application.  Pending the hearing on Kirkland's final fee application, the Fee Examiner consents to the payment of the Holdback Disbursement to Kirkland.

ii.     *Alvarez & Marsal North America, LLP and Alvarez & Marsal Europe LLP*

34.     On September 30, 2017, the Debtors filed the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Alvarez & Marsal North America, LLP and Alvarez & Marsal Europe LLP as Financial Advisors* Nunc Pro Tunc *to the Petition Date* [Docket No. 204] (the "Alvarez Retention Application").  On October 31, 2017, the Court entered the *Order Authorizing the Retention and Employment of Alvarez & Marsal North America, LLP and Alvarez & Marsal Europe LLP as Financial Advisors* Nunc Pro Tunc *to the Petition Date* [Docket No. 371] (the "Alvarez Retention Order").

35.     On March 9, 2018, Alvarez & Marsal North America, LLP and Alvarez & Marsal Europe LLP ("Alvarez") filed the *First Interim Fee Application of Alvarez & Marsal North America, LLP and Alvarez & Marsal Europe LLP as Financial Advisors for the Debtors and Debtors in Possession, for the Period from September 13, 2017 Through and Including December 31, 2017* [Docket No. 1042] (the "Alvarez Fee Application").  In the Alvarez Fee Application, Alvarez seeks approval of fees of $6,895,760.00 and expenses of $753.532.47.  In

the Alvarez Fee Application, Alvarez does not indicate that it applied any discounts to its fee and expense requests for the First Interim Period.

36.     In the Alvarez Retention Application, Alvarez describes its services as financial advisor to the Debtors as follows:

- providing assistance to the Debtors in the preparation of financial-related disclosures required by the Court, including the Debtors' Schedules of Assets and Liabilities, Statements of Financial Affairs and Monthly Operating Reports;

- providing assistance with the identification and implementation of short-term cash management procedures;

- providing assistance with identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the affirmation or rejection of each;

- providing assistance to Debtors' management team and counsel focused on the coordination of resources related to the ongoing reorganization effort;

- providing assistance in the preparation of financial information for distribution to creditors and others, including, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which Court approval is sought;

- attending meetings and providing assistance in discussions with potential investors, banks, and other secured lenders, any official committee(s) appointed in these chapter 11 cases, the United States Trustee, other parties in interest and professionals hired by same, as requested;

- analyzing creditor claims by type, entity, and individual claim, including assisting with development of databases, as necessary, to track such claims;

- assisting in the preparation of information and analysis necessary for the confirmation of a plan of reorganization in these chapter 11 cases, including information contained in the disclosure statement;

- providing assistance in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers;

- providing expert witness testimony on case related issues as required by the debtors; and

- rendering such other general business consulting or such other assistance as Debtors' management or counsel may deem necessary consistent with the role of a financial advisor to the extent that it would not be duplicative of services provided by other professionals in this proceeding.

*See* Alvarez Retention Application, ¶ 11.

37.     In the Alvarez Fee Application, Alvarez indicates that its timekeepers performed 12,820.80 hours of work at a blended rate of $543.93 per hour for professionals and $300.00 per hour for paraprofessionals.  *See* Alvarez Fee Application, at 3 of 20.

38.     On April 23, 2018, the Fee Examiner and his counsel participated in the Initial Conference with Alvarez to discuss the Alvarez Fee Application.  The Fee Examiner and his counsel presented their observations regarding Alvarez's compliance with the Review Guidelines in the Alvarez Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.  Following the Initial Conference, Alvarez provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Initial Conference.

39.     The Fee Examiner and Alvarez continue to discuss the Alvarez Fee Application. To facilitate continued discussions regarding the Alvarez Fee Application and in light of the approaching deadline for final fee applications in the Chapter 11 Cases, Alvarez and the Fee Examiner have agreed to continue the hearing on the Alvarez Fee Application until the hearing on Alvarez's final fee application.  Pending the hearing on Alvarez's final fee application, the Fee Examiner consents to the payment of the Holdback Disbursement to Alvarez.

iii.     *PricewaterhouseCoopers LLP*

40.     On September 29, 2017, the Debtors filed the *Debtors' Application for Entry of an Order Authorizing the Employment and Retention of PricewaterhouseCoopers LLP as Independent Auditor for the Debtors Effective* Nunc Pro Tunc *to the Petition Date* [Docket No.

194] (the "PwC Retention Application").  On October 31, 2017, the Court entered the *Order Authorizing the Employment and Retention of PricewaterhouseCoopers LLP as Independent Auditor to the Debtors Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 367] (the "PwC Retention Order").

41.    On March 7, 2018, PricewaterhouseCoopers LLP ("PwC") filed the *First Interim Application of PricewaterhouseCoopers LLP as Independent Auditors to the Debtors for Allowance of Compensation and Reimbursement of Expenses* [Docket No. 1050] (the "PwC Fee Application").  In the PwC Fee Application, PwC seeks approval of fees of $1,228,296.25 and expenses of $18,134.94.  In the PwC Fee Application, PwC did not indicate that it discounted its fees or its expenses for the First Interim Period.

42.    In the PwC Retention Application, PwC describes its services as independent auditors to the Debtors as follows:

For Debtors Seadrill Limited and North Atlantic Drilling Limited

- Auditing the consolidated financial statements of the Debtors at December 31, 2017 and for the year then ending, auditing the effectiveness of the Debtors' internal control over financial reporting as of December 31, 2017, and providing Debtors with an integrated audit report related to those financial statements;

- Conducting interim reviews for each of the first three quarterly periods in the year ending December 31, 2017;

- Communicating with the audit committee and management about any matters that PwC UK believed may require material modifications to the quarterly financial information to make it conform with accounting principles generally accepted in the United States;

- Examining evidence supporting the amounts and disclosures in the financial statements, assessing accounting principles used and significant estimates made by management, and evaluating the overall financing statement presentation; and

- Performing certain incremental audit and review procedures in connection with the Chapter 11 Cases, including, but not limited to, analyzing the Debtors' identification of pre and postpetition liabilities, reviewing the Debtors'

consolidated financial statements and reorganization expenses, performing controls testing of new or modified controls established during the bankruptcy process, and providing accounting advice regarding the adoption of debtor in possession accounting.

For Debtors North Atlantic Drilling UK Ltd. and North Atlantic Support Services Limited

- Performing statutory audit services for the financial year ending December 31, 2017 and subsequent years.

*See* PwC Retention Application, ¶ 9.

43.     In the PwC Fee Application, PwC indicates that its timekeepers performed 3,349.30 hours of work at a blended rate of $366.73 per hour for professionals.  *See* PwC Fee Application, at 3.

44.     On April 20, 2018, the Fee Examiner and his counsel participated in the Initial Conference with PwC to discuss the PwC Fee Application.  The Fee Examiner and his counsel presented their observations regarding PwC's compliance with the Review Guidelines in the PwC Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.  Following the Initial Conference, PwC provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Initial Conference.

45.     The Fee Examiner and PwC continue to discuss the PwC Fee Application.  To facilitate continued discussions regarding the PwC Fee Application and in light of the approaching deadline for final fee applications in the Chapter 11 Cases, PwC and the Fee Examiner have agreed to continue the hearing on the PwC Fee Application until the hearing on PwC's final fee application.  Pending the hearing on PwC's final fee application, the Fee Examiner consents to the payment of the Holdback Disbursement to PwC.

iv.   *Conyers Dill & Pearman Limited*

46.    On September 30, 2017, the Debtors filed the *Debtors' Application for Entry of an Order Pursuant to Section 327(e) of the Bankruptcy Code Authorizing and Approving Employment and Retention of Conyers Dill & Pearman Limited as Special Bermuda Counsel for the Debtors Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 200] (the "Conyers Retention Application").  On October 31, 2017, the Court entered the *Order Pursuant to Section 327(e) of the Bankruptcy Code Authorizing and Approving Employment and Retention of Conyers Dill & Pearman Limited as Special Counsel for the Debtors Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 370] (the "Conyers Retention Order").

47.    On March 7, 2018, Conyers Dill & Pearman Limited ("Conyers") filed the *First Interim Fee Application of Conyers Dill & Pearman Limited, Special Bermuda Counsel for the Debtors and Debtors in Possession, for the Period from September 13, 2017 Through and Including December 31, 2017* [Docket No. 1051] (the "Conyers Fee Application").  In the Conyers Fee Application, Conyers seeks approval of fees of $311,804.25 and expenses of $7,044.67.  In the Conyers Fee Application, Conyers did not indicate that it discounted its fees or its expenses for the First Interim Period.

48.    In the Conyers Retention Application, Conyers describes its services as special Bermuda counsel to the Debtors as follows:

- Commencing parallel liquidation proceedings in Bermuda pursuant to the Companies Act 1981 of Bermuda;

- Appointing joint provisional liquidators;

- Treating shares of Seadrill Limited, North Atlantic Drilling Limited, and Sevan Drilling Limited as well as the commencement of parallel proceeding to implement the transaction steps set forth in the restructuring support agreement;

- Conducting an ongoing review and analysis of various laws of Bermuda; and

- Advising and representing the Debtors on all aspects of Bermuda restructuring and insolvency law.

*See* Conyers Retention Application, ¶¶ 9–10.

49.     In the Conyers Fee Application, Conyers indicates that its timekeepers performed 471.75 hours of work at a blended rate of $652.00 per hour for professionals and $150.00 per hour for paraprofessionals.  *See* Conyers Fee Application, at 3.

50.     On April 24, 2018, the Fee Examiner and his counsel participated in the Initial Conference with Conyers to discuss the Conyers Fee Application.  The Fee Examiner and his counsel presented their observations regarding Conyers' compliance with the Review Guidelines in the Conyers Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.  Following the Initial Conference, Conyers provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Initial Conference.

51.     The Fee Examiner and Conyers continue to discuss the Conyers Fee Application. To facilitate continued discussions regarding the Conyers Fee Application and in light of the approaching deadline for final fee applications in the Chapter 11 Cases, Conyers and the Fee Examiner have agreed to continue the hearing on the Conyers Fee Application until the hearing on Conyers' final fee application.  Pending the hearing on Conyers' final fee application, the Fee Examiner consents to the payment of the Holdback Disbursement to Conyers.

v.     *Skadden, Arps, Slate, Meagher & Flom LLP*

52.     On September 29, 2017, the Debtors filed the *Debtors' Application for Order Under 11 U.S.C. § 327(e) Authorizing Employment of Skadden, Arps, Slate, Meagher & Flom LLP and Affiliates as Special Counsel* Nunc Pro Tunc *to the Petition Date* [Docket No. 197] (the

"Skadden Retention Application").   On November 1, 2017, the Court entered the *Order Authorizing Employment of Attorneys* [Docket No. 390] (the "Skadden Retention Order").   The Skadden Retention Order required that "[a]ny barrister retained [by Skadden] . . . shall submit time entries in 0.1 hourly increments."  *See* Skadden Retention Order, ¶ 6.

53.   On March 7, 2018, Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") filed the *First Interim Fee Application of Skadden, Arps, Slate, Meagher & Flom LLP as Debtors' Special Counsel for Compensation for Services Rendered and Reimbursement of Expenses* [Docket No. 1052] (the "Skadden Fee Application").  In the Skadden Fee Application, Skadden seeks approval of fees of $1,368,663.24 (not including VAT), expenses of $632,657.62 (not including VAT), and VAT of $313,206.21.  Skadden's expense request includes the fees of the barristers Skadden retained in connection with its representation of the Debtors.   In the Skadden Fee Application, Skadden indicates that it discounted its fees by five percent (5%) for the First Interim Period, consistent with prepetition practice.  *See* Skadden Fee Application, ¶ 34(a).

54.   In the Skadden Retention Application, Skadden describes its services as special counsel to the Debtors as follows:

- Advising the Debtors on regulatory-compliance matters connected to their Brazilian businesses, including analyzing and counseling Debtors on risks arising under the U.S. Foreign Corrupt Practices Act, the UK Bribery Act, and other anticorruption laws; and

- Representing the Debtors in connection with an arbitration proceeding arising from agency agreements, developing strategies for the arbitration and addressing issues in connection with the proceeding.

*See* Skadden Fee Application, ¶¶ 19–22.

55.      In the Skadden Fee Application, Skadden indicates that its timekeepers performed 1,930.20[7] hours of work at a blended rate of $801.27 per hour for professionals and $301.38 per hour for paraprofessionals.  *See* Skadden Fee Application, at 22–23.

56.      On April 23, 2018, the Fee Examiner and his counsel participated in the Initial Conference with Skadden to discuss the Skadden Fee Application.  The Fee Examiner and his counsel presented their observations regarding Skadden's compliance with the Review Guidelines in the Skadden Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.  Following the Initial Conference, Skadden provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Initial Conference.

57.      The Fee Examiner and Skadden continue to discuss the Skadden Fee Application. To facilitate continued discussions regarding the Skadden Fee Application and in light of the approaching deadline for final fee applications in the Chapter 11 Cases, Skadden and the Fee Examiner have agreed to continue the hearing on the Skadden Fee Application until the hearing on Skadden's final fee application.  Pending the hearing on Skadden's final fee application, the Fee Examiner consents to the payment of the Holdback Disbursement to Skadden.

vi.      *Slaughter and May*

58.      On September 30, 2017, the Debtors filed the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Slaughter and May as Special Corporate Counsel* Nunc Pro Tunc *to the Petition Date* [Docket No. 201] (the "Slaughter and May Retention Application").  On October 31, 2017, the Court entered the *Order Authorizing the*

---

[7] In the coversheet to the Skadden Fee Application, Skadden indicates that the total hours worked in the First Interim Period total 1,930.20.  *See* Skadden Fee Application, at 1 of 410.  In the body of the Skadden Fee Application, Skadden indicates that the hours worked during the First Interim Period total 1,927.60.  *See* Skadden Fee Application, ¶ 14.

*Retention and Employment of Slaughter and May as Special Corporate Counsel* Nunc Pro Tunc *to the Petition Date* [Docket No. 374] (the "Slaughter and May Retention Order").

59.     On March 9, 2018, Slaughter and May filed the *First Interim Fee Application of Slaughter and May as Special Corporate Counsel to the Debtors and Debtors in Possession for the Period from September 12, 2017 Through and Including  December 31, 2017* [Docket No. 1060] (the "Slaughter and May Fee Application").  In the Slaughter and May Fee Application, Slaughter and May seeks approval of fees of £2,244,169.55 (or approximately $3,096,953.98[8]) and expenses of £54,532.05 (or approximately $75,254.23).   In the Slaughter and May Fee Application, Slaughter and May indicates it provided a seven and one-half percent (7.5%) volume discount to its fees for the First Interim Period.  *See* Slaughter and May Fee Application, at 268 of 353.

60.     In the Slaughter and May Retention Application, Slaughter and May describes its services as special corporate counsel to the Debtors as follows:

- drafting, reviewing and agreeing the full form documents  required  to implement:

    o   the proposed restructuring of the Debtors' existing bank debt; and

    o   the recapitalization of the Debtors with the Debtors' group of existing bank lenders and new money investors under the terms of the Restructuring Support Agreement and the Investment Agreement, including the terms of credit facility agreements, notes indentures, intercreditor agreements, contribution agreements, cash pooling agreements and other finance and security documents;

- providing further work relating to the ring-fencing of certain of the Debtors' non- majority owned affiliates;

---

[8] The Slaughter and May Fee Application states:  "All USD amounts in this application are provided for illustrative purposes only and shall not be determinative of the amount of fees and expenses requested in this application for which reference should be made to the relevant GBP amounts herein. Such USD amounts have been calculated using the GBP-USD exchange rate applicable as at 9 March, 2018 (being 1.38 USD: 1 GBP)."  *See* Slaughter and May Fee Application, at 2.

- implementing the restructuring of the group of companies comprising Seadrill and its subsidiaries pursuant to the Restructuring Support Agreement;

- providing advice in respect of, and drafting and reviewing documents in respect of the arrangements of Seadrill and certain of its subsidiaries with SFL;

- providing advice in respect of the Debtors' strategy concerning the hedging of its liabilities under various contractual arrangements following the completion of the Debtors' Chapter 11 Cases, and drafting documents to implement this hedging strategy;

- considering and evaluating any alternative proposals in respect of a restructuring of the Debtors' existing bank debt and bond debt and/or a recapitalization of the Debtors, including to the extent that such alternative proposals are explored as part of the Chapter 11 "go-shop" process;

- providing advice on an ongoing basis in respect of the Debtors' compliance with the Initial Consent and Waiver Terms throughout the duration of the Debtors' Chapter 11 Cases;

- providing advice in respect of the involvement of AOD in the proposed restructuring of the Debtors' existing bank debt and the recapitalization of the Debtors; and

- providing additional English law work connected with the Debtors' Chapter 11 Cases.

*See* Slaughter and May Retention Application, ¶ 7.

61.     In the Slaughter and May Fee Application, Slaughter and May indicates that its timekeepers performed 4,766.70 hours of work at a blended rate of £470.80 (or approximately $649.70) per hour for professionals. *See* Slaughter and May Fee Application, at 2 of 353.

62.     On April 24, 2018, the Fee Examiner and his counsel participated in the Initial Conference with Slaughter and May to discuss the Slaughter and May Fee Application. The Fee Examiner and his counsel presented their observations regarding Slaughter and May's compliance with the Review Guidelines in the Slaughter and May Fee Application. The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.

Following the Initial Conference, Slaughter and May provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Initial Conference.

63.     The Fee Examiner and Slaughter and May continue to discuss the Slaughter and May Fee Application.  To facilitate continued discussions regarding the Slaughter and May Fee Application and in light of the approaching deadline for final fee applications in the Chapter 11 Cases, Slaughter and May and the Fee Examiner have agreed to continue the hearing on the Slaughter and May Fee Application until the hearing on Slaughter and May's final fee application.  Pending the hearing on Slaughter and May's final fee application, the Fee Examiner consents to the payment of the Holdback Disbursement to Slaughter and May.

   vii.    *KPMG LLP*

64.     On September 29, 2017, the Debtors filed the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of KPMG LLP to Provide Tax Provision and Tax Consulting Services* Nunc Pro Tunc *to the Petition Date* [Docket No. 195] (the "KPMG Retention Application").  On October 31, 2017, the Court entered the *Order Authorizing the Retention and Employment of KPMG LLP to Provide Tax Provision and Tax Consulting Services* Nunc Pro Tunc *to the Petition Date* [Docket No. 368] (the "KPMG Retention Order").

65.     On March 7, 2018, KPMG filed the *First Interim Fee Application of KPMG LLP for Compensation for Services Rendered and Reimbursement of Expenses to Provide Tax Provision and Tax Consulting Services to the Debtors and Debtors in Possession for the Period from September 12, 2017 Through December 31, 2017* [Docket No. 1049] (the "KPMG Fee Application").  In the KPMG Fee Application, KPMG seeks approval of fees of $134,238.70 and expenses of $0.00.  In the KPMG Fee Application and through provision of receipts for expenses incurred, KPMG indicates that it did not discount its fees but discounted its expenses by

$19,483.93.  *See* KPMG Fee Application, ¶ 8 n.4.  In addition, KPMG did not charge the Debtors for its lodging expenses of $5,814.18.  KPMG's expense discount therefore totals $25,298.11 for the First Interim Period.  With respect to fees, KPMG represents that the fees charged for tax provision services were reduced by approximately fifty percent (50%), and the fees charged for tax consulting services were reduced by thirty-five percent (35%) from, in each case, KPMG's normal and customary rates for the types of services rendered.  *See* KPMG Fee Application, ¶¶ 11–12.  Such rate reductions were consistent with the prepetition engagement letter.  *See* KPMG Fee Application, Exhibit B.

66.    In the KPMG Retention Application, KPMG describes its services as accountant to the Debtors as follows:

- Assisting in gathering necessary year-end tax and financial information and schedules;

- Assisting in the identification and computation of temporary and permanent differences;

- Computing a preliminary income tax provision for Debtors' review and approval;

- Preparing income tax related balance sheet accounts and foot note disclosures for Debtors' review and approval;

- Assisting Debtors in their efforts to work with their independent auditors to draft income tax provision work papers; and

- Providing services with respect to such matters that may arise for which the Debtors seek KPMG's advice, both written and oral.

*See* KPMG Retention Application, ¶ 7.

67.    In the KPMG Fee Application, KPMG indicates that its timekeepers performed 349.30 hours of work at a blended rate of $384.31 per hour for professionals.  *See* KPMG Fee Application, at 5.  The KPMG Interim Fee Application generally complied with the Review Guidelines.  The Fee Examiner did not identify any questions or concerns with respect to the

KPMG Fee Application.  The Fee Examiner supports entry of an order approving the KPMG Fee Application.

**B.      Board of Directors' Professionals**

     i.   *Baker Tilly Virchow Krause, LLP*

68.     On September 29, 2017, the Debtors filed the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Baker Tilly Virchow Krause, LLP as Financial Advisors to the Disinterested Directors of the Board of Directors of Seadrill Limited* Nunc Pro Tunc *to the Petition Date* [Docket No. 196] (the "Baker Tilly Retention Application"). On October 31, 2017, the Court entered the *Order Authorizing the Retention and Employment of Baker Tilly Virchow Krause, LLP as Financial Advisors to the Disinterested Directors of the Board of Directors of Seadrill Limited* Nunc Pro Tunc *to the Petition Date* [Docket No. 373] (the "Baker Tilly Retention Order").

69.     On March 12, 2018, Baker Tilly Virchow Krause, LLP ("Baker Tilly") filed the *First Interim Fee Application of Baker Tilly Virchow Krause, LLP, Financial Advisors to the Disinterested Directors of the Board of Directors of Seadrill Limited, for Allowance of Compensation and Reimbursement of Expenses for the Period from September 12, 2017 Through December 31, 2017* [Docket No. 1070] (the "Baker Tilly Fee Application").  In the Baker Tilly Fee Application, Baker Tilly seeks approval of fees of $2,541,822.00 and expenses of $13,701.65.  In the Baker Tilly Fee Application, Baker Tilly indicates that it discounted its fees by $14,982.00.  *See* Baker Tilly Fee Application, at 11 of 79.  In addition, Baker Tilly indicates that it "incurred fees and expenses not included in the Monthly Fee Statements, totaling approximately 11% of the total fees and expenses incurred during the First Interim Fee Period." *See id.* ¶ 11.

70.     In the Baker Tilly Retention Application, Baker Tilly describes its services as financial advisors to the Disinterested Directors of the Board of Directors of Seadrill Limited as follows:

- Investigating and advising the Disinterested Directors with regards to related party transactions, including financial aspects of claims against related parties; and

- Other matters as mutually agreed by (i) the Disinterested Directors and (ii) Baker Tilly.

*See* Baker Tilly Retention Application, ¶ 6.

71.     In the Baker Tilly Fee Application, Baker Tilly indicates that its timekeepers performed 4,215.80 hours of work at a blended rate of $602.93 per hour for professionals.  *See* Baker Tilly Fee Application, at 3 of 79.

72.     On April 24, 2018, the Fee Examiner and his counsel participated in the Initial Conference with Baker Tilly to discuss the Baker Tilly Fee Application.  The Fee Examiner and his counsel presented their observations regarding Baker Tilly's compliance with the Review Guidelines in the Baker Tilly Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.

73.     The Fee Examiner and Baker Tilly continue to discuss the Baker Tilly Fee Application.  To facilitate continued discussions regarding the Baker Tilly Fee Application and in light of the approaching deadline for final fee applications in the Chapter 11 Cases, Baker Tilly and the Fee Examiner have agreed to continue the hearing on the Baker Tilly Fee Application until the hearing on Baker Tilly's final fee application.  Pending the hearing on Baker Tilly's final fee application, the Fee Examiner consents to the payment of the Holdback Disbursement to Baker Tilly.

ii.     *Willkie Farr & Gallagher LLP*

74.     On September 30, 2017, the Debtors filed the *Debtors' Application for Entry of an Order Pursuant to Section 327(e) of the Bankruptcy Code Authorizing and Approving Employment and Retention of Willkie Farr & Gallagher LLP as Special Counsel to the Conflicts Committees of the Boards of Directors of Debtor Sevan Drilling Limited and DebtorNorth [sic] Atlantic Drilling Limited, Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 198] (the "Willkie Retention Application").  On October 31, 2017, the Court entered the *Order Pursuant to Section 327(e) of the Bankruptcy Code Authorizing and Approving Employment and Retention of Willkie Farr & Gallagher LLP as Special Counsel to the Conflicts Committees of the Boards of Directors of Debtor Sevan Drilling Limited and Debtor North Atlantic Drilling Limited, Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 369] (the "Willkie Retention Order").

75.     On March 7, 2018, Willkie filed the *First Interim Fee Application of Willkie Farr & Gallagher LLP for Compensation for Services and Reimbursement of Expenses as Special Counsel to the Conflicts Committees of the Boards of Directors of Sevan Drilling Limited and North Atlantic Drilling Limited for the Period September 13, 2017 Through December 31, 2017* [Docket No. 1046] (the "Willkie Fee Application").  In the Willkie Fee Application, Willkie seeks approval of fees of $91,665.00 and expenses of $61.05.  *See* Willkie Fee Application, at 13 of 49.  In the Willkie Fee Application, Willkie indicates that it has not discounted its fees or its expenses for the First Interim Period.   In the Willkie Retention Application, Willkie describes its services as special counsel to the Conflicts Committees of the Boards of Directors of Sevan Drilling Limited and North Atlantic Drilling Limited as follows:

- Advising the Conflicts Committees regarding their fiduciary duties and board process generally; and

- Advising the Conflicts Committees in the evaluation of the restructuring cases specifically as they relate to Sevan Drilling Limited and North Atlantic Drilling Limited.

*See* Willkie Retention Application, ¶ 12.

76.     In the Willkie Fee Application, Willkie indicates that its timekeepers performed 111.0 hours of work at a blended rate of $896.81 per hour for professionals and $337.87[9] per hour for paraprofessionals.  *See* Willkie Fee Application, at 2.

77.     On April 23, 2018, the Fee Examiner and his counsel participated in the Initial Conference with Willkie to discuss the Willkie Fee Application.  The Fee Examiner and his counsel presented their observations regarding Willkie's compliance with the Review Guidelines in the Willkie Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.  Following the Initial Conference, Willkie provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Initial Conference.

78.      Based on the additional information provided by Willkie, the Fee Examiner's questions were resolved. Fee Examiner supports entry of an order approving the Willkie Fee Application.

**C.     Committee's Professionals**

i.     *Kramer Levin Naftalis & Frankel LLP*

79.     On October 18, 2017, the Committee filed the *Application of the Official Committee of Unsecured Creditors, Pursuant to Sections 328 and 1103 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2014 for an Order Approving the Retention and Employment of Kramer Levin Naftalis & Frankel LLP as Counsel to the Committee* Nunc Pro

---

[9] The Willkie Fee Application includes blended hourly rates by professionals and paraprofessionals by separate matter.  For purposes of this Examiner Report, the Fee Examiner calculated the blended hourly rates for Willkie's professionals and paraprofessionals on a weighted average basis for all matters.

Tunc *to September 27, 2017* [Docket No. 284] (the "Kramer Retention Application").   On

November 9, 2017, the Court entered the *Order Authorizing and Approving the Employment of*

*Kramer Levin Naftalis & Frankel LLP as Counsel to the Official Committee of Unsecured*

*Creditors* Nunc Pro Tunc *to September 27, 2017* [Docket No. 448] (the "Kramer Retention

Order").

80.     On March 12, 2018, Kramer Levin Naftalis & Frankel LLP ("Kramer") filed the

*First Interim Fee Application of Kramer Levin Naftalis & Frankel LLP, as Counsel for the*

*Official Committee of Unsecured Creditors of Seadrill Limited,* et al.*, for Allowance of*

*Compensation for Professional Services Rendered and for Reimbursement of Actual and*

*Necessary Expenses Incurred for the Period from September 27, 2017 through December 31,*

*2017* [Docket No. 1065] (the "Kramer Fee Application").   In the Kramer Fee Application,

Kramer seeks approval fees of $6,662,323.00 and expenses of $214,629.86.   In the Kramer Fee

Application, Kramer indicates that it discounted its fees by $306,633.00 and its expenses by

$40,275.93 for the First Interim Period.   *See* Kramer Fee Application, at 2 nn.2–3.

81.     In the Kramer Retention Application, Kramer describes its services as counsel to

the Committee as follows:

- the administration of these cases and the exercise of oversight with respect to the Debtors' affairs, including all issues in connection with the Debtors, the Committee and/or these Chapter 11 Cases;

- the preparation on behalf of the Committee of necessary applications, motions, objections, memoranda, orders, reports, and other legal papers;

- appearances in Court, participation in litigation as a party-in-interest, and participation at statutory meetings of creditors to represent the interests of the Committee;

- the negotiation and evaluation of the use of cash collateral, any proposed debtor-in-possession financing and any other potential financing alternatives;

- the negotiation and evaluation of the proposed restructuring support agreement and any other potential alternatives;

- the negotiation, formulation, drafting and confirmation of a plan or plans of reorganization or liquidation and matters related thereto;

- investigation, directed by the Committee, of among other things, unencumbered assets, liabilities, financial condition of the Debtors, prior transactions, and operational issues concerning the Debtors that may be relevant to these Chapter 11 Cases;

- investigation as to the fairness and process by which the Debtors arrived at the terms of the RSA, ring-fencing transactions and prepetition transactions among debtor and non-debtor entities;

- the negotiation and formulation of any proposed sale of any of the Debtors' assets, including pursuant to section 363 of the Bankruptcy Code;

- communications with the Committee's constituents in furtherance of its responsibilities, including, but not limited to, communications required under section 1102 of the Bankruptcy Code; and

- the performance of all of the Committee's duties and powers under the Bankruptcy Code and the Bankruptcy Rules and the performance of such other services as are in the interests of those represented by the Committee.

*See* Kramer Retention Application, ¶ 11.

82.    In the Kramer Fee Application, Kramer indicates that its timekeepers performed 8,383.40 hours of work at a blended rate of $793.00 per hour for professionals and $357.00 per hour for paraprofessionals. *See* Kramer Fee Application, at 2.

83.    On April 23, 2018, the Fee Examiner and his counsel participated in the Initial Conference with Kramer to discuss the Kramer Fee Application. The Fee Examiner and his counsel presented their observations regarding Kramer's compliance with the Review Guidelines in the Kramer Fee Application. The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses. Following the Initial Conference, Kramer provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Initial Conference.

84.     The Fee Examiner and Kramer continue to discuss the Kramer Fee Application. To facilitate continued discussions regarding the Kramer Fee Application and in light of the approaching deadline for final fee applications in the Chapter 11 Cases, Kramer and the Fee Examiner have agreed to continue the hearing on the Kramer Fee Application until the hearing on Kramer's final fee application.  Pending the hearing on Kramer's final fee application, the Fee Examiner consents to the payment of the Holdback Disbursement to Kramer.

    ii.     *Cole Schotz P.C.*

85.     On October 18, 2017, the Committee filed the *Application for Approval of the Employment of Cole Schotz P.C. as Local and Conflicts Counsel to the Official Committee of Unsecured Creditors, Effective as of September 28, 2017* [Docket No. 283] (the "Cole Schotz Retention Application").   On November 9, 2017, the Court entered the *Order Approving Application for Approval of the Employment of Cole Schotz P.C. as Local and Conflicts Counsel to the Official Committee of Unsecured Creditors, Effective September 28, 2017* [Docket No. 449] (the "Cole Schotz Retention Order").

86.     On March 9, 2018, Cole Schotz P.C. ("Cole Schotz") filed the *First Interim Application of Cole Schotz P.C. for Allowance of Compensation for Services Rendered as Local Counsel to the Official Committee of Unsecured Creditors for the Period from September 28, 2017 through December 31, 2017* [Docket No. 1074] (as amended, the "Cole Schotz Fee Application").[10]   In the Cole Schotz Fee Application, Cole Schotz seeks approval of fees of

---

[10] On March 12, 2018, Cole Schotz filed its *First Interim Application of Cole Schotz P.C. for Allowance of Compensation for Services Rendered as Local and Conflicts Counsel to the Official Committee of Unsecured Creditors for the Period from September 28, 2017 through December 31, 2017* [Docket No. 1066].  On March 13, 2018, Cole Schotz filed a corrected *First Interim Application of Cole Schotz P.C. for Allowance of Compensation for Services Rendered as Local and Conflicts Counsel to the Official Committee of Unsecured Creditors for the Period from September 28, 2017 through December 31, 2017* [Docket No. 1073].  On March 13, 2018, Cole Schotz filed a further corrected *First Interim Application of Cole Schotz P.C. for Allowance of Compensation for Services Rendered as Local and Conflicts Counsel to the Official Committee of Unsecured Creditors for the Period from September 28, 2017 through December 31, 2017* [Docket No. 1074].

$519,696.75 and expenses of $24,611.31.  In the Cole Schotz Fee Application, Cole Schotz indicates that it discounted its fees and expenses by a total of $34,174.36 (including a fifty percent (50%) reduction for non-working travel time) for the First Interim Period.  *See* Cole Schotz Fee Application, at 1 n.2.

87.    In the Cole Schotz Retention Application, Cole Schotz describes its services as local and conflicts counsel to the Committee as follows:

- advising the Committee with respect to its rights, duties, and powers in these Chapter 11 cases;

- assisting and advising the Committee in its consultations with the Debtors relative to the administration of these Chapter 11 cases;

- assisting the Committee in analyzing the claims of the Debtors' creditors and the Debtors' capital structure and in negotiating with holders of claims;

- assisting the Committee in its investigation of the acts, conduct, assets, liabilities, and financial condition of the Debtors and of the operation of the Debtors' business;

- assisting the Committee in its investigation of the liens and claims of the Debtors' lenders and the prosecution of any claims or causes of action revealed by such investigation;

- assisting the Committee in its analysis of, and negotiations with, the Debtors or any third-party concerning matters related to, among other things, the assumption or rejection of leases of nonresidential real property and executory contracts, asset dispositions, financing or other transactions, and the terms of one or more plans of reorganization for the Debtors and accompanying disclosure statements and related plan documents;

- assisting and advising the Committee in communicating with unsecured creditors regarding significant matters in these Chapter 11 cases;

- representing the Committee at hearings and other proceedings;

- reviewing and analyzing applications, orders, statements of operations, and schedules filed with the Court and advise the Committee as to their propriety;

- assisting the Committee in preparing pleadings and applications as may be necessary in furtherance of the Committee's interests and objectives;

- preparing, on behalf of the Committee, any pleadings, including without limitation, motions, memoranda, complaints, adversary complaints, objections or comments in connection with any of the foregoing; and

- performing such other legal services as may be required or requested or as may otherwise be deemed in the interests of the Committee in accordance with the Committee's powers and duties as set forth in the Bankruptcy Code, Bankruptcy Rules or other applicable law.

*See* Cole Schotz Retention Application, ¶ 9.

88.     In the Cole Schotz Fee Application, Cole Schotz indicates that its timekeepers performed 1,035.10 hours of work at a blended rate of $526.86 per hour for professionals and $257.96 per hour for paraprofessionals.  *See* Cole Schotz Fee Application, at 1–2.

89.      On April 20, 2018, the Fee Examiner and his counsel participated in the Initial Conference with Cole Schotz to discuss the Cole Schotz Fee Application.  The Fee Examiner and his counsel presented their observations regarding Cole Schotz's compliance with the Review Guidelines in the Cole Schotz Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.  Following the Initial Conference, Cole Schotz provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Initial Conference.

90.     The Fee Examiner and Cole Schotz continue to discuss the Cole Schotz Fee Application.  To facilitate continued discussions regarding the Cole Schotz Fee Application and in light of the approaching deadline for final fee applications in the Chapter 11 Cases, Cole Schotz and the Fee Examiner have agreed to continue the hearing on the Cole Schotz Fee Application until the hearing on Cole Schotz's final fee application.  Pending the hearing on Cole Schotz's final fee application, the Fee Examiner consents to the payment of the Holdback Disbursement to Cole Schotz.

iii.    *Perella Weinberg Partners LP*

91.    On November 1, 2017, the Committee filed the *Application for Entry of an Order Authorizing the Retention and Employment of Perella Weinberg Partners LP as Investment Banker to the Official Committee of Unsecured Creditors,* Nunc Pro Tunc *to October 5, 2017* [Docket No. 400] (the "PWP Retention Application").   On November 27, 2017, the Court entered the *Order Authorizing Employment and Retention of Perella Weinberg Partners LP as Investment Banker for the Official Committee of Unsecured Creditors Effective October 5, 2017 and Modifying Certain Time-Keeping Requirements* [Docket No. 735] (the "PWP Retention Order").   The PWP Retention Order authorized the firm to "keep reasonably detailed time records in half-hour increments."  *See* PWP Retention Order, ¶ 12.

92.    On March 12, 2018, Perella Weinberg Partners LP ("PWP")  filed the *First Interim Fee Application of Perella Weinberg Partners LP for Allowance of Compensation for Services and Reimbursement of Expenses as Investment Banker for the Official Committee of Unsecured Creditors for the Period from October 5, 2017 through December 31, 2017* [Docket No. 1067] (the "PWP Fee Application").  In the PWP Fee Application, PWP seeks approval of fees of $502,419.35 and expenses of $35,707.62.  In the PWP Fee Application, PWP does not indicate that it discounted its fees or expenses for the First Interim Period.

93.     In the PWP Retention Application, PWP describes its services as investment banker to the Committee as follows:

- assisting the Committee in reviewing and analyzing the terms of the Company's proposed restructuring plan and restructuring support agreement, assist the Committee in developing, advancing, reviewing and analyzing alternative proposals for a restructuring;

- assisting the Committee in valuing the Debtors' businesses, securities issued and recoveries under the Debtors' proposed, or any alternative, plan of reorganization;

- assessing and advising the Committee with respect to the Debtors' proposed new money investment led by Hemen Holdings Ltd. and Centerbridge Partners LP and any other proposed new money investment, including structure, terms, valuation and amount of new money required, additionally negotiate with the Debtors and capital providers on the terms of any such new money investments;

- assessing and advising the Committee with respect to the pre-petition new money marketing process and post-petition 'go-shop' marketing process, and identify strategic or financial parties that may not have been identified or pursued by the Debtors;

- providing the Committee and the Committee's counsel with industry expertise (provided by Tudor, Pickering, Holt & Co.) and capital markets perspectives, to assist in evaluating the Debtors' business plan and any proposed plan of reorganization;

- assisting the Committee in evaluating the Debtors' debt capacity and providing the Committee with analysis and advice with respect to any proposed capital structure for the Debtors;

- evaluating, and advising the Committee on, the treatment and impact of any intercompany claims on constituent recoveries under any proposed plan of reorganization;

- meeting with the Committee, the Debtors' management, the Debtors' board of directors, other creditors and equity holders (in each case who are institutional parties or represented by an advisor) to discuss the Debtors' proposed restructuring framework or alternative proposals;

- assisting the Committee in reviewing the value and form of consideration provided to secured creditors under any plan relative to their collateral value;

- assisting the Committee in identifying, assessing and valuing any unencumbered assets of the Debtors' estates;

- participating in hearings before the Bankruptcy Court and provide testimony as required by the Committee; and

- such other investment banking services in connection with a restructuring as Perella Weinberg Partners and the Committee may agree.

*See* PWP Retention Application, ¶ 9.

94.     In the PWP Fee Application, PWP indicates that its timekeepers performed 1,456.50 hours of work at an effective average rate of $345.00[11] per hour for all professionals. *See* PWP Fee Application, at 2–3.

95.     On April 20, 2018, the Fee Examiner and his counsel participated in the Initial Conference with PWP to discuss the PWP Fee Application.  The Fee Examiner and his counsel presented their observations regarding PWP's compliance with the Review Guidelines in the PWP Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.  Following the Initial Conference, PWP provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Initial Conference.

96.     The Fee Examiner and PWP continue to discuss the PWP Fee Application.  To facilitate continued discussions regarding the PWP Fee Application and in light of the approaching deadline for final fee applications in the Chapter 11 Cases, PWP and the Fee Examiner have agreed to continue the hearing on the PWP Fee Application until the hearing on PWP's final fee application.  Pending the hearing on PWP's final fee application, the Fee Examiner consents to the payment of the Holdback Disbursement to PWP.

iv.     *Advokatfirmaet Selmer DA*

97.     On November 1, 2017, the Committee filed the *Application for Approval of the Employment of Advokatfirmaet Selmer DA as Norwegian Counsel to the Official Committee of Unsecured Creditors, Effective as of October 6, 2017* [Docket No. 396] (the "Selmer Retention Application").  On November 29, 2017, the Court entered the *Amended Order Approving Application for Approval of the Employment of Advokatfirmaet Selmer DA as Norwegian*

---

[11] The PWP Fee Application does not include a calculation of the average hourly rates by professionals and paraprofessionals.  For purposes of this Examiner Report, the Fee Examiner calculated the average hourly rates for PWP's professionals and paraprofessionals by dividing the total amount of fees by the total hours worked.

Counsel to the Official Committee of Unsecured Creditors, Effective October 6, 2017 [Docket No. 790] (the "Selmer Retention Order").[12]

98.     On March 12, 2018, Advokatfirmaet Selmer DA ("Selmer") filed the *First Interim Application of Advokatfirmaet Selmer DA for Allowance of Compensation for Services Rendered as Counsel to the Official Committee of Unsecured Creditors for the Period from October 6, 2017 through December 31, 2017* [Docket No. 1068] (as amended, the "Selmer Fee Application").   In the Selmer Fee Application, Selmer seeks approval of fees of NOK[13] 2,237,560.00 (approximately $275,087.29)[14] and expenses of NOK 241.00 (approximately $29.63).   In the Selmer Fee Application, Selmer does not indicate that it discounted its fees and expenses for the First Interim Period.

99.     In the Selmer Retention Application, Selmer describes its services as Norwegian counsel to the Committee as advising the Committee on litigation, insolvency, restructuring, corporate, and regulatory matters concerning Norwegian law.   *See* Selmer Retention Application, ¶ 7.

100.     In the Selmer Fee Application, Selmer indicates its timekeepers performed 620.40 hours of services at a blended rate of NOK 3,609.81 per hour for all professionals.   *See* Selmer Fee Application, at 2.

---

[12] The Selmer Retention Order amended the *Order Approving Application for Approval of the Employment of Advokatfirmaet Selmer DA as Norwegian Counsel to the Official Committee of Unsecured Creditors, Effective October 6, 2017* [Docket No. 446].

[13] The Selmer Fee Application states:  "Rates are charged in Norwegian Kroner ("NOK").  For the purposes of this fee application, estimates have been provided in U.S. dollars at the exchange rate of USD/NOK 8,134."  *See* Selmer Fee Application, at 1 n.2.

[14] On the coversheet to the Selmer Fee Application, Selmer indicates that the fees requested in its Fee Application total $275,087.29.  *See* Selmer Fee Application, at 1 of 114.  In its "Summary of Compensation Requested by Project Category," Selmer indicates that the fees requested in its Fee Application total $278,613.23.  *See* Selmer Fee Application, at 30 of 114.

101.    On April 23, 2018, the Fee Examiner and his counsel participated in the Initial Conference with Selmer to discuss the Selmer Fee Application.  The Fee Examiner and his counsel presented their observations regarding Selmer's compliance with the Review Guidelines in the Selmer Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.  Following the Initial Conference, Selmer provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Initial Conference.

102.    The Fee Examiner and Selmer continue to discuss the Selmer Fee Application. To facilitate continued discussions regarding the Selmer Fee Application and in light of the approaching deadline for final fee applications in the Chapter 11 Cases, Selmer and the Fee Examiner have agreed to continue the hearing on the Selmer Fee Application until the hearing on Selmer's final fee application.  Pending the hearing on Selmer's final fee application, the Fee Examiner consents to the payment of the Holdback Disbursement to Selmer.

v.    *FTI Consulting, Inc.*

103.    On October 27, 2017, the Committee filed the *Application for Entry of an Order Authorizing the Employment and Retention of FTI Consulting, Inc., as Financial Advisor to the Official Committee of Unsecured Creditors* Nunc Pro Tunc *to September 28, 2017* [Docket No. 336] (the "FTI Retention Application").  On November 29, 2017, the Court entered the *Amended Order Authorizing Retention of FTI Consulting, Inc. as Financial Advisor for the Official Committee of Unsecured Creditors* Nunc Pro Tunc *to September 28, 2017* [Docket No. 784] (the "FTI Retention Order").[15]

---

[15] The FTI Retention Order amended the *Order Authorizing Retention of FTI Consulting, Inc. as Financial Advisor for the Official Committee of Unsecured Creditors* Nunc Pro Tunc *to September 28, 2017* [Docket No. 438].

104.    On March 12, 2018, FTI Consulting, Inc. ("FTI") filed the *First Interim Fee Application of FTI Consulting, Inc., for Compensation for Services and Reimbursement of Expenses as Financial Advisor to the Official Committee of Unsecured Creditors for the Period from September 28, 2017 through December 31, 2017* [Docket No. 1069] (the "FTI Fee Application").  In the FTI Fee Application, FTI seeks approval of fees of $2,877,421.50 and expenses of $68,777.38.  In the FTI Fee Application, FTI indicates that it discounted its fees by $7,389.00 and its expenses by $994.57 for the First Interim Period.  *See* FTI Interim Fee Application, at 4 n.1.

105.    In the FTI Retention Application, FTI describes its services as financial advisor to the Committee as follows:

- assisting in the review of financial related disclosures, including the Debtors' Schedules of Assets and Liabilities, Statement of Financial Affairs and Monthly Operating Reports;

- assisting in the preparation of analyses required to assess any proposed use of cash collateral, including assessment and monitoring of the Debtors' short-term cash flow,  liquidity, and operating needs;

- assisting with the review of any proposed key employee retention and other employee benefit programs;

- assisting with the review of the Debtors' long-term financial projections, including cash generating capacity and identification of potential cost savings, including overhead and operating expense reductions and efficiency improvements;

- assisting in the review of the claims reconciliation and claims estimation process, including  an entity and priority level assessment of claims;

- assisting in the review and analysis of the Debtors' intercompany activities and claims;

- assisting in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers;

- assisting in the review of all pre-petition transactions;

- assisting in the review and/or preparation of information and analysis necessary for the confirmation of any disclosure statement and plan of reorganization in these chapter 11 proceedings; and

- assisting in the prosecution of Committee responses/objections to the Debtors' motions, including attendance at depositions and provision of expert reports/testimony on case issues as required by the Committee.

*See* FTI Retention Application, ¶ 10.

106.    In the FTI Fee Application, FTI indicates that its timekeepers performed 4,194.20 hours of work at a blended rate of $686.05 per hour for professionals.  *See* FTI Interim Fee Application, at 2 of 280.

107.    On April 24, 2018, the Fee Examiner and his counsel participated in the Initial Conference with FTI to discuss the FTI Fee Application.  The Fee Examiner and his counsel presented their observations regarding FTI's compliance with the Review Guidelines in the FTI Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.  Following the Initial Conference, FTI provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Initial Conference.

108.    The Fee Examiner and FTI continue to discuss the FTI Fee Application.  To facilitate continued discussions regarding the FTI Fee Application and in light of the approaching deadline for final fee applications in the Chapter 11 Cases, FTI and the Fee Examiner have agreed to continue the hearing on the FTI Fee Application until the hearing on FTI's final fee application.  Pending the hearing on FTI's final fee application, the Fee Examiner consents to the payment of the Holdback Disbursement to FTI.

## Conclusion

109.    The Fee Examiner and the Consenting Professionals continue to discuss the Fee Applications pending the Fee Hearing on the Fee Applications and the hearing on the Final Fee Applications.  The Fee Examiner hopes to resolve any questions or concerns regarding the

Consenting Professionals' Fee Applications or any Final Fee Applications filed by the Retained Professionals in advance of any hearing on the Final Fee Applications.  Further, as described above, the Fee Examiner supports the entry of orders approving the Fee Applications filed by KPMG and Willkie.

110.    Pursuant to the Fee Examiner Order, the Fee Examiner will file an Examiner Report for all Final Fee Applications in advance of the hearing on such applications.  The Fee Examiner reserves all rights to raise any questions or concerns regarding the Fee Applications addressed herein and any Final Fee Applications.

Dated:  May 1, 2018

By: */s/ Charles A. Beckham, Jr.*
Charles A. Beckham, Jr., Fee Examiner

- and -

**HAYNES AND BOONE, LLP**

By: */s/ Kelli S. Norfleet*
Kelli S. Norfleet
Texas State Bar No.  24070678
Arsalan Muhammad
Texas State Bar No.  24074771
1221 McKinney Street, Suite 2100
Houston, Texas 77010
Telephone:  713-547-2000
Facsimile:  713-547-2600
E-mail:  kelli.norfleet@haynesboone.com
arsalan.muhammad@haynesboone.com

**COUNSEL FOR THE FEE EXAMINER**