**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| SEADRILL LIMITED, *et al.*, | ) | Case No. 17-60079 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**FEE EXAMINER'S REPORT REGARDING: (I) REVIEW OF THE FINAL FEE APPLICATIONS SCHEDULED FOR HEARING ON AUGUST 23, 2018; AND (II) FEES AND EXPENSES SOUGHT BY CERTAIN NON-ESTATE RETAINED PROFESSIONALS**

## __Table of Contents__

Preliminary Statement.......................................................................................................... 4

Background ........................................................................................................................... 6

    A.    The Chapter 11 Cases......................................................................................... 6

    B.    The Interim Compensation Procedures ............................................................. 7

    C.    The Appointment of the Fee Examiner .............................................................. 8

    D.    The Interim Fee Applications............................................................................ 10

    E.    The Final Fee Applications ............................................................................... 11

    F.    Fees and Expenses Sought by the Non-Estate Retained Professionals ........................ 15

Review Procedure ............................................................................................................... 16

    A.    Review Procedures for the Fee Applications filed by the Retained Professionals ........ 16

    B.    Review Procedures for the Interim Fee Applications ...................................... 17

    C.    Review Procedures for the Final Fee Applications ......................................... 19

    D.    Review Procedures for the Non-Estate Retained Professionals................................... 21

Initial Observations and Common Issues ........................................................................... 22

    A.    Staffing............................................................................................................. 23

    B.    Vague and Repetitive Time Entries ................................................................. 24

    C.    Seniority of Professionals Performing Work ................................................... 25

    D.    Lumping; Failure to Bill in Increments of One-Tenth of an Hour................................ 25

    E.    Invoicing.......................................................................................................... 26

    F.    Hourly Rates .................................................................................................... 26

    G.    Expenses........................................................................................................... 27

The Final Fee Applications................................................................................................. 28

    A. The Debtors' Professionals............................................................................... 31

        i.    Kirkland & Ellis LLP and Kirkland & Ellis International LLP................................. 31

        ii.    Alvarez & Marsal North America, LLP and Alvarez & Marsal Europe LLP ........... 35

        iii.    PricewaterhouseCoopers LLP ................................................................... 40

        iv.    Conyers Dill & Pearman Limited ............................................................. 43

        v.    Skadden, Arps, Slate, Meagher & Flom LLP............................................ 47

        vi.    Slaughter and May............................................................................... 50

        vii.    KPMG LLP........................................................................................... 54

        viii.    Ernst & Young LLP............................................................................... 58

        ix.    Houlihan Lokey Capital, Inc. ................................................................. 61

        x.    Jackson Walker LLP............................................................................... 63

     xi.     Advokatfirmaet Thommessen AS ............................................................ 66

  B.    Board of Directors' Professionals ................................................................ 67

     i.      Baker Tilly Virchow Krause, LLP ................................................. 67

     ii.     Willkie Farr & Gallagher LLP..................................................... 71

  C.    Committee's Professionals ....................................................................... 74

     i.      Kramer Levin Naftalis & Frankel LLP ......................................... 74

     ii.     Cole Schotz P.C. .......................................................................... 78

     iii.    Perella Weinberg Partners LP....................................................... 83

     iv.    Advokatfirmaet Selmer DA .......................................................... 87

     v.      FTI Consulting, Inc....................................................................... 90

     vi.    Machado, Meyer, Sendacz e Opice Advogados .......................... 93

     vii.   Patton, Moreno & Asvat ............................................................... 95

     viii.  Quinn Emanuel Urquhart & Sullivan UK LLP ............................ 96

     ix.    Zuill & Co. ................................................................................... 98

Conclusion .................................................................................................................... 100

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| SEADRILL LIMITED, *et al.*,[1] | ) | Case No. 17-60079 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**FEE EXAMINER'S REPORT REGARDING: (I) REVIEW OF THE FINAL FEE
APPLICATIONS SCHEDULED FOR HEARING ON AUGUST 23, 2018;
AND (II) FEES AND EXPENSES SOUGHT BY CERTAIN
<u>NON-ESTATE RETAINED PROFESSIONALS</u>
[Relates to Docket Nos. 1060, 1292, 1304, 1305, 1307, 1310, 1312, 1313, 1314, 1315, 1316,
1317, 1318, 1319, 1320, 1321, 1322, 1333, 1329, 1334, 1335, 1338, and 1345]**

TO THE HONORABLE DAVID R. JONES, UNITED STATES BANKRUPTCY JUDGE:

Charles A. Beckham, Jr., in his capacity as the fee examiner (the "<u>Fee Examiner</u>") in the Chapter 11 Cases of Seadrill Limited and its debtor affiliates (collectively, the "<u>Debtors</u>"), files this report (the "<u>Fee Examiner's Report</u>") pursuant to the Court's *Order Appointing Fee Examiner and Establishing Procedures for Consideration of Requested Fee Compensation and Reimbursement of Expenses* [Docket No. 1057] (the "<u>Original Fee Examiner Order</u>") and the Court's *Amended Order Appointing Fee Examiner and Establishing Procedures for Consideration of Requested Fee Compensation and Reimbursement of Expenses* [Docket No. 1244] (the "<u>Amended Fee Examiner Order</u>," and together with the Original Fee Examiner Order, the "<u>Fee Examiner Order</u>").

---

[1] Due to the large number of Debtors in these Chapter 11 cases (the "<u>Chapter 11 Cases</u>"), for which joint administration has been granted, a complete list of the Debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://cases.primeclerk.com/Seadrill. The location of Debtor Seadrill Americas, Inc.'s principal place of business and the Debtors' service address in the Chapter 11 Cases is 11025 Equity Drive, Suite 150, Houston, Texas 77041.

**Preliminary Statement[2]**

1.        This Fee Examiner's Report addresses the twenty-two (22) final fee applications (the "Final Fee Application(s)") of:  (1) Ernst & Young LLP [Docket No. 1292]; (2) Alvarez & Marsal North America and Alvarez & Marsal Europe [Docket No. 1304]; (3) Conyers Dill & Pearman Limited [Docket No. 1305]; (4) Baker Tilly Virchow Krause LLP [Docket No. 1307]; (5) Willkie Farr & Gallagher LLP [Docket No. 1310]; (6) Cole Schotz P.C. [Docket No. 1312]; (7) Advokatfirmaet Selmer DA [Docket No. 1313]; (8) Zuill & Co. [Docket No. 1314]; (9) FTI Consulting, Inc. [Docket No. 1315]; (10) Machado, Meyer, Sendacz e Opice Advogados [Docket No. 1316]; (11) Patton, Moreno & Asvat [Docket No. 1317]; (12) Perella Weinberg Partners LP [Docket No. 1318]; (13) Quinn Emanuel Urquhat and Sullivan UK LLP [Docket No. 1319]; (14) Slaughter and May [Docket Nos. 1060 and 1320]; (15) KPMG LLP [Docket No. 1321]; (16) Houlihan Lokey Capital, Inc. [Docket No. 1322]; (17) Jackson Walker LLP [Docket No. 1329]; (18) Kramer Levin Naftalis & Frankel LLP [Docket No. 1331]; (19) Kirkland & Ellis LLP and Kirkland & Ellis International LLP [Docket No. 1333]; (20) Advokatfirmaet Thommessen AS [Docket Nos. 1334 and 1345]; (21) PricewaterhouseCoopers LLP [Docket No. 1335]; and (22) Skadden, Arps, Slate, Meagher & Flom LLP [Docket No. 1338] (the "Retained Professional(s)" or the "Final Fee Applicant(s)").

2.        In total, the Retained Professionals seek approval of: (1) $106,169,069.72 in fees ($77,991,403.05 excluding success and transaction fees); and (2) $5,105,584.41 in expenses for work performed from September 12, 2017 through April 17, 2018 (the "Final Fee Period").[3]  The

---

[2] Capitalized terms used but not defined in this Preliminary Statement have the meanings ascribed to such terms below.
[3] The Final Fee Period includes fees and expenses incurred from September 12, 2017 through December 31, 2018 (the "First Interim Fee Period") and fees and expenses incurred from January 1, 2018 through April 17, 2018 (the "Second Interim Fee Period").

fees and expenses requested by each of the Final Fee Applicants for the Final Fee Period are summarized on the attached **Exhibit A**.

      3.      After the Court entered the Original Fee Examiner Order, the Fee Examiner sent a memorandum to all the Retained Professionals to explain his duties, request certain documents, and provide a schedule for his review.  After the Retained Professionals filed the Final Fee Applications and began providing their Fee Detail to the Fee Examiner, the Fee Examiner and his counsel reviewed the Final Fee Applications for compliance with the Review Guidelines. After this review, the Fee Examiner served his Final Fee Reports on the Final Fee Applicants. The Fee Examiner and his counsel then held the Final Fee Conferences with the Retained Professionals to discuss the Final Fee Applications and the Final Fee Reports.  Following the Final Fee Conferences, the Final Fee Applicants had the ability to submit additional information to the Fee Examiner regarding their fee and expense requests.

      4.      After the Final Fee Conferences, the Fee Examiner and his counsel continued to discuss the Final Fee Applications with certain of the Retained Professionals. Through the discussions with certain of the Retained Professionals, the Retained Professionals offered and the Fee Examiner accepted proposed negotiated adjustments in the aggregate of $1,171,722.60 for fees and expenses incurred during the Final Fee Period.[4]  In some instances, certain of the Retained Professionals also provided voluntary adjustments in their Fee Applications for fees and expenses incurred during the Final Fee Period.  These voluntary adjustments total $2,678,995.47.[5] Cumulatively, the Retained Professionals have agreed to provide adjustments of $3,850,717.57 for services performed during the Final Fee Period in the Chapter 11 Cases.

---

[4] This figure does not include any adjustments the Debtors were able to negotiate with the Non-Estate Retained Professionals.

[5] This amount does not include certain adjustments or discounted rates provided upon the engagement of the professionals, such as discounted rates negotiated by the Debtors with Skadden and Slaughter and May

These negotiated and voluntary adjustments satisfy the Fee Examiner's concerns with the Final Fee Applications. Accordingly, the Fee Examiner does not object to entry of orders approving the Final Fee Applications subject to reduction for the negotiated adjustments.

5. The Fee Examiner's Report also addresses the Fee Examiner's review of fees and expenses sought by certain non-estate retained professionals (the "Non-Estate Retained Professionals' Fee Detail"), including Akin Gump Strauss Hauer & Feld LLP ("Akin"); Weil, Gotshal & Manges LLP ("Weil"); Fried, Frank, Harris, Shriver & Jacobsen LLP ("Fried Frank"); Cadwalader, Wickersham & Taft LLP ("Cadwalader"); and White and Case LLP ("W&C") (collectively, the "Non-Estate Retained Professionals"). The Non-Estate Retained Professionals were not required to file Fee Applications. The Fee Examiner Order, however, authorized the Fee Examiner, upon the Debtors' request, to review the Non-Estate Retained Professionals' Fee Detail. Accordingly, the Fee Examiner and his counsel conducted a review (the "Non-Estate Retained Professionals Review") of the Non-Estate Retained Professionals' Fee Detail and submitted memorandums to the Debtors detailing the review (the "Non-Estate Retained Professionals Memorandums"). It is the Fee Examiner's understanding that the Non-Estate Retained Professionals Memorandums facilitated discussions between the Debtors and the Non-Estate Retained Professionals, which resulted in fee adjustments.

## Background

### A.    The Chapter 11 Cases

6. On September 12, 2017 (the "Petition Date"), the Debtors commenced the Chapter 11 Cases in the United States Bankruptcy Court for the Southern District of Texas, Victoria Division (the "Court"). On September 22, 2017, the United States Trustee for Region 7

(the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") for the Chapter 11 Cases. *See* Docket No. 175.

7.     On April 17, 2018 (the "Confirmation Date"), the Court entered the *Order Confirming the Second Amended Joint Plan (as Modified) of Reorganization of Seadrill Limited and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1181] (the "Confirmation Order").   Pursuant to the *Second Amended Joint Plan (as Modified) of Reorganization of Seadrill Limited and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, attached to the Confirmation Order as Exhibit A (the "Plan"), "[a]ll requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than 45 days after the Confirmation Date." Plan, art. II.B.  Accordingly, the Final Fee Applications for approval of fees and expenses incurred from the Petition Date through the Confirmation Date were due by June 1, 2018.

8.     On July 2, 2018 (the "Effective Date"), the Plan was substantially consummated and went effective.  *See Notice of (I) Entry of Order Confirming the Second Amended Joint Plan (as Modified) of Reorganization of Seadrill Limited*, et al., *Pursuant to Chapter 11 of the Bankruptcy Code*, *and (II) Occurrence of the Effective Date* [Docket No. 1387].

**B.     The Interim Compensation Procedures**

9.     On October 31, 2017, the Court entered the *Order Establishing Procedures for Interim Compensation and Reimbursement of Professionals* [Docket No. 389] (the "Interim Compensation Order").  Under the Interim Compensation Order, each Professional (as defined in the Interim Compensation Order) seeking compensation could file a Monthly Fee Statement (as defined in the Interim Compensation Order) for interim allowance of compensation for services

rendered and reimbursement of expenses incurred during a given month on or after the twenty-first (21st) day of each month following the month for which compensation was sought.  *See* Interim Compensation Order, ¶ 2.a.  Upon the expiration of a twenty-one (21) day objection period, the Debtors were authorized and directed to pay the Retained Professional an amount equal to eighty percent (80%) of the fees and one-hundred percent (100%) of the expenses requested in the applicable Monthly Fee Statement that were not subject to an objection.  *Id.* at ¶ 2.b.

10.     The Interim Compensation Order further provided that Retained Professionals could file Interim Fee Applications (as defined in the Interim Compensation Order) for compensation and reimbursement of expenses at three (3) month intervals beginning with the period ending December 31, 2017.  *Id.* at ¶ 2.e.  Upon the Court's allowance of a Retained Professional's Interim Fee Application, the Debtors were authorized and directed to promptly pay such Retained Professional all requested fees and expenses not previously paid, including the twenty percent (20%) of fees held back for previously submitted Monthly Fee Statements.  *Id.* at ¶ 2.f.

## C.     The Appointment of the Fee Examiner

11.     On March 8, 2018, the Court entered the Original Fee Examiner Order appointing Charles A. Beckham, Jr. as the Fee Examiner *nunc pro tunc* to February 1, 2018.  *See* Docket No. 1057.  On March 13, 2018, the Fee Examiner filed the *Fee Examiner's Application for Entry of an Order Authorizing the Employment and Retention of Haynes and Boone LLP as Counsel to the Fee Examiner* Nunc Pro Tunc *to February 1, 2018* [Docket No. 1075].  On March 28, 2018, the Court entered the *Order Authorizing the Employment and Retention of Haynes and Boone LLP as Counsel to the Fee Examiner* Nunc Pro Tunc *to February 1, 2018* [Docket No. 1101].

12.     On May 15, 2018, the Court entered the Amended Fee Examiner Order.  *See* Docket No. 1244.  The Amended Fee Examiner Order authorized the Fee Examiner and any of the Retained Professionals to agree to continue any Fee Hearing and to release "up to seventy-five percent (75%) of those fees requested pursuant to the applicable Interim Fee Application not previously paid pursuant to the Interim Compensation Order."  Amended Fee Examiner Order, ¶ 18.

13.     The Fee Examiner Order directs the Fee Examiner to review any interim fee application or final fee application served by each Retained Professional in the Chapter 11 Cases. The Fee Examiner Order also provides that the Fee Examiner may serve an Initial Report (as defined in the Fee Examiner Order) upon each Applicant within forty-five (45) days after the Applicant files an interim fee application or final fee application.  The Initial Report is:

> designed to quantify and present factual data and legal issues relevant to whether the requested fees, disbursements, and expenses are in compliance with the applicable standards of sections 330 and 331 of the Bankruptcy Code and whether the Applicant has made a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the U.S. Trustee Guidelines.

*See* Original Fee Examiner Order, ¶ 5.c.

14.     The Fee Examiner Order further requires the Fee Examiner to file an Examiner Report (as defined in the Fee Examiner Order) at least seven (7) days prior to any hearing on any interim fee applications or final fee applications.  The Examiner Report is:

> designed to (i) quantify and present factual data and legal issues relevant to whether the requested fees and expenses of each applicable Retained Professional are in compliance with the applicable standards of sections 330 and 331 of the Bankruptcy Code, (ii) inform the Court, in general terms, of all issues raised in any Initial Report that have been consensually resolved and the nature of such resolution, and (iii) inform the Court, in general

terms, of all issues raised in any Initial Report that have not yet
been resolved.

*See* Fee Examiner Order, ¶ 5.d.

15.     The Fee Examiner Order also authorizes the Debtors "to consult with the Fee
Examiner regarding any other request for payment of professional fees and expenses of any party
in interest in these chapter 11 cases."  *See* the Original Fee Examiner Order, ¶ 16.

**D.     The Interim Fee Applications**

16.     Between March 7 and 13, 2018, the Interim Fee Applicants filed their Interim Fee
Applications.  *See* Docket Nos. 1042, 1046, 1049, 1050, 1052, 1060, 1061, 1065, 1066, 1067,
1068, 1069, 1070, 1073, and 1074.  On March 19, 2018, the Debtors filed the *Omnibus Notice of
Hearing on First Interim Fee Applications of Professionals for Allowance and Payment of
Compensation for Professional Services Rendered and for Reimbursement of Actual and
Necessary Expenses Incurred* [Docket No. 1082] (the "Interim Notice").  As indicated in the
Interim Notice, the Court scheduled a hearing to consider the Interim Fee Applications on May
8, 2018 at 11:00 a.m. (Central Time) (the "May 8 Hearing").[6]

17.     Fourteen (14) Retained Professionals filed interim fee applications by March 13,
2018 (each, an "Interim Fee Application," and collectively, the "Interim Fee Applications," and
together with the Final Fee Applications, the "Fee Applications"), including:  (1) Kirkland &
Ellis LLP and Kirkland & Ellis International LLP [Docket No. 1061]; (2) Alvarez & Marsal
North America and Alvarez & Marsal Europe [Docket No. 1042]; (3) KPMG LLP [Docket No.
1049]; (4) PricewaterhouseCoopers LLP [Docket No. 1050]; (5) Conyers Dill & Pearman
Limited [Docket No. 1051]; (6) Skadden, Arps, Slate, Meagher & Flom LLP [Docket No. 1052];
(7) Slaughter and May [Docket No. 1060] (8) Willkie Farr & Gallagher LLP [Docket No. 1046];

---

[6] As detailed below, this May 8, 2018 hearing was continued until the final fee hearing.  *See* Docket No. 1230.

(9) Baker Tilly Virchow Krause LLP [Docket No. 1070]; (10) Kramer Levin Naftalis & Frankel LLP [Docket No. 1065]; (11) Cole Schotz P.C. [Docket Nos. 1066, 1073, 1074]; (12) Perella Weinberg Partners LP [Docket No. 1067]; (13) Advokatfirmaet Selmer DA [Docket No. 1068]; and (14) FTI Consulting, Inc. [Docket No. 1069]; (each, an "Interim Fee Applicant," or collectively, the "Interim Fee Applicants").  The fees and expenses requested by each of the Final Fee Applicants for the Final Fee Period are summarized on the attached **Exhibit A**.

18.     In total, the Interim Fee Applicants sought approval of $37,422,800.25 in fees, and $2,322,800.25 in expenses for work performed during the First Interim Fee Period.

**E.     The Final Fee Applications**

19.     Between May and June 2018, the Retained Professionals filed their Final Fee Applications.  *See* Docket Nos. 1292, 1304, 1305, 1307, 1310, 1312, 1313, 1314, 1315, 1316, 1317, 1318, 1319, 1320, 1321, 1322, 1333, 1329, 1331, 1335, 1336, 1338, and 1345.  On June 25, 2018, the Debtors filed the *Omnibus Notice of Hearing Regarding Final Fee Applications of Professionals for Allowance and Payment of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses Incurred* [Docket No. 1383] (the "Final Notice").  As indicated in the Final Notice, the Court has scheduled a hearing (the "Fee Hearing") to consider the Final Fee Applications on August 23, 2018 at 2:00 p.m. (Central Time).

20.     Twenty-two (22) Retained Professionals filed Final Fee Applications.  Except for the Slaughter and May Final Fee Application, the Final Fee Applications were inclusive of fees and expenses requested under the First Interim Fee Applications.  The Fee Examiner and his counsel did not review the fees and expenses requested by the Interim Fee Applicants for a second time when conducting the review of the Final Fee Applications.

21.     In total, as detailed in **<u>Figure 1</u>** below, the Final Fee Applicants sought approval of $77,991,403.05 in fees, excluding the success fee requested by Houlihan Lokey Capital, Inc. ("<u>Houlihan</u>") and the transaction fee requested by Perella Weinberg Partners LP ("<u>PWP</u>"), for work performed during the Final Fee Period.[7]

**Figure 1: Final Fee Requests Excluding Success and Transaction Fees**



| RETAINED PROFESSIONAL | TOTAL FEES |
|---|---|
| Alvarez | $11,953,967.50 |
| Baker Tilly | $5,146,687.50 |
| Cole Schotz | $1,038,376.00 |
| Conyers | $815,631.25 |
| E&Y | $4,036,727.16 |
| FTI | $4,619,047.75 |
| Houlihan | $1,307,333.33 |
| Jackson Walker | $476,872.00 |
| Kirkland | $20,306,823.00 |
| KPMG | $2,037,544.35 |
| Kramer | $11,524,232.25 |
| Machado | $76,953.34 |
| PMA | $21,483.00 |
| PwC | $1,228,296.25 |
| PWP | $1,126,586.02 |
| Quinn | $97,172.00 |
| Selmer | $374,804.52 |
| Skadden | $2,369,145.46 |
| Slaughter and May | $8,774,673.37 |
| Thommessen | $335,507.00 |
| Willkie | $112,530.00 |
| Zuill | $211,010.00 |
| **TOTAL** | **$77,991,403.05** |

---

[7] Success fees and transactions fees are excluded from review by the Fee Examiner pursuant to the Fee Examiner Order.  *See* Amended Fee Examiner Order, ¶ 3.

22.     In total, as detailed in **Figure 2** below, the Final Fee Applicants sought approval of $106,169,069.72, including the success fees requested by Houlihan and the transaction fee requested by PWP, for work performed during the Final Fee Period.

**Figure 2:  Final Fee Requests Including Success and Transaction Fees**



| RETAINED PROFESSIONAL | TOTAL FEES |
|---|---|
| Alvarez | $ 11,953,967.50 |
| Baker Tilly | $  5,146,687.50 |
| Cole Schotz | $  1,038,376.00 |
| Conyers | $    815,631.25 |
| E&Y | $  4,036,727.16 |
| FTI | $  4,619,047.75 |
| Houlihan | $ 24,485,000.00 |
| Jackson Walker | $    476,872.00 |
| Kirkland | $ 20,306,823.00 |
| KPMG | $  2,037,544.35 |
| Kramer | $ 11,524,232.25 |
| Machado | $     76,953.34 |
| PMA | $     21,483.00 |
| PwC | $  1,228,296.25 |
| PWP | $  6,126,586.02 |
| Quinn | $     97,172.00 |
| Selmer | $    374,804.52 |
| Skadden | $  2,369,145.46 |
| Slaughter and May | $  8,774,673.37 |
| Thommessen | $    335,507.00 |
| Willkie | $    112,530.00 |
| Zuill | $    211,010.00 |
| **TOTAL** | **$106,169,069.72** |

23.     In total, as detailed in **Figure 3** below, the Final Fee Applicants sought approval of $5,105,584.41 for expenses incurred during the Final Fee Period.  For the avoidance of doubt, the Fee Examiner and his counsel did not review the expenses requested by the Interim Fee Applicants for a second time when reviewing the Final Fee Applications.

**Figure 3:  Final Expense Requests**

| RETAINED PROFESSIONAL | TOTAL EXPENSES |
|---|---|
| Alvarez | $1,236,768.45 |
| Baker Tilly | $13,701.65 |
| Cole Schotz | $28,625.26 |
| Conyers | $105,440.51 |
| E&Y | $424,973.84 |
| FTI | $125,657.90 |
| Houlihan | $195,046.92 |
| Jackson Walker | $158,975.01 |
| Kirkland | $1,078,097.02 |
| KPMG | $92,731.22 |
| Kramer | $516,063.50 |
| Machado | $0.00 |
| PMA | $253.80 |
| PwC | $18,134.94 |
| PWP | $106,871.56 |
| Quinn | $284.52 |
| Selmer | $88.89 |
| Skadden | $832,239.24 |
| Slaughter and May | $165,755.03 |
| Thommessen | $549.00 |
| Willkie | $168.15 |
| Zuill | $5,158.00 |
| **TOTAL** | **$5,105,584.41** |



14

**F.      Fees and Expenses Sought by the Non-Estate Retained Professionals**

24.      The Non-Estate Retained Professionals were not required to file fee applications. Upon the Debtors' request, the Fee Examiner and his counsel reviewed the Non-Retained Professionals' Fee Detail for six (6) professionals for fees and expenses incurred in the Final Fee Period.   In total, as detailed in **Figures 4** and **5** below, the Non-Estate Estate Retained Professionals requested, and the Fee Examiner and his counsel reviewed fees of $27,414,742.00, and expenses of $541,893.00.[8]

**Figure 4:  Non-Estate Retained Professional Total Fee Requests for the Final Fee Period**



| NON-RETAINED PROFESSIONAL | TOTAL FEES |
|---|---|
| Akin | $3,271,399.00 |
| Cadwalader | $5,855,437.70 |
| Fried Frank | $4,714,926.97 |
| Stroock | $4,457,087.00 |
| W&C | $8,069,185.79 |
| Weil | $1,148,706.00 |
| **TOTAL** | **$27,516,742.46** |

---

[8] The figure for expenses requested does not include any expenses requested by W&C because W&C did not provide any expense detail to the Fee Examiner.

**Figure 5: Non-Estate Retained Professional Total Expense Requests for the Final Fee Period**

| NON-RETAINED PROFESSIONAL | TOTAL EXPENSES |
|---|---|
| Akin | $179,043.82 |
| Cadwalader | $264,175.36 |
| Fried Frank | $37,796.26 |
| Stroock | $57,487.80 |
| W&C | $0 |
| Weil | $3,389.73 |
| **TOTAL** | **$541,892.97** |



## Review Procedure

**A.      Review Procedures for the Fee Applications filed by the Retained Professionals**

25.      As discussed above, on March 13, 2018, shortly after entry of the Fee Examiner Order, the Fee Examiner sent a memorandum to each of the Retained Professionals.  The memorandum explained the Fee Examiner's role in the Chapter 11 Cases, requested certain documents, and provided a general schedule for reviewing the Fee Applications.  A copy of the memorandum is attached hereto as **Exhibit B**.  The memorandum also requested that the Retained Professionals submit to the Fee Examiner:  (i) their Fee Applications in Adobe Acrobat format, (ii) any legal electronic data exchange standards ("LEDES") information containing time entries and expense detail as required by the Fee Examiner Order, (iii) billing policies, if any, and (iv) their engagement letters with their respective clients.

16

26.     The Fee Examiner Order requires the Retained Professionals to provide the Fee Examiner the fee detail containing time entries and the expense detail (the "Fee Detail") in the LEDES electronic format within three (3) business days after the Retained Professionals file Monthly Fee Statements, Interim Fee Applications, or Final Fee Applications.  Certain of the Retained Professionals were unable to provide their Fee Detail for the Fee Applications in the LEDES electronic format.  For such Retained Professionals, the Fee Examiner agreed to accept their Fee Detail in Microsoft Excel format.

27.     After the Retained Professionals filed the Fee Applications and began providing their Fee Detail, the Fee Examiner and his counsel reviewed the Fee Applications for compliance with sections 330 and 331 of the Bankruptcy Code, the applicable orders approving the retention of the Retained Professionals, the applicable guidelines for fee applications promulgated by the U.S. Trustee (the "U.S. Trustee Guidelines"), and the Uniform Texas Rules for Complex Chapter 11 Bankruptcy Cases[9] (collectively, the "Review Guidelines").  The Fee Examiner and his counsel undertook a line-by-line review of the Fee Applications with the assistance of certain software to facilitate the review of the Fee Detail.

**B.     Review Procedures for the Interim Fee Applications**

28.     The Fee Examiner and his counsel reviewed the Final Fee Applicants' Fee Detail for compliance with the categories listed in the section of the Fee Examiner's Report titled "Initial Observations and Common Issues."  *See infra* ¶¶ 42 – 50.  If the Fee Examiner and his counsel identified time entries or expense items for which the Fee Examiner and his counsel believed to have been non-compliant under these categories, such time entries or expense items

---

[9] Pursuant to Bankruptcy Local Rule 1075-1, the United States Bankruptcy Court for the Southern District of Texas Procedures for Complex Chapter 11 Bankruptcy Cases (the "Southern District Complex Case Procedures") apply to the Chapter 11 Cases. The Southern District Complex Case Procedures provide that the Court subscribes to the Uniform Texas Rules for Complex Chapter 11 Bankruptcy Cases.

were categorized accordingly in spreadsheets (the "Interim Review").[10]  The Fee Examiner and

his counsel provided these spreadsheets to each of the Retained Professionals in preparation for

the Fee Conferences.  From April 20 to 24, 2018, the Fee Examiner and his counsel engaged in

initial discussions with each Interim Fee Applicant regarding their respective Interim Fee

Application (each, an "Interim Fee Conference," and collectively, the "Interim Fee

Conferences").  During the Interim Fee Conferences, the Fee Examiner presented the Interim Fee

Applicants with the results of the Interim Review of the Interim Fee Applications and raised

questions regarding certain fee and expense requests, including specific examples of fee and

expense requests that did not comply with the Review Guidelines.  In some instances, following

the Interim Fee Conferences, the Interim Fee Applicants submitted additional information

regarding certain fee and expense requests.

29.     On April 26, 2018, the Fee Examiner served initial reports regarding the Interim

Review on certain of the Interim Fee Applicants (each, an "Interim Fee Report(s)") pursuant to

the Fee Examiner Order.[11]  The Fee Examiner did not serve an Interim Fee Report on KPMG

LLP ("KPMG") or Willkie Farr & Gallagher LLP ("Willkie").[12]

30.     After the Interim Fee Conferences and submission of the Interim Fee Reports, the

Fee Examiner continued to discuss the Interim Fee Applications with the Interim Fee Applicants.

Pursuant to the Fee Examiner Order, the Fee Examiner and the Interim Fee Applicants other than

---

[10] The Fee Examiner did not have comments, concerns, or questions regarding the KPMG Interim Fee Application (as defined below).

[11] Specifically, the Fee Examiner sent an Interim Initial Report to (1) Kirkland & Ellis LLP and Kirkland & Ellis International LLP; (2) Alvarez & Marsal North America and Alvarez & Marsal Europe; (3) PricewaterhouseCoopers LLP; (4) Conyers Dill & Pearman Limited; (5) Skadden, Arps, Slate, Meagher & Flom LLP; (6) Slaughter and May; (7) Baker Tilly Virchow Krause LLP; (8) Kramer Levin Naftalis & Frankel LLP; (9) Cole Schotz P.C.; (10) Perella Weinberg Partners LP; (11) Advokatfirmaet Selmer DA; and (12) FTI Consulting, Inc.

[12] Because the Fee Examiner was satisfied with KPMG's and Willkie's Interim Fee Applications, the Fee Examiner did not serve an Initial Report on KPMG or Willkie and did not conduct any discussions with KPMG and Willkie regarding their Interim Fee Applications.

KPMG and Willkie (collectively, the "<u>Consenting Professionals</u>") agreed to continue the hearing on the Consenting Professionals' Interim Fee Applications until the hearing to consider the Consenting Professionals' Final Fee Applications.  *See Notice of Cancellation of the Hearing Scheduled for May 8, 2018, at 11:00 a.m. (Prevailing Central Time)* [Docket No. 1230]. Pending the hearing on the Final Fee Applications, the Fee Examiner consented to the continued hold back of five percent (5%) of the fees requested in the Consenting Professionals' Interim Fee Applications and disbursement of the remaining fifteen percent (15%) of fees requested in the Fee Applications that have been held back to date (the "<u>Holdback Disbursement</u>").[13]

31.     On May 1, 2018, the Fee Examiner filed the *Fee Examiner's Report Regarding Review of the First Interim Fee Applications Scheduled for Hearing on May 8, 2018* [Docket No. 1222] (the "<u>Interim Fee Examiner's Report</u>").  The Interim Fee Examiner's Report generally described the Fee Examiner's review process, the review of the Interim Fee Applications, and the status of the Interim Fee Applicants' discussions with the Fee Examiner.

**C.     Review Procedures for the Final Fee Applications**

32.     The Fee Examiner and his counsel conducted a review of the Final Fee Applications pursuant to the same process as described above for the Interim Review. Specifically, if the Fee Examiner and his counsel identified time entries or expense items for which the Fee Examiner and his counsel believed to have been non-compliant under these categories, such time entries or expense items were categorized accordingly in spreadsheets (the "<u>Final Review</u>").

---

[13] For the avoidance of doubt, the Fee Examiner only consented to payment of the Holdback Disbursement to the Consenting Professionals.

33.     From July 25, 2018 to August 15, 2018, the Fee Examiner served initial reports regarding the Final Review on certain of the Final Fee Applicants (each, a "Final Fee Report(s)").

34.     From July 25, 2018 to August 15, 2018, the Fee Examiner and his counsel engaged in initial discussions with each Final Fee Applicant regarding their Final Fee Application (each, a "Final Fee Conference(s)" and together with the Interim Fee Conferences, the "Initial Conferences").  During the Final Fee Conferences, the Fee Examiner presented the Final Fee Applicants with the results of the Final Review of the Final Fee Applications as detailed in the Final Fee Reports, including specific examples of fee and expense requests that did not comply with the Review Guidelines.  In some instances, following the Final Fee Conferences, the Final Fee Applicants submitted additional information regarding certain fee and expense requests.  Generally, the Fee Examiner and his counsel observed a significant improvement in the timekeeping practices and compliance with the Review Guidelines in the Final Fee Applications.

35.     After the Final Fee Conferences and submission of the Final Fee Reports, the Fee Examiner continued to discuss the Final Fee Applications with the Final Fee Applicants.  Each of the Fee Applicants offered to make proposed negotiated fee and expense adjustments to the their Final Fee Applications.  The Fee Examiner reached resolutions with all of the Final Fee Applicants that satisfy all of the Fee Examiner's questions with the Final Fee Applications.  Accordingly, the Fee Examiner does not object to the entry of orders approving the Final Fee Applications, subject to the negotiated adjustments described herein.

**D.      Review Procedures for the Non-Estate Retained Professionals**

36.      The Fee Examiner Order authorized the Fee Examiner to review the Non-Estate Retained Professionals' Fee Detail upon the Debtors' request.  Pursuant to this request, the Non-Estate Retained Professionals provided the Fee Examiner and his counsel their fee detail for the period beginning on September 12, 2017 and ending on April 17, 2018.

37.      From May 2018 to June 2018, the Fee Examiner and his counsel conducted the Non-Estate Retained Professionals Review.  The Fee Examiner and his counsel conducted the Non-Estate Retained Professionals Review in a manner similar to the Interim and Final Review for the Retained Professionals, but modified the review because the Non-Estate Retained Professionals were not subject to the U.S. Trustee Guidelines or the Interim Compensation Procedures. Instead, the Fee Examiner conducted the Non-Estate Retained Professionals Review considering the level of detail appropriate in requesting legal fees and the Fee Examiner's responsibilities detailed in the Fee Examiner Order.

38.      On June 18, 2018, the Fee Examiner submitted the Non-Estate Retained Professionals Memorandums detailing the Non-Estate Retained Professionals Review to Mr. Chris Edwards, general counsel and senior vice president of Seadrill Limited.  The Non-Estate Retained Professionals Memorandums provided a list of time entries and expenses which were subject to the Fee Examiner's comments, concern, and questions.  The Non-Estate Retained Professionals Memorandums also included suggested adjustments that would resolve and satisfy the Fee Examiner's concerns with the Non-Estate Retained Professionals' Fee Detail.

39.      On June 19, 2018, the Fee Examiner, Mr. Edwards, and counsel for the Debtors participated in a conference regarding the Non-Estate Retained Professionals Memorandums. The Fee Examiner explained the scope of the Non-Estate Retained Professionals Review, the

purpose of the Non-Estate Retained Professionals Memorandums, and issues unique to each of the Non-Estate Retained Professionals' Fee Detail.  It is the Fee Examiner's understanding that the Debtors were able to use the summaries and suggested adjustments detailed in the Non-Estate Retained Professionals Memorandums to request further information and negotiate appropriate adjustments from the Non-Estate Retained Professionals to satisfy any of the Debtors' concerns with the Non-Estate Retained Professionals' Fee Detail.

### Initial Observations and Common Issues[14]

40.     In reviewing the fees and expenses requested by the Retained Professionals, the Fee Examiner and his counsel considered the complexity of the Chapter 11 Cases, the requirements for requesting fees and expenses in complex Chapter 11 cases, and the extraordinary legal circumstances presented in the Chapter 11 Cases.  Professional services must be both reasonable and necessary to the estate, regardless of circumstances, and the professional applying for compensation bears the burden of proving reasonableness.  *See Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Charles N. Wooten, Ltd. (In re Evangeline Ref. Co.)*, 890 F.2d 1312, 1326 (5th Cir. 1989) (explaining that "an application must be sufficiently detailed and accurate that, in conjunction with any proceeding in connection therewith and the record in the case, a court can make an independent evaluation as to what level of fees are actual, necessary and reasonable") (citing *In re Lawler*, 807 F.2d 1207, 1212 (5th Cir. 1987)); *see also In re Fibermark*, *Inc.,* 349 B.R. 385, 395 (Bankr. D. Vt. 2006) (stating also "the applicant must present a carefully detailed application" to support an application for fees).

---

[14] The initial observations and commons issues detailed herein apply generally to the Retained Professionals.  While the Fee Examiner may have identified similar issues applicable to the Non-Estate Retained Professionals in the Non-Estate Retained Professionals Memorandums, these specific issues are not addressed herein.  These issues are not detailed here because the Non-Estate Retained Professionals were not: (i) retained by the estate, (ii) subject to the Interim Compensation Procedures, or (iii) subject to the U.S. Trustee Guidelines.

41.     The Fee Examiner and his counsel identified certain categories of time entries that did not comply with the Review Guidelines or for which the Fee Examiner required additional information to assess the necessity or reasonableness of the particular time entry.   The Fee Examiner and his counsel then identified and compiled time entries from each of the Fee Applications into the categories described below.   Certain of the Fee Applications raised additional issues that were unique to the individual Retained Professional's retention and the particular services provided.   The Fee Examiner and his counsel also reviewed each Retained Professional's expenses and identified any requested expenses that did not appear to comply with the Review Guidelines or for which the Fee Examiner required additional information to assess the necessity or reasonableness of the particular expense request.   The following is a description of the categories of time entries and expenses for which the Fee Examiner identified issues or requested additional information from the Applicants.

A.      **Staffing**

42.     Certain of the Retained Professionals billed for instances in which numerous professionals attended hearings, meetings, or conference calls.   While there may be justification for more than a few professionals from a single firm to attend the same hearing, meeting, or conference call, those occasions should not be routine.   *See, e.g., In re CCT Comms., Inc.*, No. 07-10210 (SMB), 2010 WL 3386947, at *10 (Bankr. S.D.N.Y. Aug. 24, 2010) ("[T]wo or more lawyers billing their time attending the same conference is [not] *per se* unreasonable.   In particular, the early stages of a chapter 11 case are often chaotic, require the performance of multiple tasks in a compressed time frame, and hence, necessitate frequent communication among lawyers in the same firm, between the lawyers and the client, and where required, between general and special counsel.").   Aa firm may send as many partners, associates, and

staff to a hearing or meeting as it likes, but estate compensation for multiple attendees should be supported by a compelling showing of each timekeeper's contributory role. *See id.* (allowing multi-lawyer billing when the professionals were "heavily involved in the strategy and execution of the strategy [of the case]"); *see also In re Fibermark, Inc.*, 349 B.R. at 396 ("[W]hen a professional seeks compensation for meetings and conferences among multiple professionals . . . the professional must demonstrate the benefit [to] the estate and document consistent amounts of time by all participants.").

**B.    Vague and Repetitive Time Entries**

43.    The U.S. Trustee Guidelines require a time entry, regardless of the amount of time, to contain sufficient information to identify the purpose of the work or the benefit to the Debtors' estate. *See also Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326 (5th Cir. 1995) (stating that when adjusting a lodestar amount "the district court may properly reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review"); *In re Gemini Interests LLC*, No. 11-38815, 2015 Bankr. LEXIS 612, at *4 (Bankr. S.D. Tex. Feb. 27, 2015) (explaining when considering the reasonableness of time entries under a lodestar evaluation that "time entries that are vague, duplicative, excessive, or fall outside of the professionals' appointment authority should be excluded. . . ."); *In re CCT Comms., Inc.*, 2010 WL 3386947, at *7 ("The failure to provide sufficient details to allow the court to perform its task of determining the nature and value of the time spent by the attorney for the debtor while engaged in those telephone calls compels a conclusion that they are not compensable.") (quoting *In re Citrone Dev. Corp.*, 16 B.R. 359 (Bankr. S.D.N.Y. 1989)).    Additionally, to be compensable, the Retained Professionals should draft the time entries with sufficient detail to enable the Court to determine if the particular timekeeper complied with applicable Bankruptcy

Code sections, rules, standards, and guidelines.  The U.S. Trustee Guidelines provide that generally, "attention to" or "read" followed by a general term is not sufficient detail to recommend estate compensation.  Further, narrative time entries that are duplicative or repetitive are inherently vague because these entries do not contain sufficient information to conclude that such identical work was reasonable and necessary to the Debtors' estates.  These patterns also raise concerns that the timekeeper failed to keep accurate and contemporaneous records leading to the repetitive or vague entries.

**C.     Seniority of Professionals Performing Work**

44.     During the review of the Fee Applications, the Fee Examiner and his counsel identified instances in which partners or other higher billing rate professionals performed work that associates or lower billing rate professionals could have performed.  Such instances include preliminary drafting, research projects, document review, or other similar work.  Entries such as these required further explanation regarding why partners or higher billing rate professionals performed this work so the Fee Examiner could consider "whether the task at hand could have been performed competently by a less experienced professional at a lower cost to the estate."  *In re Fibermark, Inc.*, 349 B.R. at 396.

**D.     Lumping; Failure to Bill in Increments of One-Tenth of an Hour**

45.     Proper time keeping enables the Court to determine the reasonableness of the work performed and any "uncertainties due to poor record-keeping will be resolved against the applicant."  *See In re Poseidon Pools of America*, 216 B.R. 98, 100–01 (E.D.N.Y. 1997); *see also In re Digerati Techs., Inc.*, 537 B.R. 317, 334 (Bankr. S.D. Tex. 2015) (explaining that under the lodestar approach, "lumped entries prevent a court from accurately determining how many hours were reasonably billed") (citing *In re 900 Corp.*, 327 B.R. 585, 598 (Bankr. N.D.

Tex. 2005) ("When time entries are vague or lumped together, such that the Court cannot determine how much time was spent on particular services, then the Applicant has not met its burden to show that its fees are reasonable.")).   The U.S. Trustee Guidelines require professionals to record time spent in tenth of an hour increments.   Block billing and lumping violate these guidelines when the time entry is greater than a half-hour increment for a particular time entry and not separated into tenth of an hour increments for each discrete task.

**E.    Invoicing**

46.    The U.S. Trustee Guidelines do not allow professionals to seek compensation for reviewing or revising time records or preparing, reviewing, or revising invoices.   The Fee Examiner has reviewed the Final Fee Applications to determine whether any of the Final Fee Applicants requested compensation for these tasks.

**F.    Hourly Rates**

47.    The Fee Examiner did not review the reasonableness of the Retained Professionals' hourly rates.   The retention applications and accompanying engagement letters included hourly rates information for the respective professionals.   The Court, after considering the retention applications, entered retention orders authorizing the retention of the Retained Professionals.   The Fee Examiner, therefore, did not undertake nor believe an extensive review of the hourly rates charged by the Retained Professionals was necessary or appropriate.   The Fee Examiner only considered whether the fees charged by the Retained Professionals were consistent with those approved by the Court in the retention orders.

48.    The U.S. Trustee Guidelines require disclosure of rate increases.   Boilerplate language in retention applications or engagement letter that provide a range of potential hourly rates is insufficient.   Many of the Court's retention orders in the Chapter 11 Cases provided that

prior to any rate increase, the Retained Professionals must first file a notice with the Court and provide ten (10) business days' notice to the Debtors, the U.S. Trustee, and any official committee before any rate increase became effective.  The Fee Examiner reviewed the Final Fee Applications to determine whether any of the Final Fee Applicants requested compensation for unnoticed rate increases.

## G.    Expenses

49.    In reviewing the expenses requested in the Final Fee Applications, the Fee Examiner utilized a rubric applicable to travel expenses and identified:  (i) lodging expenses generally exceeding $350.00 in cities other than New York City and London; (ii) lodging expenses exceeding $500.00 in New York City and London; and (iii) international airfare expenses exceeding $9,000.00 (the "Expense Rubric").

50.    As with the review of time entries, the Fee Examiner reviewed any vague or repetitive expenses.  Examples of vague expense requests are entries for which only the merchant and amount of the expense was provided and entries for travel expenses that failed to include origination or destination points.

## The Final Fee Applications

51.     In summary, after reviewing the Fee Detail, the Fee Examiner and his counsel had detailed discussions with each of the Retained Professionals regarding the Fee Examiner's findings, questions, and concerns.   As a result of these discussions, the Retained Professionals either resolved the Fee Examiner's concerns or reached an agreement with the Fee Examiner for a negotiated adjustment to the fees and expenses requested to satisfy the Fee Examiner's concerns.  As detailed in **Figure 6**, the Fee Examiner and the Retained Professionals agreed to negotiated adjustments resulting in a savings to the estate of $1,171,722.60.

### Figure 6:  Negotiated Adjustments



| RETAINED PROFESSIONAL | NEGOTIATED ADJUSTMENT |
|---|---|
| Alvarez | $ 100,000.00 |
| Baker Tilly | $ 100,000.00 |
| Cole Schotz | $ 40,000.00 |
| Conyers | $ 11,651.10 |
| E&Y | $ 80,000.00 |
| FTI | $ 50,000.00 |
| Houlihan | $ 52,193.80 |
| Jackson Walker | $ 10,000.00 |
| Kirkland | $ 264,032.36 |
| KPMG | $ 10,500.00 |
| Kramer | $ 160,000.00 |
| Machado | $ 1,855.00 |
| PMA | $ 2,000.00 |
| PwC | $ 13,000.00 |
| PWP | $ 25,000.00 |
| Quinn | $ 6,000.00 |
| Selmer | $ 5,350.00 |
| Skadden | $ 48,140.34 |
| Slaughter and May | $ 170,000.00 |
| Thommessen | $ 20,000.00 |
| Willkie | $ - |
| Zuill | $ 2,000.00 |
| **TOTAL** | **$ 1,171,722.60** |

52.     Certain of the Retained Professionals also provided voluntary adjustments, as described in their Fee Applications.   As detailed in **Figure 7**, these voluntary adjustments resulted in cumulative costs savings to the estate of $2,678,995.47 for fees and expenses incurred during the Final Fee Period.

**Figure 7:  Voluntary Adjustments**

| RETAINED PROFESSIONAL ▼ | VOLUNTARY ADJUSTMENT ▼ |
|---|---|
| Baker Tilly | $ 703,390.55 |
| Cole Schotz | $ 40,417.11 |
| E&Y | $ 34,663.19 |
| FTI | $ 9,951.07 |
| Kirkland | $ 709,407.50 |
| KPMG | $ 38,246.78 |
| Kramer | $ 453,678.63 |
| PwC | $ 689,240.64 |
| **TOTAL** | **$ 2,678,995.47** |



53.     In the aggregate, as detailed in **Exhibit A** and **Figure 8,** the negotiated adjustments and the voluntary adjustments resulted in cumulative savings to the estate of $3,850,718.07 for services rendered and expenses incurred during the Final Fee Period.

**Figure 8:  Cumulative Savings**

| RETAINED PROFESSIONAL | CUMULATIVE ADJUSTMENT |
|---|---|
| Alvarez | $ 100,000.00 |
| Baker Tilly | $ 803,390.55 |
| Cole Schotz | $ 80,417.11 |
| Conyers | $ 11,651.10 |
| E&Y | $ 114,663.19 |
| FTI | $ 59,951.07 |
| Houlihan | $ 52,193.80 |
| Jackson Walker | $ 10,000.00 |
| Kirkland | $ 973,439.86 |
| KPMG | $ 48,746.78 |
| Kramer | $ 613,678.63 |
| Machado | $ 1,855.00 |
| PMA | $ 2,000.00 |
| PwC | $ 13,000.00 |
| PWP | $ 714,240.64 |
| Quinn | $ 6,000.00 |
| Selmer | $ 5,350.00 |
| Skadden | $ 48,140.34 |
| Slaughter and May | $ 170,000.00 |
| Thommessen | $ 20,000.00 |
| Willkie | $ - |
| Zuill | $ 2,000.00 |
| **TOTAL** | **$ 3,850,718.07** |



54.     These cumulative savings to the estate resolve the Fee Examiner's concerns with the Final Fee Applications.  The Fee Examiner therefore does not object to the entry of orders approving the Final Fee Applications subject to reductions for the voluntary adjustments.

A. **Debtors' Professionals**

      i.      *Kirkland & Ellis LLP and Kirkland & Ellis International LLP*

     55.     On September 29, 2017, the Debtors filed the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 192] (the "Kirkland Retention Application").  On October 31, 2017, the Court entered the *Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 366] (the "Kirkland Retention Order").

     56.     In the Kirkland Retention Application, Kirkland & Ellis LLP and Kirkland & Ellis International LLP ("Kirkland") describes its services as principal counsel to the Debtors as follows:

- advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

- advising and consulting on the conduct of these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

- attending meetings and negotiating with representatives of creditors and other parties in interest;

- taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

- preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

- representing the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

- advising the Debtors in connection with any potential sale of assets;

- appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

- advising the Debtors regarding tax matters;

- taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto;

- advising and consulting on the conduct of any proceedings ancillary to these chapter 11 cases;

- performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors; and (iii) advising the Debtors on corporate and litigation matters; and

- advising certain direct and indirect subsidiaries of the Debtors and non-Debtors with respect to matters related to the Debtors' restructuring.

*See* Kirkland Retention Application, ¶ 9.

### 1. **Kirkland Interim Fee Application**

57.    On March 9, 2018, Kirkland filed the *First Interim Fee Application of Kirkland & Ellis LLP and Kirkland & Ellis International LLP, Attorneys for the Debtors and Debtors in Possession, for the Period from September 12, 2017 Through and Including December 31, 2017* [Docket No. 1061] (the "Kirkland Interim Fee Application").   In the Kirkland Interim Fee Application, Kirkland sought approval of fees of $10,913,123.00 and expenses of $477,935.28. In the Kirkland Interim Fee Application, Kirkland indicates that it voluntarily adjusted its fees by $354,021.50 and its expenses by $95,477.33 for the First Interim Fee Period.  *See* Kirkland Fee Application, ¶ 69.

58.     In the Kirkland Interim Fee Application, Kirkland indicates that its timekeepers performed 12,662.70 hours of work at a blended rate of $923.41 per hour for professionals and $345.06 per hour for paraprofessionals.  *See* Kirkland Fee Application, at 3.

59.     On April 20, 2018, the Fee Examiner and his counsel participated in the Interim Fee Conference with Kirkland to discuss the Kirkland Interim Fee Application.  The Fee Examiner and his counsel presented their observations regarding Kirkland's compliance with the Review Guidelines in the Kirkland Interim Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.  Following the Interim Fee Conference, Kirkland provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Interim Fee Conference.

60.     On June 8, 2017, the Fee Examiner filed the *Fee Examiner's First Supplemental Report Regarding Review of First Interim Fee Application of Kirkland & Ellis LLP and Kirkland & Ellis International LLP, Attorneys for the Debtors and Debtors in Possession, for the Period September 12, 2017 Through and Including December 31, 2017* [Docket No. 1365] (the "Supplemental Fee Examiner's Report").   In the Supplemental Fee Examiner's Report, the Fee Examiner stated that

> The Fee Examiner and his counsel identified certain of [Kirkland's] time entries that:  (1) had numerous professionals attending hearings, meetings, or conference calls; (2) did not include sufficient detail; (3) had partners or high billing professionals perform work that associates or lower billing rate professionals could perform; and (4) had blocked billed or lumped time entries. Additionally, the Fee Examiner and his counsel identified certain expense items that were either vague or improperly billed.  [Kirkland] agreed to eliminate these identified expense entries in their entirety.

Supplemental Fee Examiner's Report, ¶ 6.

61.     After the Interim Fee Conference with Kirkland, the Fee Examiner and Kirkland continued to discuss the Kirkland Interim Fee Application.  As a result of these discussions, and as disclosed in the Supplemental Fee Examiner's Report, Kirkland "agreed to discount its fees and expenses [incurred in the First Interim Fee Period] by approximately $149,000.00."  *Id.* at ¶ 10.   This adjustment (the "Kirkland Interim Fee Adjustment") resolved "the concerns of the Fee Examiner regarding the Kirkland [Interim] Fee Application."  *Id.*

### 2.   Kirkland Final Fee Application

62.     On June 1, 2018, Kirkland filed the *Second Interim and Final Fee Application of Kirkland & Ellis LLP and Kirkland & Ellis International LLP, Attorneys for the Debtors and Debtors in Possession, for the Period from September 12, 2017 Through and Including April 17, 2018* [Docket No. 1333] (the "Kirkland Final Fee Application").   In the Kirkland Final Fee Application, Kirkland sought approval of fees of $20,306,823.00 and expenses of $1,078,097.02 for the Final Fee Period.[15]   In the Kirkland Final Fee Application, Kirkland indicates that it voluntarily adjusted its fees by $844,407.50 and its expenses by $217,769.37[16] for the Final Fee Period.  *See* Kirkland Final Fee Application, ¶ 65.

63.     In the Kirkland Final Fee Application, Kirkland indicates that its timekeepers performed 22,605.20 hours of work at a blended rate of $963.30 per hour for professionals and $335.93 per hour for paraprofessionals for the Final Fee Period.   *See* Kirkland Final Fee Application, at 3.

64.     On July 26, 2018, the Fee Examiner and his counsel participated in the Final Fee Conference with Kirkland to discuss the Kirkland Final Fee Application.  The Fee Examiner and his counsel presented their observations regarding Kirkland's compliance with the Review

---

[15] These figures are net of the Kirkland Interim Fee Adjustment.  *See* Kirkland Final Fee Application, p. 2 nn. 1–2.
[16] These figures are net of the Kirkland Interim Fee Adjustment.  *See id.* at p. 31 nn. 8–9.

Guidelines in the Kirkland Final Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.   Specifically, the Fee Examiner and his counsel identified certain of Kirkland's time entries that: (1) had numerous professionals attending hearings, meetings, or conference calls; (2) did not include sufficient detail; (3) had partners or high billing professionals perform work that associates or lower billing rate professionals could perform; (4) had blocked billed or lumped time entries; and (5) had time entries for invoicing.  Additionally, the Fee Examiner and his counsel identified certain expense items that were either vague or exceeded the Expense Rubric.

65.     Following the Final Fee Conference, Kirkland provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Final Fee Conference. As a result of these discussions, Kirkland offered and the Fee Examiner accepted a negotiated adjustment of $115,000.00 for the fees and expenses incurred in the Second Interim Fee Period, in addition to the Kirkland Interim Fee Adjustment.  The negotiated adjustment resolves the concerns of the Fee Examiner regarding the Kirkland Final Fee Application, and the Fee Examiner does not object to an order approving the Kirkland Final Fee Application.

ii.     *Alvarez & Marsal North America, LLP and Alvarez & Marsal Europe LLP*

66.     On September 30, 2017, the Debtors filed the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Alvarez & Marsal North America, LLP and Alvarez & Marsal Europe LLP as Financial Advisors* Nunc Pro Tunc *to the Petition Date* [Docket No. 204] (the "Alvarez Retention Application").  On October 31, 2017, the Court entered the *Order Authorizing the Retention and Employment of Alvarez & Marsal North America, LLP and Alvarez & Marsal Europe LLP as Financial Advisors* Nunc Pro Tunc *to the Petition Date* [Docket No. 371] (the "Alvarez Retention Order").

67.     In the Alvarez Retention Application, Alvarez & Marsal North America, LLP and Alvarez & Marsal Europe LLP ("Alvarez") describes its services as financial advisor to the Debtors as follows:

- providing assistance to the Debtors in the preparation of financial-related disclosures required by the Court, including the Debtors' Schedules of Assets and Liabilities, Statements of Financial Affairs and Monthly Operating Reports;

- providing assistance with the identification and implementation of short-term cash management procedures;

- providing assistance with identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the affirmation or rejection of each;

- providing assistance to Debtors' management team and counsel focused on the coordination of resources related to the ongoing reorganization effort;

- providing assistance in the preparation of financial information for distribution to creditors and others, including, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which Court approval is sought;

- attending meetings and providing assistance in discussions with potential investors, banks, and other secured lenders, any official committee(s) appointed in these chapter 11 cases, the United States Trustee, other parties in interest and professionals hired by same, as requested;

- analyzing creditor claims by type, entity, and individual claim, including assisting with development of databases, as necessary, to track such claims;

- assisting in the preparation of information and analysis necessary for the confirmation of a plan of reorganization in these chapter 11 cases, including information contained in the disclosure statement;

- providing assistance in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers;

- providing expert witness testimony on case related issues as required by the debtors; and

- rendering such other general business consulting or such other assistance as Debtors' management or counsel may deem necessary consistent with the

role of a financial advisor to the extent that it would not be duplicative of services provided by other professionals in this proceeding.

*See* Alvarez Retention Application, ¶ 11.

### 1. <u>Alvarez Interim Fee Application</u>

68. On March 5, 2018, Alvarez filed the *First Interim Fee Application of Alvarez & Marsal North America, LLP and Alvarez & Marsal Europe LLP as Financial Advisors for the Debtors and Debtors in Possession, for the Period from September 13, 2017 Through and Including December 31, 2017* [Docket No. 1042] (the "<u>Alvarez Interim Fee Application</u>").  In the Alvarez Interim Fee Application, Alvarez seeks approval of fees of $6,895,760.00 and expenses of $753,532.47.

69. In the Alvarez Interim Fee Application, Alvarez indicates that its timekeepers performed 12,820.80 hours of work at a blended rate of $543.93 per hour for professionals and $300.00 per hour for paraprofessionals.  *See* Alvarez Interim Fee Application, at 3.

70. On April 23, 2018, the Fee Examiner and his counsel participated in the Interim Fee Conference with Alvarez to discuss the Alvarez Interim Fee Application.  The Fee Examiner and his counsel presented their observations regarding Alvarez's compliance with the Review Guidelines in the Alvarez Interim Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.  Specifically, the Fee Examiner and his counsel identified certain of Alvarez's time entries that:  (1) had numerous professionals attending hearings, meetings, or conference calls; (2) did not include sufficient detail; (3) had partners or high billing professionals perform work that associates or lower billing rate professionals could perform; and (4) had blocked billed or lumped time entries.  Following the Initial Conference, Alvarez provided the Fee Examiner and his counsel with additional information pertaining to these matters raised in the Initial Conference.

71.     During the course of its employment as the Debtors' financial advisor, Alvarez sent many of its professionals overseas to assist with the Debtors' businesses in the United Kingdom for multiple weeks at a time.  Because transatlantic flights are expensive, instead of flying professionals back and forth from the United States to the United Kingdom on the weekends, Alvarez proposed an alternative expense structure to the Debtors.  The alternative expense structure is referred to herein as the "In Lieu of Charges."  The In Lieu of Charges included hotels, meals, European transportation, and laundry within a budget agreed upon by Alvarez and the Debtors.  Alvarez's incurred the In Lieu of Charges to minimize the cost to the estate of significant transatlantic flights.  For the Final Period, Alvarez incurred In Lieu of Charges for approximately $95,000.00.  The Fee Examiner believes the In Lieu of Charges saved the estate a substantial amount in excess of the In Lieu of Charges.  The Fee Examiner does not object to these charges and believes the alternative expense structure was beneficial to the estate.[17]

72.     After the Interim Fee Conference, the Fee Examiner and Alvarez continued to discuss the Alvarez Fee Application.  To facilitate continued discussions regarding the Alvarez Interim Fee Application and in light of the deadline for final fee applications in the Chapter 11 Cases, Alvarez and the Fee Examiner have agreed to continue the hearing on the Alvarez Interim Fee Application until the hearing on Alvarez's final fee application.  Pending the hearing on Alvarez's final fee application, the Fee Examiner consented to the payment of the Holdback Disbursement to Alvarez.

73.     During the continued discussions with Alvarez, Alvarez offered and the Fee Examiner accepted a negotiated adjustment of $50,000 for fees and expenses incurred in the First Interim Fee Period.

---

[17] The Fee Examiner did review the In Lieu of Charges for compliance with the Expense Rubric.

### 2. Alvarez Final Fee Application

74.   On May 31, 2018, Alvarez filed the *Second Interim and Final Fee Application of Alvarez & Marsal North America, LLP and Alvarez & Marsal Europe LLP as Financial Advisors for the Debtors and Debtors in Possession for the Period from September 13, 2017 through and including April 17, 2018* [Docket No. 1304] (the "Alvarez Final Fee Application"). In the Alvarez Final Fee Application, Alvarez sought approval of fees of $11,953,967.50 and expenses of $1,236,768.45 for the Final Fee Period.

75.   In the Alvarez Final Fee Application, Alvarez indicates that its timekeepers performed 21,334.20 hours of work at a blended rate of $560.32 per hour for professionals and $300.00 per hour for paraprofessionals for the Final Fee Period. *See* Alvarez Final Fee Application, at 3.

76.   On July 30, 2018, the Fee Examiner and his counsel participated in the Final Fee Conference with Alvarez to discuss the Alvarez Final Fee Application. The Fee Examiner and his counsel presented their observations regarding Alvarez's compliance with the Review Guidelines in the Alvarez Final Fee Application. The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses. Specifically, the Fee Examiner and his counsel identified certain of Alvarez's time entries that: (1) had numerous professionals attending hearings, meetings, or conference calls; (2) did not include sufficient detail; (3) had partners or high billing professionals perform work that associates or lower billing rate professionals could perform; and (4) had blocked billed or lumped time entries. The Fee Examiner and his counsel also reviewed the In Lieu of Charges and identified certain expense items that were either vague or exceed the Expense Rubric.

77.     Following the Final Fee Conference, Alvarez provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Final Fee Conference. As a result of these discussions, Alvarez offered and the Fee Examiner accepted a negotiated adjustment of its fees and expenses by $50,000.00 for the Second Interim Fee Period, for a cumulative negotiated adjustment of $100,000.00 for the Final Fee Period. The negotiated adjustment resolves the concerns of the Fee Examiner regarding the Alvarez Final Fee Application, and the Fee Examiner does not object to an order approving the Alvarez Final Fee Application.

       *iii.*    *PricewaterhouseCoopers LLP*

78.     On September 29, 2017, the Debtors filed the *Debtors' Application for Entry of an Order Authorizing the Employment and Retention of PricewaterhouseCoopers LLP as Independent Auditor for the Debtors Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 194] (the "PwC Retention Application").   On October 31, 2017, the Court entered the *Order Authorizing the Employment and Retention of PricewaterhouseCoopers LLP as Independent Auditor to the Debtors Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 367] (the "PwC Retention Order").

79.     In the PwC Retention Application, PricewaterhouseCoopers LLP ("PwC") describes its services as independent auditors to the Debtors as follows:

For Debtors Seadrill Limited and North Atlantic Drilling Limited

- Auditing the consolidated financial statements of the Debtors at December 31, 2017 and for the year then ending, auditing the effectiveness of the Debtors' internal control over financial reporting as of December 31, 2017, and providing Debtors with an integrated audit report related to those financial statements;

- Conducting interim reviews for each of the first three quarterly periods in the year ending December 31, 2017;

- Communicating with the audit committee and management about any matters that PwC UK believed may require material modifications to the quarterly financial information to make it conform with accounting principles generally accepted in the United States;

- Examining evidence supporting the amounts and disclosures in the financial statements, assessing accounting principles used and significant estimates made by management, and evaluating the overall financing statement presentation; and

- Performing certain incremental audit and review procedures in connection with the Chapter 11 Cases, including, but not limited to, analyzing the Debtors' identification of pre and postpetition liabilities, reviewing the Debtors' consolidated financial statements and reorganization expenses, performing controls testing of new or modified controls established during the bankruptcy process, and providing accounting advice regarding the adoption of debtor in possession accounting.

For Debtors North Atlantic Drilling UK Ltd. and North Atlantic Support Services Limited

- Performing statutory audit services for the financial year ending December 31, 2017 and subsequent years.

*See* PwC Retention Application, ¶ 9.

### 1. **PwC Interim Fee Application**

80.     On   March   7,   2018,   PwC   filed   the   *First   Interim   Application   of PricewaterhouseCoopers LLP as Independent Auditors to the Debtors for Allowance of Compensation and Reimbursement of Expenses* [Docket No. 1050] (the "PwC Interim Fee Application").     In   the   PwC   Interim   Fee   Application,   PwC   seeks   approval   of   fees   of $1,228,296.25 and expenses of $18,134.94.

81.     In   the   PwC   Interim   Fee   Application,   PwC   indicates   that   its   timekeepers performed 3,349.30 hours of work at a blended rate of $366.73 per hour for professionals.  *See* PwC Interim Fee Application, at 3.

82.     On April 20, 2018, the Fee Examiner and his counsel participated in the Interim Fee Conference with PwC to discuss the PwC Interim Fee Application.  The Fee Examiner and

his counsel presented their observations regarding PwC's compliance with the Review Guidelines in the PwC Interim Fee Application. The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses. Specifically, the Fee Examiner and his counsel identified certain of PwC's time entries that: (1) had numerous professionals attending hearings, meetings, or conference calls; (2) did not include sufficient detail; and (3) included potentially non-compensable administrative tasks. Additionally, the Fee Examiner and his counsel identified certain expense items that were either vague or improperly billed. Following the Interim Fee Conference, PwC provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Interim Fee Conference.

83.    After the Interim Fee Conference, the Fee Examiner and PwC continued to discuss the PwC Interim Fee Application. To facilitate continued discussions regarding the PwC Interim Fee Application and in light of the approaching deadline for final fee applications in the Chapter 11 Cases, PwC and the Fee Examiner agreed to continue the hearing on the PwC Interim Fee Application until the hearing on the PwC's final fee application. Pending the hearing on PwC's final fee application, the Fee Examiner consented to the payment of the Holdback Disbursement to PwC.

### 2.  PwC Final Fee Application

84.    On June 1, 2018, PwC filed the *Second Interim and Final Fee Application of PricewaterhouseCoopers LLP as Independent Auditors to the Debtors for Allowance of Compensation and Reimbursement of Expenses* [Docket No. 1335] (the "PwC Final Fee Application"). In the PwC Final Fee Application, PwC seeks approval of fees of $2,845,977.59 and expenses of $77,884.42 for the Final Fee Period. In the PwC Final Fee Application, PwC

indicates that it voluntarily adjusted its fees by $689,240.64 for the Final Fee Period. *See* PwC Final Fee Application, ¶ 13.

85. In the PwC Final Fee Application, PwC indicates that its timekeepers performed 10,081.70 hours of work at a blended rate of $282.29 per hour for professionals for the Final Fee Period. *See* PwC Final Fee Application, at 3.

86. On August 8, 2018, the Fee Examiner and his counsel participated in the Final Fee Conference with PwC to discuss the PwC Final Fee Application. The Fee Examiner and his counsel presented their observations regarding PwC's compliance with the Review Guidelines in the PwC Final Fee Application. The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses. Specifically, the Fee Examiner and his counsel identified certain of PwC's time entries that: (1) had numerous professionals attending hearings, meetings, or conference calls; (2) did not include sufficient detail; or (3) included potentially non-compensable administrative tasks. Additionally, the Fee Examiner and his counsel identified certain expense items that were either vague or improperly billed.

87. Following the Final Fee Conference, PwC provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Final Fee Conference. As a result of these discussions, PwC agreed to voluntarily adjust its fees and expenses by $25,000.00 for the Final Fee Period. The negotiated adjustment resolves the concerns of the Fee Examiner regarding the PwC Final Fee Application, and the Fee Examiner does not object to an order approving the PwC Final Fee Application.

iv. *Conyers Dill & Pearman Limited*

88. On September 30, 2017, the Debtors filed the *Debtors' Application for Entry of an Order Pursuant to Section 327(e) of the Bankruptcy Code Authorizing and Approving Employment and Retention of Conyers Dill & Pearman Limited as Special Bermuda Counsel for*

43

*the Debtors Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 200] (the "Conyers Retention Application").  On October 31, 2017, the Court entered the *Order Pursuant to Section 327(e) of the Bankruptcy Code Authorizing and Approving Employment and Retention of Conyers Dill & Pearman Limited as Special Counsel for the Debtors Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 370] (the "Conyers Retention Order").

89.     In the Conyers Retention Application, Conyers Dill & Pearman Limited ("Conyers") describes its services as special Bermuda counsel to the Debtors as follows:

- Commencing parallel liquidation proceedings in Bermuda pursuant to the Companies Act 1981 of Bermuda;

- Appointing joint provisional liquidators;

- Treating shares of Seadrill Limited, North Atlantic Drilling Limited, and Sevan Drilling Limited as well as the commencement of parallel proceeding to implement the transaction steps set forth in the restructuring support agreement;

- Conducting an ongoing review and analysis of various laws of Bermuda; and

- Advising and representing the Debtors on all aspects of Bermuda restructuring and insolvency law.

*See* Conyers Retention Application, ¶¶ 9–10.

### 1.  Conyers Interim Fee Application

90.     On March 7, 2018, Conyers filed the *First Interim Fee Application of Conyers Dill & Pearman Limited, Special Bermuda Counsel for the Debtors and Debtors in Possession, for the Period from September 13, 2017 through and Including December 31, 2017* [Docket No. 1051] (the "Conyers Interim Fee Application").  In the Conyers Interim Fee Application, Conyers seeks approval of fees of $311,804.25 and expenses of $7,044.67.

91.     In the Conyers Interim Fee Application, Conyers indicates that its timekeepers performed 471.75 hours of work at a blended rate of $652.00 per hour for professionals and $150.00 per hour for paraprofessionals.  *See* Conyers Interim Fee Application, at 3.

92.     On April 24, 2018, the Fee Examiner and his counsel participated in the Interim Fee Conference with Conyers to discuss the Conyers Interim Fee Application.   The Fee Examiner and his counsel presented their observations regarding Conyers' compliance with the Review Guidelines in the Conyers Interim Fee Application.   The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.   Specifically, the Fee Examiner and his counsel identified certain of Conyers' time entries that:   (1) did not include sufficient detail and (2) had partners or high billing professionals perform work that associates or lower billing rate professionals could potentially perform.   Following the Interim Fee Conference, Conyers provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Interim Fee Conference.

93.     The Fee Examiner and Conyers continued to discuss the Conyers Interim Fee Application.   To facilitate continued discussions regarding the Conyers Interim Fee Application and in light of the deadline for final fee applications in the Chapter 11 Cases, Conyers and the Fee Examiner agreed to continue the hearing on the Conyers Interim Fee Application until the hearing on Conyers' final fee application.   Pending the hearing on Conyers' final fee application, the Fee Examiner consented to the payment of the Holdback Disbursement to Conyers.

## 2.   Conyers Final Fee Application

94.     On May 31, 2018, Conyers filed the *Second Interim and Final Fee Application of Conyers Dill & Pearman Limited, Special Bermuda Counsel for the Debtors and Debtors in Possession, for the Period from January 1, 2018 through and including April 17, 2018* [Docket

No. 1305] (the "Conyers Final Fee Application").   In the Conyers Final Fee Application, Conyers seeks approval of fees of $815,631.25 and expenses of $105,440.51 for the Final Fee Period.

95.     In the Conyers Final Fee Application, Conyers indicates that its timekeepers performed 1,313.50 hours of work at a blended rate of $711.00 per hour for professionals and $150.00 per hour for paraprofessionals for the Final Fee Period.  *See* Conyers Final Fee Application, at 49–50.

96.     On August 7, 2018, the Fee Examiner and his counsel participated in the Final Fee Conference with Conyers to discuss the Conyers Final Fee Application.  The Fee Examiner and his counsel presented their observations regarding Conyers' compliance with the Review Guidelines in the Conyers Final Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.   Specifically, the Fee Examiner and his counsel identified certain of Conyers' time entries that:  (1) did not include sufficient detail; (2) had blocked billed or lumped time entries; and (3) were charged at rates that were in excess of those approved by the Conyers Retention Order.  Additionally, the Fee Examiner and his counsel identified certain expense items that were either vague or improperly billed.

97.     Following the Final Fee Conference, Conyers provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Final Fee Conference.  As a result of these discussions, Conyers offered and the Fee Examiner accepted a negotiated adjustment of $11,651.10 for fees and expenses for the Final Fee Period.  The negotiated adjustment resolves the concerns of the Fee Examiner regarding the Conyers Final Fee Application, and the Fee Examiner does not object to an order approving the Conyers Final Fee Application.

v.      *Skadden, Arps, Slate, Meagher & Flom LLP*

98.      On September 29, 2017, the Debtors filed the *Debtors' Application for Order Under 11 U.S.C. § 327(e) Authorizing Employment of Skadden, Arps, Slate, Meagher & Flom LLP and Affiliates as Special Counsel* Nunc Pro Tunc *to the Petition Date* [Docket No. 197] (the "Skadden Retention Application").   On November 1, 2017, the Court entered the *Order Authorizing Employment of Attorneys* [Docket No. 390] (the "Skadden Retention Order").[18]

99.      In the Skadden Retention Application, Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") describes its services as special counsel to the Debtors as follows:

- Advising the Debtors on regulatory-compliance matters connected to their Brazilian businesses, including analyzing and counseling Debtors on risks arising under the U.S. Foreign Corrupt Practices Act, the UK Bribery Act, and other anticorruption laws; and

- Representing the Debtors in connection with an arbitration proceeding arising from agency agreements, developing strategies for the arbitration and addressing issues in connection with the proceeding.

*See* Skadden Retention Application, ¶¶ 19–22.

### 1.  **Skadden Interim Fee Application**

100.      On March 7, 2018, Skadden filed the *First Interim Fee Application of Skadden, Arps, Slate, Meagher & Flom LLP as Debtors' Special Counsel for Compensation for Services Rendered and Reimbursement of Expenses* [Docket No. 1052] (the "Skadden Interim Fee Application").   In the Skadden Interim Fee Application, Skadden seeks approval of fees of $1,556,006.70 (including VAT) and expenses of $758,520.37 (including VAT).   Skadden's expense request includes the fees of the barristers Skadden retained in connection with its representation of the Debtors.   In the Skadden Interim Fee Application, Skadden indicates that it

---

[18] The Skadden Retention Order required that "[a]ny barrister retained [by Skadden] . . . shall submit time entries in 0.1 hourly increments."  *See* Skadden Retention Order, ¶ 6.

discounted its fees by five percent (5%) for the First Interim Fee Period, consistent with prepetition practice. *See* Skadden Interim Fee Application, ¶ 34(a).

101.    In the Skadden Interim Fee Application, Skadden indicates that its timekeepers performed 1,930.20[19] hours of work at a blended rate of $801.27 per hour for professionals and $301.38 per hour for paraprofessionals. *See* Skadden Interim Fee Application, at 22–23.

102.    On April 23, 2018, the Fee Examiner and his counsel participated in the Interim Fee Conference with Skadden to discuss the Skadden Interim Fee Application.  The Fee Examiner and his counsel presented their observations regarding Skadden's compliance with the Review Guidelines in the Skadden Interim Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.  Specifically, the Fee Examiner and his counsel identified certain of Skadden's time entries that:  (1) had numerous professionals attending hearings, meetings, or conference calls and (2) did not include sufficient detail. Additionally, the Fee Examiner and his counsel identified certain expense items that were either vague, including insufficient fee details for certain barrister invoices, or improperly billed. Following the Interim Fee Conference, Skadden provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Interim Fee Conference.

103.    The Fee Examiner and Skadden continued to discuss the Skadden Interim Fee Application.  To facilitate continued discussions regarding the Skadden Interim Fee Application and in light of the approaching deadline for final fee applications in the Chapter 11 Cases, Skadden and the Fee Examiner agreed to continue the hearing on the Skadden Interim Fee Application until the hearing on Skadden's final fee application.  Pending the hearing on

---

[19] In the coversheet to the Skadden Interim Fee Application, Skadden indicates that the total hours worked in the First Interim Fee Period total 1,930.20.  *See* Skadden Interim Fee Application, at 3.  In the body of the Skadden Interim Fee Application, Skadden indicates that the hours worked during the First Interim Fee Period total 1,927.60.  *See* Skadden Interim Fee Application, ¶ 14.

Skadden's final fee application, the Fee Examiner consented to the payment of the Holdback Disbursement to Skadden.

### 2. **Skadden Final Fee Application**

104.     On June 1, 2018, Skadden filed the *Second Interim and Final Fee Application of Skadden, Arps, Slate, Meagher & Flom LLP as Debtors' Special Counsel for Compensation for Services Rendered and Reimbursement of Expenses* [Docket No. 1338] (the "Skadden Final Fee Application").   In the Skadden Final Fee Application, Skadden seeks approval of fees of $2,369,145.46 (including VAT) and expenses of $832,239.24 (including VAT) for the Final Fee Period.   In the Skadden Final Fee Application, Skadden indicates that it discounted its fees by five percent (5%) for the Final Fee Period, consistent with prepetition practice.   *See* Skadden Final Fee Application, ¶ 38(a).

105.     In the Skadden Final Fee Application, Skadden indicates that its timekeepers performed 2,874.90 hours of work at a blended rate of $811.47 per hour for professionals and a blended rate of $309.93 per hour for paraprofessionals for the Final Fee Period.   *See* Skadden Final Fee Application, at 24–25.

106.     On July 27, 2018, the Fee Examiner and his counsel participated in the Final Fee Conference with Skadden to discuss the Skadden Final Fee Application.   The Fee Examiner and his counsel presented their observations regarding Skadden's compliance with the Review Guidelines in the Skadden Final Fee Application.   The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.   Specifically, the Fee Examiner and his counsel identified certain of Skadden's time entries that:   (1) did not include sufficient detail and (2) related to potentially non-compensable administrative tasks and retention-related matters.

Additionally, the Fee Examiner and his counsel identified certain expense items that were either vague or improperly billed.

107.     Following the Final Fee Conference, Skadden provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Final Fee Conference. As a result of these discussions, Skadden offered and the Fee Examiner accepted a negotiated adjustment of its fees and expenses by $48,140.34 for the Final Fee Period.  The negotiated adjustment resolves the concerns of the Fee Examiner regarding the Skadden Final Fee Application, and the Fee Examiner does not object to an order approving the Skadden Final Fee Application.

 *vi.*     *Slaughter and May*

108.     On September 30, 2017, the Debtors filed the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Slaughter and May as Special Corporate Counsel* Nunc Pro Tunc *to the Petition Date* [Docket No. 201] (the "Slaughter and May Retention Application").  On October 31, 2017, the Court entered the *Order Authorizing the Retention and Employment of Slaughter and May as Special Corporate Counsel* Nunc Pro Tunc *to the Petition Date* [Docket No. 374] (the "Slaughter and May Retention Order").

109.     In the Slaughter and May Retention Application, Slaughter and May describes its services as special corporate counsel to the Debtors as follows:

- drafting, reviewing and agreeing the full form documents required to implement:

  o     the proposed restructuring of the Debtors' existing bank debt; and

  o     the recapitalization of the Debtors with the Debtors' group of existing bank lenders and new money investors under the terms of the Restructuring Support Agreement and the Investment Agreement, including the terms of credit facility agreements, notes indentures, intercreditor agreements, contribution agreements, cash pooling agreements and other finance and security documents;

- providing further work relating to the ring-fencing of certain of the Debtors' non- majority owned affiliates;

- implementing the restructuring of the group of companies comprising Seadrill and its subsidiaries pursuant to the Restructuring Support Agreement;

- providing advice in respect of, and drafting and reviewing documents in respect of the arrangements of Seadrill and certain of its subsidiaries with SFL;

- providing advice in respect of the Debtors' strategy concerning the hedging of its liabilities under various contractual arrangements following the completion of the Debtors' Chapter 11 Cases, and drafting documents to implement this hedging strategy;

- considering and evaluating any alternative proposals in respect of a restructuring of the Debtors' existing bank debt and bond debt and/or a recapitalization of the Debtors, including to the extent that such alternative proposals are explored as part of the Chapter 11 "go-shop" process;

- providing advice on an ongoing basis in respect of the Debtors' compliance with the Initial Consent and Waiver Terms throughout the duration of the Debtors' Chapter 11 Cases;

- providing advice in respect of the involvement of AOD in the proposed restructuring of the Debtors' existing bank debt and the recapitalization of the Debtors; and

- providing additional English law work connected with the Debtors' Chapter 11 Cases.

*See* Slaughter and May Retention Application, ¶ 10.

### 1. <u>Slaughter and May Interim Fee Application</u>

110. On March 9, 2018, Slaughter and May filed the *First Interim Fee Application of Slaughter and May as Special Corporate Counsel to the Debtors and Debtors in Possession for the Period from September 12, 2017 Through and Including December 31, 2017* [Docket No. 1060] (the "<u>Slaughter and May Interim Fee Application</u>"). In the Slaughter and May Interim Fee Application, Slaughter and May seeks approval of fees of £2,244,169.55 (or approximately

$3,096,953.98) and expenses of £54,532.05 (or approximately $75,254.23).[20]  In the Slaughter and May Interim Fee Application, Slaughter and May indicates it provided a seven and one-half percent (7.5%) volume discount to its fees for the First Interim Fee Period, consistent with prepetition practice.  *See* Slaughter and May Interim Fee Application, at 268.

111.    In the Slaughter and May Interim Fee Application, Slaughter and May indicates that its timekeepers performed 4,766.70 hours of work at a blended rate of £470.80 (or approximately $649.70) per hour for professionals.  *See* Slaughter and May Interim Fee Application, at 2.

112.    On April 24, 2018, the Fee Examiner and his counsel participated in the Interim Fee Conference with Slaughter and May to discuss the Slaughter and May Interim Fee Application.  The Fee Examiner and his counsel presented their observations regarding Slaughter and May's compliance with the Review Guidelines in the Slaughter and May Interim Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.  Specifically, the Fee Examiner and his counsel identified certain of Skadden's time entries that:  (1) did not include sufficient detail; (2) had blocked billed or lumped time entries; (3) had an unclear benefit to the estate.  Additionally, the Fee Examiner and his counsel identified certain expense items that were vague.  Following the Interim Fee Conference, Slaughter and May provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Interim Fee Conference.

113.    The Fee Examiner and Slaughter and May continued to discuss the Slaughter and May Interim Fee Application.  To facilitate continued discussions regarding the Slaughter and May Interim Fee Application and in light of the deadline for final fee applications in the Chapter

---

[20] Pursuant to the Slaughter and May Interim Fee Application, USD amounts were calculated using a GBP-USD exchange rate of 1.38 USD: 1 GBP. *See* Slaughter and May Interim Fee Application, at 2 n.2.

11 Cases, Slaughter and May and the Fee Examiner agreed to continue the hearing on the Slaughter and May Interim Fee Application until the hearing on Slaughter and May's final fee application.  Pending the hearing on Slaughter and May's final fee application, the Fee Examiner consented to the payment of the Holdback Disbursement to Slaughter and May.

> ## 2.   <u>Slaughter and May Final Fee Application</u>

114.     On June 1, 2018, Slaughter and May filed the *Final Fee Application of Slaughter and May as Special Corporate Counsel to the Debtors and Debtors in Possession for the Period from January 1, 2018 Through April 17, 2018* [Docket No. 1320] (the "<u>Slaughter and May Final Fee Application</u>").  In the Slaughter and May Final Fee Application, Slaughter and May sought approval of fees of £4,237,104.02 (or approximately $5,677,719.39 and expenses of £67,537.91[21] (or approximately $90,500.80 for the Second Interim Fee Period).[22]   In the Slaughter and May Final Fee Application, Slaughter and May indicates it provided a seven and one-half percent (7.5%) volume discount to its fees for the Final Fee Period, consistent with prepetition practice.  *See* Slaughter and May Final Fee Application, at 53.

115.     In the Slaughter and May Final Fee Application, Slaughter and May indicates that its timekeepers performed 9,659.40 hours of work at a blended rate of £438.65 (or approximately $587.79) per hour for professionals.  *See* Slaughter and May Final Fee Application, at 3.

116.     On July 26, 2018, the Fee Examiner and his counsel participated in the Final Fee Conference with Slaughter and May to discuss the Slaughter and May Final Fee Application. The Fee Examiner and his counsel presented their observations regarding Slaughter and May's compliance with the Review Guidelines in the Slaughter and May Final Fee Application.  The

---

[21] Pursuant to the Slaughter and May Final Fee Application, USD amounts were calculated using a GBP-USD exchange rate of 1.34 USD: 1 GBP. *See* Slaughter and May Final Fee Application, at 3 n.3.

[22] These amounts do not include Slaughter and May's requests in the Interim Fee Application.  *See supra* ¶ 110.

Fee Examiner and his counsel also raised questions regarding certain time entries and expenses. Specifically, the Fee Examiner and his counsel identified certain of Slaughter and May's time entries that: (1) did not include sufficient detail; (2) had partners or high billing professionals perform work that associates or lower billing rate professionals could perform; and (3) had blocked billed or lumped time entries. Additionally, the Fee Examiner and his counsel identified certain expense items that were vague.

117.    Following the Final Fee Conference, Slaughter and May provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Final Fee Conference. As a result of these discussions, Slaughter and May offered and the Fee Examiner accepted a negotiated adjustment of $170,000.00 for fees and expenses incurred in the Final Fee Period. The negotiated adjustment resolves the concerns of the Fee Examiner regarding the Slaughter and May Interim Fee Application and the Slaughter and May Final Fee Application, and the Fee Examiner does not object to an order approving the Slaughter and May Interim Fee Application and the Slaughter rand May Final Fee Application.[23]

*vii.*    *KPMG LLP*

118.    On September 29, 2017, the Debtors filed the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of KPMG LLP to Provide Tax Provision and Tax Consulting Services* Nunc Pro Tunc *to the Petition Date* [Docket No. 195] (the "KPMG Retention Application"). On October 31, 2017, the Court entered the *Order Authorizing the Retention and Employment of KPMG LLP to Provide Tax Provision and Tax Consulting Services* Nunc Pro Tunc *to the Petition Date* [Docket No. 368] (the "KPMG Retention Order").

_____

[23] The Fee Examiner notes that the Slaughter and May Final Fee Application does not include the fees and expenses requested in the First Interim Fee Period. For the avoidance of doubt, the Fee Examiner notes that he does not object to either the Slaughter and May Interim Fee Application or the Slaughter and May Final Fee Application.

119.    In the KPMG Retention Application, KPMG describes its services as accountant to the Debtors as follows:

- Assisting in gathering necessary year-end tax and financial information and schedules;

- Assisting in the identification and computation of temporary and permanent differences;

- Computing a preliminary income tax provision for Debtors' review and approval;

- Preparing income tax related balance sheet accounts and foot note disclosures for Debtors' review and approval;

- Assisting Debtors in their efforts to work with their independent auditors to draft income tax provision work papers; and

- Providing services with respect to such matters that may arise for which the Debtors seek KPMG's advice, both written and oral.

*See* KPMG Retention Application, ¶ 7.

## 1.   <u>KPMG Interim Fee Application</u>

120.    On March 7, 2018, KPMG filed the *First Interim Fee Application of KPMG LLP for Compensation for Services Rendered and Reimbursement of Expenses to Provide Tax Provision and Tax Consulting Services to the Debtors and Debtors in Possession for the Period from September 12, 2017 through December 31, 2017* [Docket No. 1049] (the "<u>KPMG Interim Fee Application</u>").   In the KPMG Interim Fee Application, KPMG seeks approval of fees of $134,238.70 and expenses of $0.00.   In the KPMG Interim Fee Application and through provision of receipts for expenses incurred, KPMG indicates that it voluntarily adjust its expenses by $19,483.93.  *See* KPMG Interim Fee Application, at n.4.   In addition, KPMG did not charge the Debtors for lodging expenses of $5,814.18.   KPMG's voluntary expense adjustment therefore totals $25,298.11 for the First Interim Fee Period.   With respect to fees, KPMG represents that the fees charged for tax provision services were reduced by approximately

fifty percent (50%), and the fees charged for tax consulting services were reduced by thirty-five percent (35%) from, in each case, KPMG's normal and customary rates for the types of services rendered. *See* KPMG Retention Application, ¶¶ 11–12. Such rate reductions were consistent with the prepetition engagement letter. *See* KPMG Retention Application, Exhibit B.

121.   In the KPMG Interim Fee Application, KPMG indicates that its timekeepers performed 349.30 hours of work at a blended rate of $384.31 per hour for professionals. *See* KPMG Interim Fee Application, at 5. The KPMG Interim Fee Application generally complied with the Review Guidelines. The Fee Examiner did not identify any questions or concerns with respect to the KPMG Fee Application. The Fee Examiner did not object to the entry of an order approving the KPMG Interim Fee Application.

122.   On June 14, 2018, the Court entered the *Order Granting First Interim Fee Application of KPMG LLP for Compensation for Services Rendered and Reimbursement of Expenses to Provide Tax Provision and Tax Consulting Services to the Debtors and Debtors in Possession for the Period from September 12, 2017 through December 31, 2017* [Docket No. 1373] (the "Order on KPMG's Interim Fee Application")

### 2.   **KPMG Final Fee Application**

123.   On June 1, 2018, KPMG filed the *Second Interim and Final Fee Application of KPMG LLP for Compensation for Services Rendered and Reimbursement of Expenses to Provide Tax Provision, Tax Consulting, Bankruptcy Accounting and Valuation Services to the Debtors for Entry of an Order (i) Granting Interim Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred for the Period January 1, 2018 through April 17, 2018; (ii) Granting Final Allowance of Compensation for the Period September 12, 2017 through April 17, 2018; and (iii) Authorizing and Directing the Debtors to Pay any Unpaid Fees*

[Docket No. 1321] (the "KPMG Final Fee Application").  In the KPMG Final Fee Application, KPMG seeks approval of fees of $2,037,544.35 and expenses of $92,731.22 for the Final Fee Period, including amounts sought in KPMG's Interim Fee Application and subsequently granted in the Court's Order on KPMG's Interim Fee Application.  In the KPMG Final Fee Application, KPMG indicates that it voluntarily adjusted its fees by $5,498.80 and its expenses by $7,449.87 for the Second Interim Fee Period.  *See* KPMG Final Fee Application, 7.

124.    In the KPMG Final Fee Application, KPMG indicates that its timekeepers performed 5,132.80 hours of work at a blended rate of $398.04 per hour for the Final Fee Period. *See* KPMG Final Fee Application, at 9.

125.    On July 25, 2018, the Fee Examiner and his counsel participated in the Final Fee Conference with KPMG to discuss the KPMG Final Fee Application.  The Fee Examiner and his counsel presented their observations regarding KPMG's compliance with the Review Guidelines in the KPMG Final Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.   Specifically, the Fee Examiner and his counsel identified certain of KPMG's time entries that: (1) had numerous professionals attending hearings, meetings, or conference calls and (2) did not include sufficient detail.

126.    Following the Final Fee Conference, KPMG provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Final Fee Conference. As a result of these discussions, KPMG offered and the Fee Examiner accepted a negotiated adjustment of $10,500.00 for fees and expenses incurred in the Second Interim Fee Period.  The negotiated adjustment resolves the concerns of the Fee Examiner regarding the KPMG Final Fee Application, and the Fee Examiner does not object to an order approving the KPMG Final Fee Application.

*viii.* *Ernst & Young LLP*

127.     On December 22, 2017, the Debtors filed the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Ernst & Young LLP as Tax and Accounting Services Provider to the Debtors* Nunc Pro Tunc *to the Petition Date* [Docket No. 850] (the "E&Y Retention Application").  On January 31, 2018, the Court entered the *Order Authorizing the Retention and Employment of Ernst & Young LLP as Tax and Accounting Services Provider to the Debtors and Debtors in Possession* Nunc Pro Tunc *to the Petition Date* [Docket No. 937] (the "E&Y Retention Order").[24]

128.     In the E&Y Retention Application, Ernst & Young LLP ("E&Y") describes its services as tax and accounting service provider to the Debtors, in part, as follows:

- Tax advisory service in 27 different jurisdictions; accounting assistance; drafting and considering the tax consequences related to the consolidated steps paper for the Debtors' corporate reorganization; and provision of 2016-2018 transfer pricing documentation;

- Providing comments and feedback on the technical application of US GAAP and SEC accounting and disclosure requirements in respect to accounting policy and procedure manuals;

- Providing assistance to the debtors in relation to the application of ASC 852 Reorganizations and other relevant US GAAP accounting standards in the context of the Chapter 11 filings;

- Providing tax advice on the step plan for the restructuring, intercompany balances, and establishment of cash pooling arrangements;

- Advise on tax planning or other relevant tax matters as requested from time to time;

- Prepare and process immigration applications for Debtors' employees and respond to immigration authorities in relation to the applications;

---

[24] The E&Y Retention Order required that E&Y separately allocate the cost of services performed on behalf of the Debtors and non-Debtor affiliates. *See* E&Y Retention Order, at ¶ 9.  E&Y confirmed to the Fee Examiner that such segregation had taken place and that the fees in the E&Y Final Fee Application were properly allocated to the Debtors, excepting certain *de minimis* amounts which have been corrected through the negotiated adjustment.

- Prepare tax returns for certain Debtor employees and provide relevant tax calculations;

- Provide advice in respect of tax withholding and global payroll advice for the vest of share based remuneration awards in December 2017; and

- Provide Seadrill Limited valuation analyses in regard to its interest in Seadrill Partners LLC and provide a report outlining key assumptions and conclusions.

*See* E&Y Retention Application, at ¶ 9; *see also id.,* Exhibit B.

### 1. E&Y Interim Fee Application

129.    On April 30, 2018, E&Y filed the *Combined First and Second Interim Application of Ernst & Young LLP as Tax and Accounting Services Provider for the Debtors and Debtors in Possession for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred During the Period from September 12, 2017 through March 31, 2018* [Docket No. 1210] (the "E&Y Interim Fee Application").

130.    In the E&Y Interim Fee Application, E&Y seeks approval of fees of $3,617,474.02 and expenses of $351,512.83 for the Interim Fee Period.

131.    In the E&Y Interim Fee Application, E&Y indicates that its timekeepers performed 6,937.70 hours of work at a blended rate of $521.42  per hour for the Interim Fee Period.  *See* E&Y Interim Fee Application, at 2–3.

132.    E&Y and the Fee Examiner agreed that the Fee Examiner's review of the E&Y Interim Fee Application would be conducted in conjunction with the E&Y Final Fee Application.

### 2. E&Y Final Fee Application

133.    On May 25, 2018, E&Y filed the *Third Interim and Final Application of Ernst & Young LLP as Tax and Accounting Services Provider for the Debtors and Debtors in Possession for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred During the Period from September 12, 2017 through April 17, 2018* [Docket No. 1292] (the

"E&Y Final Fee Application"). In the E&Y Final Fee Application, E&Y seeks approval of fees of $4,036,727.16 and expenses of $424,973.84 for the Final Fee Period, including fees and expenses sought in the E&Y Interim Fee Application. In the E&Y Final Fee Application, E&Y indicates that it voluntarily adjusted its fees by $34,663.19 for the Final Fee Period. *See* E&Y Final Fee Application, at 2 n. 2.

134.    In the E&Y Final Fee Application, E&Y indicates that its timekeepers performed 7,626.90 hours of work at a blended rate of $529.27 per hour for the Final Fee Period. *See* E&Y Final Fee Application, at 3.

135.    On August 6, 2018, the Fee Examiner and his counsel participated in the Final Fee Conference with E&Y to discuss the E&Y Final Fee Application. The Fee Examiner and his counsel presented their observations regarding E&Y's compliance with the Review Guidelines in the E&Y Final Fee Application. The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses. Specifically, the Fee Examiner and his counsel identified certain of E&Y's time entries that: (1) did not include sufficient detail and (2) represented potentially non-compensable fees billed to the estate in relation to administrative matters and E&Y's engagement. Additionally, the Fee Examiner and his counsel identified certain expense items that were either vague or improperly billed.

136.    Following the Final Fee Conference, E&Y provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Final Fee Conference. As a result of these discussions, E&Y offered and the Fee Examiner accepted a negotiated adjustment of $80,000.00 for fees and expenses incurred in the Final Fee Period. The negotiated adjustment resolves the concerns of the Fee Examiner regarding the E&Y Final Fee Application, and the Fee Examiner does not object to an order approving the E&Y Final Fee Application.

       *ix.*      *Houlihan Lokey Capital, Inc.*

137.    On September 30, 2017, the Debtors filed the *Debtors' Application for Entr of an Order Authorizing  Employment and Retention of Houlihan Lokey Capital, Inc. as Financial Advisor and Investment Banker for the Debtors* Nunc Pro Tunc *to the Petition Date*  [Docket No. 203] (the "Houlihan Retention Application").  On  October 31, 2017, the Court entered the *Order Authorizing Employment and Retention of Houlihan Lokey Capital, Inc. as Financial Advisor and Investment Banker for the Debtors* Nunc Pro Tunc *to the Petition Date* [Docket Nos. 376, 391] (the "Houlihan Retention Order").

138.    In the Houlihan Retention Application, Houlihan describes its services as financial advisors to the Debtors as follows:

- assisting the Debtors in the development and distribution of selected information, documents and other materials, including, if appropriate, advising the Debtors in the preparation of an offering memorandum;

- assisting the Debtors in evaluating indications of interest and proposals regarding any Transaction(s) from current and/or potential lenders, equity investors, acquirers and/or strategic partners;

- assisting the Debtors with the negotiation of any Transaction(s), including participating in negotiations with creditors and other parties involved in any Transaction(s);

- providing expert advice and testimony regarding financial matters related to any Transaction(s), if necessary;
- attending meetings of each Debtors' board of directors, creditor groups, official constituencies and other interested parties, as the Debtors and Houlihan Lokey mutually agree; and

- providing such other financial advisory and investment banking services as may be required by additional issues and developments not anticipated on the Effective Date, as described in Section 7 of the Engagement Agreement; provided, however, that such services will not consist of matters in which any member of a Subsidiary Group is adverse to Seadrill.

*See* Houlihan Retention Application, ¶ 12.

139.     Under the Houlihan Retention Application, the Debtors agreed to compensate Houlihan for its services with a flat rate compensation of $185,000.00 per month.  *See* Houlihan Retention Application, ¶ 14(a).  The Debtors also agreed to compensate Houlihan with a success fee.  *Id.* at ¶ 14(b).

### 1.   **Houlihan's Interim Fee Application**

140.     On April 30, 2018, Houlihan filed the *First Interim Fee Application of Houlihan Lokey Capital, Inc., as Financial Advisor and Investment Banker for the Debtors and Debtors in Possession for the Period from September 12, 2017 Through December 31, 2017* [Docket No. 1211] (the "Houlihan Interim Fee Application").  In the Houlihan Interim Fee Application, Houlihan sought approval of fees of $647,500.00 and expenses of $57,451.95 for the Interim Fee Period.

141.     Houlihan and the Fee Examiner agreed that the Fee Examiner's review of the Houlihan Interim Fee Application would be conducted in conjunction with the Houlihan Final Fee Application.

### 2.   **Houlihan's Final Fee Application**

142.     On June 1, 2018, Houlihan filed the *Final Fee Application of Houlihan Lokey Capital, Inc., as Financial Advisor and Investment Banker for the Debtors and Debtors in Possession for the Period from September 12, 2017 Through April 17, 2018* [Docket No. 1322] (the "Houlihan Final Fee Application").  In the Houlihan Final Fee Application, Houlihan sought approval of fees of $24,485,000.00, which includes $1,307,333.33 in monthly fees, a restructuring fee of $23,177,666.67, and expenses of $195,046.92 for the Final Fee Period.

143.     On July 27, 2018, the Fee Examiner and his counsel participated in the Final Fee Conference with Houlihan to discuss the Houlihan Final Fee Application.  The Fee Examiner

and his counsel presented their observations regarding Houlihan's compliance with the Review Guidelines in the Houlihan Final Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.[25]   Specifically, the Fee Examiner and his counsel identified certain of Houlihan's expense entries that were incompliant with the Expense Rubric.

144.   Following the Final Fee Conference, Houlihan provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Final Fee Conference.  As a result of these discussions, Houlihan offered and the Fee Examiner accepted a negotiated adjustment of its expenses by $52,193.80 for the Final Fee Period.  The negotiated adjustment resolves the concerns of the Fee Examiner regarding the Houlihan Final Fee Application, and the Fee Examiner does not object to an order approving the Houlihan Final Fee Application.

   *x.*   *Jackson Walker LLP*

145.   On September 29, 2017, the Debtors filed the *Application of Debtors-in-Possession to Employ Jackson Walker L.L.P. as Co-Counsel for Debtors for Approval of the Employment of* [Docket No. 191] (the "Jackson Walker Retention Application").  On November 1, 2017, the Court entered the *Order Granting the Application of Debtors-in-Possession to Employ Jackson Walker L.L.P. as Co-Counsel for Debtors* [Docket No. 392] (the "Jackson Walker Retention Order").

146.   In the Jackson Walker Retention Application, Jackson Walker LLP  ("Jackson Walker") describes its services as local and conflicts bankruptcy co-counsel to the Debtors as:

- providing legal advice and services regarding local rules, practices, and procedures, including Fifth Circuit law;

---

[25] The Fee Examiner Order did not authorize the Fee Examiner to review the Houlihan success fee.  *See* Amended Fee Examiner Order, ¶ 3.

- providing certain services in connection with administration of the chapter 11 cases, including, without limitation, preparing agendas, hearing notices, and hearing binders of documents and pleadings;

- reviewing and comment on proposed drafts of pleadings to be filed with the Court;

- at the request of the Debtors, appear in Court and at any meeting with the U.S. Trustee and any meeting of creditors at any given time on behalf of the Debtors as their local and conflicts bankruptcy co-counsel;

- performing all other services assigned by the Debtors to the Firm as co-counsel to the Debtors; and

- providing legal advice and services on any matter on which Kirkland and Ellis may have a conflict, or as needed based on specialization.

*See* Jackson Walker Retention Application, ¶ 6.

## 1. Jackson Walker Interim Fee Application

147.     On April 4, 2018, Jackson Walker filed the *Jackson Walker L.L.P.'s First Interim Application for Payment of Compensation and Reimbursement of Expenses for the Period from September 12, 2017 through December 31, 2017* [Docket No. 1115] (the "Jackson Walker Interim Fee Application").   In the Jackson Walker Interim Fee Application, Jackson Walker sought approval of fees of $187,032.00 and expenses of $152,968.27 for the Interim Fee Period.

148.     In the Jackson Walker Interim Fee Application, Jackson Walker indicates that its timekeepers performed 388.70 hours of work at a blended rate of $591.10 per hour for professionals and $272.70 per hour for paraprofessionals for the Interim Fee Period.  *See* Jackson Walker Interim Fee Application, at 1.

149.     Jackson Walker and the Fee Examiner agreed that the Fee Examiner's review of the Jackson Walker Interim Fee Application would be conducted in conjunction with the Jackson Walker Final Fee Application.

### 2.  **Jackson Walker Final Fee Application**

150.    On June 1, 2018, Jackson Walker filed the *Jackson Walker L.L.P.'s Second and Final Application for Payment of Compensation and Reimbursement of Expenses for the Period from January 1, 2018, Through April 17, 2018* [Docket No. 1329] (the "Jackson Walker Final Fee Application").   In the Jackson Walker Final Fee Application, Jackson Walker sought approval of fees of $476,872.00 and expenses of $158,975.01 for the Final Fee Period.

151.    In the Jackson Walker Final Fee Application, Jackson Walker indicates that its timekeepers performed 525.80 hours of work at a blended rate of $648.25 per hour for professionals and $274.27 per hour for paraprofessionals for the Final Fee Period.  *See* Jackson Walker Final Fee Application, at 16.

152.    On June 25, 2018, 2018, the Fee Examiner and his counsel participated in the Final Fee Conference with Jackson Walker to discuss the Jackson Walker Final Fee Application. The Fee Examiner and his counsel presented their observations regarding Jackson Walker's compliance with the Review Guidelines in the Jackson Walker Interim Fee Application and the Jackson Walker Final Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.   Specifically, the Fee Examiner and his counsel identified certain of Jackson Walker's time entries that:  (1) did not include sufficient detail; (2) had partners or high billing professionals perform work that associates or lower billing rate professionals could perform; and (3) had blocked billed or lumped time entries

153.    Following the Final Fee Conference, Jackson Walker provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Final Fee Conference.  As a result of these discussions, Jackson Walker agreed to voluntarily adjust its fees and expenses by $10,000.00 for the Final Fee Period.  The negotiated adjustment resolves the

concerns of the Fee Examiner regarding the Jackson Walker Final Fee Application, and the Fee Examiner does not object to an order approving the Jackson Walker Final Fee Application.

       *xi.*    *Advokatfirmaet Thommessen AS*

154.    On September 29, 2017, the Debtors filed the *Debtors' Application for Entry of an Order Pursuant to Section 327(e) of the Bankruptcy Code Authorizing and Approving Employment and Retention of Advokatfirmaet Thommessen AS as Special Norwegian Counsel for the Debtors Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 193] (the "Thommessen Retention Application").   On October 31, 2017, the Court entered the *Order Pursuant to Section 327(e) of the Bankruptcy Code Authorizing and Approving the Retention of Advokatfirmaet Thommessen AS as Special Norwegian Counsel for the Debtors Effective Nunc Pro Tunc to the Petition Date* [Docket No. 372] (the "Thommessen Retention Order").

155.    In the Thommessen Retention Application, Advokatfirmaet Thommessen AS ("Thommessen") describes its services as special Norwegian Counsel for the Debtors as "Advising and representing the Debtors in all aspects of Norwegian restructuring and insolvency law." *See* Thommessen Retention Application, ¶ 10.

156.    On June 6, 2018,[26] Thommessen filed the *Final Fee Application of Advokatfirmaet Thommessen AS for Compensation for Services and Reimbursement of Expenses as Attorneys to the Debtors and Debtors in Possession, for the Period from September 13, 2017 through April 17, 2018* [Docket No. 1345] (the "Thommessen Final Fee Application").   In the Thommessen Final Fee Application, Thommessen seeks approval of fees of NOK 2,740,720.00

---

[26] On June 1, 2018, Thommessen timely filed the *Final Fee Application of Advokatfirmaet Thommessen AS for Compensation for Services and Reimbursement of Expenses as Attorneys to the Debtors and Debtors in Possession, for the Period from September 12, 2017, through April 17, 2018* [Docket No. 1334, at 40–55]. Although Thommessen timely filed a final fee application, such application was incomplete. The Fee Examiner has reviewed the Thommessen Final Fee Application as if it were an amendment to the timely filed final fee application.

(approximately $335,507.00) and expenses of NOK 4,488 (approximately $549.00) for the Final Fee Period.

157.    In the Thommessen Final Fee Application, Thommessen indicates that its timekeepers performed 665.95 hours of work at a blended rate of NOK 4,124 (approximately $505.00) per hour for professionals and NOK 1,237 (approximately $151.00) per hour for paraprofessionals for the Final Fee Period.  *See* Thommessen Final Fee Application, at 3.

158.    On July 27, 2018, the Fee Examiner and his counsel participated in the Final Fee Conference with Thommessen to discuss the Thommessen Final Fee Application.  The Fee Examiner and his counsel presented their observations regarding Thommessen's compliance with the Review Guidelines in the Thommessen Final Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.   Specifically, the Fee Examiner and his counsel identified certain of Thommessen's time entries that: (1) did not include sufficient detail; (2) had blocked billed or lumped time entries; (3) included potentially non-compensable administrative tasks; and (4) had rates that were not approved by the Thommessen Retention Order.

159.    Following the Final Fee Conference, Thommessen offered and the Fee Examiner accepted a negotiated adjustment of $20,000.00 for fees and expenses incurred in the Final Fee Period.  The negotiated adjustment resolves the concerns of the Fee Examiner regarding the Thommessen Final Fee Application, and the Fee Examiner does not object to an order approving the Thommessen Final Fee Application.

**B.    Board of Directors' Professionals**

  *i.    Baker Tilly Virchow Krause, LLP*

160.    On September 29, 2017, the Debtors filed the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Baker Tilly Virchow Krause, LLP as*

*Financial Advisors to the Disinterested Directors of the Board of Directors of Seadrill Limited* Nunc Pro Tunc *to the Petition Date* [Docket No. 196] (the "Baker Tilly Retention Application"). On October 31, 2017, the Court entered the *Order Authorizing the Retention and Employment of Baker Tilly Virchow Krause, LLP as Financial Advisors to the Disinterested Directors of the Board of Directors of Seadrill Limited* Nunc Pro Tunc *to the Petition Date* [Docket No. 373] (the "Baker Tilly Retention Order").

161.    In the Baker Tilly Retention Application, Baker Tilly Virchow Krause, LLP ("Baker Tilly") describes its services as financial advisors to the Disinterested Directors of the Board of Directors of Seadrill Limited as follows:

- Investigating and advising the Disinterested Directors with regard to related party transactions, including financial aspects of claims against related parties; and

- Other matters as mutually agreed by (i) the Disinterested Directors and (ii) Baker Tilly.

*See* Baker Tilly Retention Application, ¶ 6.

### 1.    Baker Tilly Interim Fee Application

162.    On March 12, 2018, Baker Tilly filed the *First Interim Fee Application of Baker Tilly Virchow Krause, LLP, Financial Advisors to the Disinterested Directors of the Board of Directors of Seadrill Limited, for Allowance of Compensation and Reimbursement of Expenses for the Period from September 12, 2017 through December 31, 2017* [Docket No. 1070] (the "Baker Tilly Interim Fee Application").  In the Baker Tilly Interim Fee Application, Baker Tilly seeks approval of fees of $2,541,822.00 and expenses of $13,701.65.  In the Baker Tilly Interim Fee Application, Baker Tilly indicates that it voluntarily adjusted its fees by $14,982.00.  *See* Baker Tilly Interim Fee Application, at 10.  In addition, Baker Tilly indicates that it "incurred

fees and expenses not included in the Monthly Fee Statements, totaling approximately 11% of the total fees and expenses incurred during the First Interim Fee Period." *See id.,* at ¶ 11.

163.    In the Baker Tilly Interim Fee Application, Baker Tilly indicates that its timekeepers performed 4,215.80 hours of work at a blended rate of $602.93 per hour for professionals. *See* Baker Tilly Interim Fee Application, at 3.

164.    On April 24, 2018, the Fee Examiner and his counsel participated in the Initial Conference with Baker Tilly to discuss the Baker Tilly Interim Fee Application.  The Fee Examiner and his counsel presented their observations regarding Baker Tilly's compliance with the Review Guidelines in the Baker Tilly Interim Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.  Specifically, the Fee Examiner and his counsel identified certain of Baker Tilly's time entries that: (1) had numerous professionals attending hearings, meetings, or conference calls; (2) had partners or high billing professionals perform work that associates or lower billing rate professionals could potentially perform; and (3) had rates above those approved by the Baker Tilly Retention Order. Additionally, the Fee Examiner and his counsel identified certain expense items that were either vague or improperly billed.

165.    The Fee Examiner and Baker Tilly continued to discuss the Baker Tilly Interim Fee Application.  To facilitate continued discussions regarding the Baker Tilly Interim Fee Application and in light of the approaching deadline for final fee applications in the Chapter 11 Cases, Baker Tilly and the Fee Examiner agreed to continue the hearing on the Baker Tilly Fee Application until the hearing on Baker Tilly's final fee application.  Pending the hearing on Baker Tilly's final fee application, the Fee Examiner consented to the payment of the Holdback Disbursement to Baker Tilly.

## 2. **Baker Tilly Final Fee Application**

166. On June 1, 2018, Baker Tilly filed the *Second Interim and Final Fee Application of Baker Tilly Virchow Krause, LLP, Financial Advisor to the Disinterested Directors of the Board of Directors of Seadrill Limited, for Allowance of Compensation and Reimbursement of Expenses for the Period from September 12, 2017 through February 28, 2018* [Docket No. 1307] (the "Baker Tilly Final Fee Application"). In the Baker Tilly Final Fee Application, Baker Tilly seeks approval of fees of $5,146,687.50 and expenses of $13,701.65 for the Final Fee Period, including amounts previously requested in the Baker Tilly Interim Fee Application. In the Baker Tilly Final Fee Application, Baker Tilly indicates that it voluntarily adjusted "fees and expenses not included in the Monthly Fee Statements, totaling approximately 13% of the total fees and expenses incurred during the Second Interim Fee Period." *See* Baker Tilly Final Fee Application, ¶ 14.

167. In the Baker Tilly Final Fee Application, Baker Tilly indicates that its timekeepers performed 8,869.30 hours of work at a blended rate of $580.28 per hour for professionals for the Final Fee Period. *See* Baker Tilly Final Fee Application, at 3.

168. On August 3, 2018, the Fee Examiner and his counsel participated in the Final Fee Conference with Baker Tilly to discuss the Baker Tilly Final Fee Application. The Fee Examiner and his counsel presented their observations regarding Baker Tilly's compliance with the Review Guidelines in the Baker Tilly Final Fee Application. The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses. Specifically, the Fee Examiner and his counsel identified certain of Baker Tilly's time entries that: (1) had numerous professionals attending hearings, meetings, or conference calls; (2) did not include sufficient detail; and (3) had rates above those approved by the Baker Tilly Retention Order.

169.     Following the Final Fee Conference, Baker Tilly provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Final Fee Conference.  As a result of these discussions, Baker Tilly offered and the Fee Examiner accepted a negotiated adjustment of $100,000.00 for fees and expenses incurred in the Final Fee Period. The negotiated adjustment resolves the concerns of the Fee Examiner regarding the Baker Tilly Final Fee Application, and the Fee Examiner does not object to an order approving the Baker Tilly Final Fee Application.

ii.     *Willkie Farr & Gallagher LLP*

170.     On September 30, 2017, the Debtors filed the *Debtors' Application for Entry of an Order Pursuant to Section 327(e) of the Bankruptcy Code Authorizing and Approving Employment and Retention of Willkie Farr & Gallagher LLP as Special Counsel to the Conflicts Committees of the Boards of Directors of Debtor Sevan Drilling Limited and DebtorNorth* [sic] *Atlantic Drilling Limited, Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 198] (the "Willkie Retention Application").  On October 31, 2017, the Court entered the *Order Pursuant to Section 327(e) of the Bankruptcy Code Authorizing and Approving Employment and Retention of Willkie Farr & Gallagher LLP as Special Counsel to the Conflicts Committees of the Boards of Directors of Debtor Sevan Drilling Limited and Debtor North Atlantic Drilling Limited, Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 369] (the "Willkie Retention Order").

171.     In the Willkie Retention Application, Willkie describes its services as special counsel to the Conflicts Committees of the Boards of Directors of Sevan Drilling Limited and North Atlantic Drilling Limited as follows:

- Advising the Conflicts Committees regarding their fiduciary duties and board process generally; and

- Advising the Conflicts Committees in the evaluation of the restructuring cases specifically as they relate to Sevan Drilling Limited and North Atlantic Drilling Limited.

*See* Willkie Retention Application, ¶ 12.

### 1. Willkie Interim Fee Application

172.    On March 7, 2018, Willkie filed the *First Interim Fee Application of Willkie Farr & Gallagher LLP for Compensation for Services and Reimbursement of Expenses as Special Counsel to the Conflicts Committees of the Boards of Directors of Sevan Drilling Limited and North Atlantic Drilling Limited for the Period September 13, 2017 through December 31, 2017* [Docket No. 1046] (the "Willkie Interim Fee Application").   In the Willkie Interim Fee Application, Willkie sought approval of fees of $91,665.00 and expenses of $61.05.  *See* Willkie Interim Fee Application, at 2.

173.    In the Willkie Interim Fee Application, Willkie indicates that its timekeepers performed 111.0 hours of work at a blended rate of $896.81 per hour for professionals and $337.87[27] per hour for paraprofessionals.  *See* Willkie Interim Fee Application, at 2.

174.    On April 23, 2018, the Fee Examiner and his counsel participated in the Interim Fee Conference with Willkie to discuss the Willkie Interim Fee Application.  The Fee Examiner and his counsel presented their observations regarding Willkie's compliance with the Review Guidelines in the Willkie Interim Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.  Following the Interim Fee Conference, Willkie provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Interim Fee Conference.

---

[27] The Willkie Interim Fee Application includes blended hourly rates by professionals and paraprofessionals by separate matter.  For purposes of this Fee Examiner's Report, the Fee Examiner calculated the blended hourly rates for Willkie's professionals and paraprofessionals on a weighted average basis for all matters.

175.     Based on the additional information provided by Willkie, the Fee Examiner's questions were resolved.  The Fee Examiner did not object to entry of an order approving the Willkie Interim Fee Application.

176.     On June 14, 2018, the Court entered the *Order Approving First Interim Fee Application of Willkie Farr & Gallagher LLP for Compensation for Services and Reimbursement of Expenses as Special Counsel to the Conflicts Committees of the Boards of Directors of Sevan Drilling Limited and North Atlantic Drilling Limited for the Period September 13, 2017 through December 31, 2017* [Docket No. 1372].

### 2.  Willkie Final Fee Application

177.     On June 1, 2018, Willkie filed the *Second Interim and Final Fee Application of Willkie Farr & Gallagher LLP for Compensation for Services and Reimbursement of Expenses as Special Counsel to the Conflicts Committees of the Boards of Directors of Sevan Drilling Limited and North Atlantic Drilling Limited for the Period September 13, 2017 through April 17, 2018* [Docket No. 1310] (the "Willkie Final Fee Application").   In the Willkie Final Fee Application, Willkie seeks approval of fees of $112,530.00 and expenses of $168.15 for the Final Fee Period, including amounts previously requested in the Willkie Interim Fee Application.

178.     In the Willkie Final Fee Application, Willkie indicates that its timekeepers performed 146.20 hours of work at a blended rate of $879.48 per hour for professionals and $361.76[28] per hour for paraprofessionals for the Final Fee Period.  *See* Willkie Final Fee Application, at 3.

179.     On July 25, 2018, the Fee Examiner and his counsel participated in the Final Fee Conference with Willkie to discuss the Willkie Final Fee Application.  The Fee Examiner and his

---

[28] The Willkie Final Fee Application includes blended hourly rates by professionals and paraprofessionals by separate matter.  For purposes of this Fee Examiner's Report, the Fee Examiner calculated the blended hourly rates for Willkie's professionals and paraprofessionals on a weighted average basis for all matters.

counsel presented their observations regarding Willkie's compliance with the Review Guidelines in the Willkie Final Fee Application. Because Willkie complied with the Review Guidelines, the Fee Examiner does not object to entry of an order approving the Willkie Final Fee Application.

**C.    Committee's Professionals**

     *i.    Kramer Levin Naftalis & Frankel LLP*

180.    On October 18, 2017, the Committee filed the *Application of the Official Committee of Unsecured Creditors, Pursuant to Sections 328 and 1103 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2014 for an Order Approving the Retention and Employment of Kramer Levin Naftalis & Frankel LLP as Counsel to the Committee* Nunc Pro Tunc *to September 27, 2017* [Docket No. 284] (the "Kramer Retention Application").    On November 9, 2017, the Court entered the *Order Authorizing and Approving the Employment of Kramer Levin Naftalis & Frankel LLP as Counsel to the Official Committee of Unsecured Creditors* Nunc Pro Tunc *to September 27, 2017* [Docket No. 448] (the "Kramer Retention Order").

181.    In the Kramer Retention Application, Kramer Levin Naftalis & Frankel LLP ("Kramer") describes its services as counsel to the Committee as follows:

- the administration of these cases and the exercise of oversight with respect to the Debtors' affairs, including all issues in connection with the Debtors, the Committee and/or these Chapter 11 Cases;

- the preparation on behalf of the Committee of necessary applications, motions, objections, memoranda, orders, reports, and other legal papers;

- appearances in Court, participation in litigation as a party-in-interest, and participation at statutory meetings of creditors to represent the interests of the Committee;

- the negotiation and evaluation of the use of cash collateral, any proposed debtor-in-possession financing and any other potential financing alternatives;

- the negotiation and evaluation of the proposed restructuring support agreement and any other potential alternatives;

- the negotiation, formulation, drafting and confirmation of a plan or plans of reorganization or liquidation and matters related thereto;

- investigation, directed by the Committee, of among other things, unencumbered assets, liabilities, financial condition of the Debtors, prior transactions, and operational issues concerning the Debtors that may be relevant to these Chapter 11 Cases;

- investigation as to the fairness and process by which the Debtors arrived at the terms of the RSA, ring-fencing transactions and prepetition transactions among debtor and non-debtor entities;

- the negotiation and formulation of any proposed sale of any of the Debtors' assets, including pursuant to section 363 of the Bankruptcy Code;

- communications with the Committee's constituents in furtherance of its responsibilities, including, but not limited to, communications required under section 1102 of the Bankruptcy Code; and

- the performance of all of the Committee's duties and powers under the Bankruptcy Code and the Bankruptcy Rules and the performance of such other services as are in the interests of those represented by the Committee.

*See* Kramer Retention Application, ¶ 11.

### 1.  **Kramer Interim Fee Application**

182.    On March 12, 2018, Kramer filed the *First Interim Fee Application of Kramer Levin Naftalis & Frankel LLP, as Counsel for the Official Committee of Unsecured Creditors of Seadrill Limited, et al., for Allowance of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses Incurred for the Period from September 27, 2017 through December 31, 2017* [Docket No. 1065] (the "Kramer Interim Fee Application"). In the Kramer Interim Fee Application, Kramer seeks approval fees of $6,662,323.00 and expenses of $214,629.86.[29]  In the Kramer Interim Fee Application, Kramer

---

[29] The Kramer Interim Fee Application includes a request for approval of reimbursement of expenses incurred by Committee member Daewoo Shipbuilding & Marine Engineering, Ltd. for $8,517.69. Pursuant to the Order appointing the Fee Examiner, the Fee Examiner is not required to review requests for reimbursement of expenses by

indicates that it voluntarily adjusted its fees by $306,633.00 and its expenses by $40,275.93 for the First Interim Fee Period.  *See* Kramer Interim Fee Application, at 2 nn.2–3.

183.    In the Kramer Interim Fee Application, Kramer indicates that its timekeepers performed 8,383.40 hours of work at a blended rate of $793.00 per hour for professionals and $357.00 per hour for paraprofessionals.  *See* Kramer Interim Fee Application, at 2.

184.    On April 23, 2018, the Fee Examiner and his counsel participated in the Interim Fee Conference with Kramer to discuss the Interim Kramer Fee Application.  The Fee Examiner and his counsel presented their observations regarding Kramer's compliance with the Review Guidelines in the Kramer Interim Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.  Specifically, the Fee Examiner and his counsel identified certain of Kramer's time entries that:  (1) had numerous professionals attending hearings, meetings, or conference calls; (2) did not include sufficient detail; (3) had partners or high billing professionals perform work that associates or lower billing rate professionals could perform; and (4) had blocked billed or lumped time entries.  The Fee Examiner and his counsel also identified time entries for invoicing tasks.  Additionally, the Fee Examiner and his counsel identified certain expense items that were either vague or improperly billed.  Following the Interim Fee Conference, Kramer provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Initial Conference.

185.    The Fee Examiner and Kramer continued to discuss the Kramer Interim Fee Application.  To facilitate continued discussions regarding the Kramer Interim Fee Application and in light of the approaching deadline for final fee applications in the Chapter 11 Cases, Kramer and the Fee Examiner agreed to continue the hearing on the Kramer Interim Fee

members of the Committee.  Accordingly, the Fee Examiner did not review Daewoo's expense reimbursement requests.

Application until the hearing on Kramer's final fee application.  Pending the hearing on Kramer's final fee application, the Fee Examiner consents to the payment of the Holdback Disbursement to Kramer.

### 2.  Kramer Final Fee Application

186.    On June 1, 2018, Kramer filed the Second Interim And Final Fee Application Of Kramer Levin Naftalis & Frankel LLP, As Counsel For The Official Committee Of Unsecured Creditors Of Seadrill Limited, Et Al., For Allowance Of Compensation For Professional Services Rendered And For Reimbursement Of Actual And Necessary Expenses Incurred For The Second Interim Period From January 1, 2018 Through April 17, 2018 And For The Total Compensation Period From September 27, 2017 Through April 17, 2018 [Doc. No. 1331] (the "Kramer Final Fee Application").  In the Kramer Final Fee Application, Kramer sought approval of fees of $11,524,232.25 and expenses of $ 516,063.50for the Final Fee Period.  In the Kramer Final Fee Application, Kramer indicates that it voluntarily adjusted its fees by $383,690.00 and its expenses by $70,414.07 for the Final Fee Period.  See Kramer Final Fee Application, 3.

187.    In the Kramer Final Fee Application, Kramer indicates that its timekeepers performed 14,858.20 hours of work at a blended rate of $832.36 per hour for professionals and $366.08 per hour for paraprofessionals for the Final Fee Period.  *See* Kramer Final Fee Application, at 3.

188.    On August 6, 2018, the Fee Examiner and his counsel participated in the Final Fee Conference with Kramer to discuss the Kramer Final Fee Application.  The Fee Examiner and his counsel presented their observations regarding Kramer's compliance with the Review Guidelines in the Kramer Final Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.   Specifically, the Fee Examiner and his

counsel identified certain of Kramer's time entries that:   (1) had numerous professionals attending hearings, meetings, or conference calls; and (2) did not include sufficient detail. Additionally, the Fee Examiner and his counsel identified certain expense items that were vague.

189.    Following the Final Fee Conference, Kramer provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Final Fee Conference. As a result of these discussions, Kramer offered and the Fee Examiner accepted a negotiated adjustment of $160,000.00 for fees and expenses incurred in the Final Fee Period.   The negotiated adjustment resolves the concerns of the Fee Examiner regarding the Kramer Final Fee Application, and the Fee Examiner does not object to an order approving the Kramer Final Fee Application.

ii.      *Cole Schotz P.C.*

190.    On October 18, 2017, the Committee filed the *Application for Approval of the Employment of Cole Schotz P.C. as Local and Conflicts Counsel to the Official Committee of Unsecured Creditors, Effective as of September 28, 2017* [Docket No. 283] (the "Cole Schotz Retention Application").   On November 9, 2017, the Court entered the *Order Approving Application for Approval of the Employment of Cole Schotz P.C. as Local and Conflicts Counsel to the Official Committee of Unsecured Creditors, Effective September 28, 2017* [Docket No. 449] (the "Cole Schotz Retention Order").

191.    In the Cole Schotz Retention Application, Cole Schotz describes its services as local and conflicts counsel to the Committee as follows:

- advising the Committee with respect to its rights, duties, and powers in these Chapter 11 cases;

- assisting and advising the Committee in its consultations with the Debtors relative to the administration of these Chapter 11 cases;

- assisting the Committee in analyzing the claims of the Debtors' creditors and the Debtors' capital structure and in negotiating with holders of claims;

- assisting the Committee in its investigation of the acts, conduct, assets, liabilities, and financial condition of the Debtors and of the operation of the Debtors' business;

- assisting the Committee in its investigation of the liens and claims of the Debtors' lenders and the prosecution of any claims or causes of action revealed by such investigation;

- assisting the Committee in its analysis of, and negotiations with, the Debtors or any third-party concerning matters related to, among other things, the assumption or rejection of leases of nonresidential real property and executory contracts, asset dispositions, financing or other transactions, and the terms of one or more plans of reorganization for the Debtors and accompanying disclosure statements and related plan documents;

- assisting and advising the Committee in communicating with unsecured creditors regarding significant matters in these Chapter 11 cases;

- representing the Committee at hearings and other proceedings;

- reviewing and analyzing applications, orders, statements of operations, and schedules filed with the Court and advise the Committee as to their propriety;

- assisting the Committee in preparing pleadings and applications as may be necessary in furtherance of the Committee's interests and objectives;

- preparing, on behalf of the Committee, any pleadings, including without limitation, motions, memoranda, complaints, adversary complaints, objections or comments in connection with any of the foregoing; and

- performing such other legal services as may be required or requested or as may otherwise be deemed in the interests of the Committee in accordance with the Committee's powers and duties as set forth in the Bankruptcy Code, Bankruptcy Rules or other applicable law.

*See* Cole Schotz Retention Application, ¶ 9.

### 1.  <u>Cole Schotz Interim Fee Application</u>

192.   On March 13, 2018, Cole Schotz P.C. ("<u>Cole Schotz</u>") filed the *First Interim Application of Cole Schotz P.C. for Allowance of Compensation for Services Rendered as Local Counsel to the Official Committee of Unsecured Creditors for the Period from September 28,*

*2017 through December 31, 2017* [Docket No. 1074] (as amended, the "Cole Schotz Interim Fee Application").[30]  In the Cole Schotz Interim Fee Application, Cole Schotz seeks approval of fees of $519,696.75 and expenses of $24,611.31.  In the Cole Schotz Interim Fee Application, Cole Schotz indicates that it voluntarily adjusted its fees and expenses by a total of $34,174.36 (including a fifty percent (50%) reduction for non-working travel time) for the First Interim Fee Period.  *See* Cole Schotz Interim Fee Application, at 1 n.2.

193.   In the Cole Schotz Interim Fee Application, Cole Schotz indicates that its timekeepers performed 1,035.10 hours of work at a blended rate of $526.86 per hour for professionals and $257.96 per hour for paraprofessionals.  *See* Cole Schotz Interim Fee Application, at 1–2.

194.   On April 20, 2018, the Fee Examiner and his counsel participated in the Interim Fee Conference with Cole Schotz to discuss the Cole Schotz Interim Fee Application.  The Fee Examiner and his counsel presented their observations regarding Cole Schotz's compliance with the Review Guidelines in the Cole Schotz Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.  Specifically, the Fee Examiner and his counsel identified certain of Cole Schotz's time entries that:  (1) did not include sufficient detail; (2) had partners or high billing professionals perform work that associates or lower billing rate professionals could perform; and (3) had blocked billed or lumped time entries.  The Fee Examiner and his counsel also identified time entries for invoicing tasks.  Additionally,

---

[30] On March 12, 2018, Cole Schotz filed its *First Interim Application of Cole Schotz P.C. for Allowance of Compensation for Services Rendered as Local and Conflicts Counsel to the Official Committee of Unsecured Creditors for the Period from September 28, 2017 through December 31, 2017* [Docket No. 1066].  On March 13, 2018, Cole Schotz filed a corrected *First Interim Application of Cole Schotz P.C. for Allowance of Compensation for Services Rendered as Local and Conflicts Counsel to the Official Committee of Unsecured Creditors for the Period from September 28, 2017 through December 31, 2017* [Docket No. 1073].  On March 13, 2018, Cole Schotz filed a further corrected *First Interim Application of Cole Schotz P.C. for Allowance of Compensation for Services Rendered as Local and Conflicts Counsel to the Official Committee of Unsecured Creditors for the Period from September 28, 2017 through December 31, 2017* [Docket No. 1074].

the Fee Examiner and his counsel identified certain expense items that were either vague or improperly billed.[31]   Following the Interim Fee Conference, Cole Schotz provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Initial Conference.

195.    The Fee Examiner and Cole Schotz continued to discuss the Cole Schotz Interim Fee Application.  To facilitate continued discussions regarding the Cole Schotz Interim Fee Application and in light of the deadline for final fee applications in the Chapter 11 Cases, Cole Schotz and the Fee Examiner agreed to continue the hearing on the Cole Schotz Interim Fee Application until the hearing on Cole Schotz's final fee application.  Pending the hearing on Cole Schotz's final fee application, the Fee Examiner consents to the payment of the Holdback Disbursement to Cole Schotz.

196.    During the continued discussions with Cole Schotz, Cole Schotz offered and the Fee Examiner accepted a negotiated adjustment of its fees and expenses by $35,000.00 for fees and expenses incurred in the First Interim Fee Period.

## 2.   Cole Schotz Final Fee Application

197.    On June 1, 2018, Cole Schotz filed the *Second Interim and Final Application of Cole Schotz P.C. for Allowance Of Compensation For Services Rendered As Local And Conflicts Counsel to the Official Committee of Unsecured Creditors for the Period from September 28, 2017 through April 17, 2018* [Doc. No. 1312] (the "Cole Schotz Final Fee Application").  In the Cole Schotz Final Fee Application, Cole Schotz sought approval of fees of $1,038,376.00 and expenses of $28,625.26 for the Final Fee Period.  In the Cole Schotz Final Fee Application, Cole

---

[31] The Fee Examiner inquired about the nature of certain third party discovery expenses billed to the estate and was satisfied that they were appropriate in light of the circumstances.

Schotz indicates that it voluntarily adjusted its fees by $6,242.75 for the Second Interim Fee Period. *See* Cole Schotz Final Fee Application, at 1 n.3.

198.    In the Cole Schotz Final Fee Application, Cole Schotz indicates that its timekeepers performed 2,105.70 hours of work at a blended rate of $516.86 per hour for professionals and $251.97 per hour for paraprofessionals for the Final Fee Period. *See* Cole Schotz Final Fee Application, at 2.

199.    On July 25, 2018, the Fee Examiner and his counsel participated in the Final Fee Conference with Cole Schotz to discuss the Cole Schotz Final Fee Application.  The Fee Examiner and his counsel presented their observations regarding Cole Schotz's compliance with the Review Guidelines in the Cole Schotz Final Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.   Specifically, the Fee Examiner and his counsel identified certain of Cole Schotz's time entries that:  (1) had numerous professionals attending hearings, meetings, or conference calls; (2) did not include sufficient detail; and (3) had blocked billed or lumped time entries. Additionally, the Fee Examiner and his counsel identified certain expense items that were either vague or exceeded the Expense Rubric.

200.    Following the Final Fee Conference, Cole Schotz provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Final Fee Conference.  As a result of these discussions, Cole Schotz offered and the Fee Examiner accepted a negotiated adjustment of its fees and expenses by $5,000.00 for the Second Interim Fee Period, resulting in a an aggregate negotiated adjustment of $40,000 for fees and expenses for the Final Fee Period.  The negotiated adjustment resolves the concerns of the Fee Examiner regarding the Cole Schotz Final Fee Application, and the Fee Examiner does not object to an order approving the Cole Schotz Final Fee Application.

### iii.    Perella Weinberg Partners LP

201.    On November 1, 2017, the Committee filed the *Application for Entry of an Order Authorizing the Retention and Employment of Perella Weinberg Partners LP as Investment Banker to the Official Committee of Unsecured Creditors,* Nunc Pro Tunc *to October 5, 2017* [Docket No. 400] (the "<u>PWP Retention Application</u>").   On November 27, 2017, the Court entered the *Order Authorizing Employment and Retention of Perella Weinberg Partners LP as Investment Banker for the Official Committee of Unsecured Creditors Effective October 5, 2017 and Modifying Certain Time-Keeping Requirements* [Docket No. 735] (the "<u>PWP Retention Order</u>").   The PWP Retention Order authorized the firm to "keep reasonably detailed time records in half-hour increments."  *See* PWP Retention Order, ¶ 12.

202.    In the PWP Retention Application, PWP explained that instead of receiving compensation for hourly rates, the Debtors agreed to compensate PWP for its services with a flat rate compensation of $175,000.00 per month.  *See* PWP Retention Application, ¶11.

203.    In the PWP Retention Application, PWP describes its services as investment banker to the Committee as follows:

- assisting the Committee in reviewing and analyzing the terms of the Company's proposed restructuring plan and restructuring support agreement, assist the Committee in developing, advancing, reviewing and analyzing alternative proposals for a restructuring;

- assisting the Committee in valuing the Debtors' businesses, securities issued and recoveries under the Debtors' proposed, or any alternative, plan of reorganization;

- assessing and advising the Committee with respect to the Debtors' proposed new money investment led by Hemen Holdings Ltd. and Centerbridge Partners LP and any other proposed new money investment, including structure, terms, valuation and amount of new money required, additionally negotiate with the Debtors and capital providers on the terms of any such new money investments;

- assessing and advising the Committee with respect to the pre-petition new money marketing process and post-petition 'go-shop' marketing process,  and

identify strategic or financial parties that may not have been identified or pursued by the Debtors;

- providing the Committee and the Committee's counsel with industry expertise (provided by Tudor, Pickering, Holt & Co.) and capital markets perspectives, to assist in evaluating the Debtors' business plan and any proposed plan of reorganization;

- assisting the Committee in evaluating the Debtors' debt capacity and providing the Committee with analysis and advice with respect to any proposed capital structure for the Debtors;

- evaluating, and advising the Committee on, the treatment and impact of any intercompany claims on constituent recoveries under any proposed plan of reorganization;

- meeting with the Committee, the Debtors' management, the Debtors' board of directors, other creditors and equity holders (in each case who are institutional parties or represented by an advisor) to discuss the Debtors' proposed restructuring framework or alternative proposals;

- assisting the Committee in reviewing the value and form of consideration provided to secured creditors under any plan relative to their collateral value;

- assisting the Committee in identifying, assessing and valuing any unencumbered assets of the Debtors' estates;

- participating in hearings before the Bankruptcy Court and provide testimony as required by the Committee; and

- such other investment banking services in connection with a restructuring as Perella Weinberg Partners and the Committee may agree.

*See* PWP Retention Application, ¶ 9.

## 1. **PWP Interim Fee Application**

204.    On March 12, 2018, PWP filed the *First Interim Fee Application of Perella Weinberg Partners LP for Allowance of Compensation for Services and Reimbursement of Expenses as Investment Banker for the Official Committee of Unsecured Creditors for the Period from October 5, 2017 through December 31, 2017* [Docket No. 1067] (the "PWP Interim Fee

Application"). In the PWP Interim Fee Application, PWP seeks approval of fees of $502,419.35 and expenses of $35,707.62.

205.    In the PWP Interim Fee Application, PWP indicates that its timekeepers performed 1,456.50 hours of work at an effective average rate of $345.00[32] per hour for all professionals. *See* PWP Interim Fee Application, at 2–3.

206.    On April 20, 2018, the Fee Examiner and his counsel participated in the Interim Fee Conference with PWP to discuss the PWP Interim Fee Application. The Fee Examiner and his counsel presented their observations regarding PWP's compliance with the Review Guidelines in the PWP Interim Fee Application. The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses. Specifically, the Fee Examiner and his counsel identified certain of PWP's time entries that: (1) had numerous professionals attending hearings, meetings, or conference calls; and (2) did not include sufficient detail. Additionally, the Fee Examiner and his counsel identified certain expenses that did not comply with the Expense Rubric. Following the Interim Fee Conference, PWP provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Interim Fee Conference.

207.    The Fee Examiner and PWP continued to discuss the PWP Interim Fee Application. To facilitate continued discussions regarding the PWP Interim Fee Application and in light of the deadline for final fee applications in the Chapter 11 Cases, PWP and the Fee Examiner agreed to continue the hearing on the PWP Interim Fee Application until the hearing on PWP's final fee application. Pending the hearing on PWP's final fee application, the Fee Examiner consents to the payment of the Holdback Disbursement to PWP.

---

[32] The PWP Fee Application does not include a calculation of the average hourly rates by professionals and paraprofessionals. For purposes of this Fee Examiner's Report, the Fee Examiner calculated the average hourly rates for PWP's professionals and paraprofessionals by dividing the total amount of fees by the total hours worked.

### 2. PWP Final Fee Application

208.     On June 1, 2018, PWP filed the *Second Interim and Final Fee Application of Perella Weinberg Partners LP For Allowance Of Compensation For Services and Reimbursement of Expenses As Investment Banker for the Official Committee Of Unsecured Creditors for the Period From October 5, 2017 through April 17, 2018* [Docket No. 1318] (the "PWP Final Fee Application").  In the PWP Final Fee Application, PWP sought approval of fees of $6,126,586.02 and expenses of $106,871.56 for the Final Fee Period.  The expenses requested for the Second Interim Fee Period include a "transaction fee" of $5,000,000.00 for which PWP was authorized to receive pursuant to the PWP Retention Order.[33]

209.     In the PWP Final Fee Application, PWP indicates that its timekeepers performed 2,305.50 hours of work.  *See* PWP Final Fee Application, at 2.

210.     On July 31, 2018, the Fee Examiner and his counsel participated in the Final Fee Conference with PWP to discuss the PWP Final Fee Application.  The Fee Examiner and his counsel presented their observations regarding PWP's compliance with the Review Guidelines in the PWP Final Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.   Specifically, the Fee Examiner and his counsel identified certain of PWP's time entries that had partners or high billing professionals perform work that associates or lower billing rate professionals could perform.  Additionally, the Fee Examiner and his counsel identified certain expense items that were either vague, improperly billed, or exceeded the Expense Rubric.

211.     Following the Final Fee Conference, PWP provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Final Fee Conference.

---

[33] The Amended Fee Examiner Order did not authorize the Fee Examiner to review this transaction fee.  *See* Amended Fee Examiner Order, ¶ 3.

As a result of these discussions, PWP offered and the Fee Examiner accepted a negotiated adjustment of $13,000.00 for fees and expenses incurred in the Final Fee Period.  The negotiated adjustment resolves the concerns of the Fee Examiner regarding the PWP Final Fee Application, and the Fee Examiner does not object to an order approving the PWP Final Fee Application.

> iv.      *Advokatfirmaet Selmer DA*

212.      On November 1, 2017, the Committee filed the *Application for Approval of the Employment of Advokatfirmaet Selmer DA as Norwegian Counsel to the Official Committee of Unsecured Creditors, Effective as of October 6, 2017* [Docket No. 396] (the "Selmer Retention Application").  On November 29, 2017, the Court entered the *Amended Order Approving Application for Approval of the Employment of Advokatfirmaet Selmer DA as Norwegian Counsel to the Official Committee of Unsecured Creditors, Effective October 6, 2017* [Docket No. 790] (the "Selmer Retention Order").[34]

213.      In the Selmer Retention Application, Advokatfirmaet Selmer DA ("Selmer") describes its services as Norwegian counsel to the Committee as advising the Committee on litigation, insolvency, restructuring, corporate, and regulatory matters concerning Norwegian law.  *See* Selmer Retention Application, ¶ 7.

### 1.    Selmer Interim Fee Application

214.      On March 12, 2018, Selmer filed the *First Interim Application of Advokatfirmaet Selmer DA for Allowance of Compensation for Services Rendered as Counsel to the Official Committee of Unsecured Creditors for the Period from October 6, 2017 through December 31, 2017* [Docket No. 1068] (as amended, the "Selmer Interim Fee Application").  In the Selmer

---

[34] The Selmer Retention Order amended the *Order Approving Application for Approval of the Employment of Advokatfirmaet Selmer DA as Norwegian Counsel to the Official Committee of Unsecured Creditors, Effective October 6, 2017* [Docket No. 446].

Interim Fee Application, Selmer seeks approval of fees of NOK[35] 2,237,560.00 (approximately $275,087.29)[36] and expenses of NOK 241.00 (approximately $29.63).

215.    In the Selmer Interim Fee Application, Selmer indicates its timekeepers performed 620.40 hours of services at a blended rate of NOK 3,609.81 per hour for all professionals.  *See* Selmer Interim Fee Application, at 2.

216.    On April 23, 2018, the Fee Examiner and his counsel participated in the Interim Fee Conference with Selmer to discuss the Selmer Interim Fee Application.  The Fee Examiner and his counsel presented their observations regarding Selmer's compliance with the Review Guidelines in the Selmer Interim Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.  Specifically, the Fee Examiner and his counsel identified certain of Selmer's time entries that:   (1) had numerous professionals attending hearings, meetings, or conference calls; (2) did not include sufficient detail; (3) had partners or high billing professionals perform work that associates or lower billing rate professionals could perform; and (4) had blocked billed or lumped time entries..  Following the Initial Conference, Selmer provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Initial Conference.

217.    The Fee Examiner and Selmer continued to discuss the Selmer Interim Fee Application.  To facilitate continued discussions regarding the Selmer Interim Fee Application and in light of the deadline for final fee applications in the Chapter 11 Cases, Selmer and the Fee Examiner agreed to continue the hearing on the Selmer Fee Application until the hearing on

---

[35] The Selmer Fee Application states:  "Rates are charged in Norwegian Kroner ("NOK").  For the purposes of this fee application, estimates have been provided in U.S. dollars at the exchange rate of USD/NOK 8,134."  *See* Selmer Fee Application, at 1 n.2.

[36] On the coversheet to the Selmer Fee Application, Selmer indicates that the fees requested in its Fee Application total $275,087.29.  *See* Selmer Fee Application, at 1.  In its "Summary of Compensation Requested by Project Category," Selmer indicates that the fees requested in its Fee Application total $278,613.23.  *See* Selmer Fee Application, at 30.

Selmer's final fee application.  Pending the hearing on Selmer's final fee application, the Fee Examiner consented to the payment of the Holdback Disbursement to Selmer.

### 2.  **Selmer Final Fee Application**

218.    On June 1, 2018, Selmer filed the *Final Fee Application of Advokatfirmaet Selmer DA for Allowance of Compensation for Services Rendered as Counsel to the Official Committee of Unsecured Creditors for the Period from October 6, 2017 through April 17, 2018* [Docket. No. 1313] (the "Selmer Final Fee Application").  In the Selmer Final Fee Application, Selmer sought approval of fees of NOK 3,048,660.00 (approximately $374,804.52) and expenses of NOK 723.00 (approximately $88.89) for the Final Fee Period.

219.    In the Selmer Interim Fee Application, Selmer indicates its timekeepers performed 225.60 hours of services at a blended rate of NOK 3,595.30 (approximately $442.03) per hour for all professionals for the Final Fee Period.  *See* Selmer Final Fee Application, at 11.

220.    On August 3, 2018, the Fee Examiner and his counsel participated in the Final Fee Conference with Selmer to discuss the Selmer Final Fee Application.  The Fee Examiner and his counsel presented their observations regarding Selmer's compliance with the Review Guidelines in the Selmer Final Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.   Specifically, the Fee Examiner and his counsel identified certain of Selmer's time entries that:  (1) did not include sufficient detail; or (2) included significant time for preparing the Selmer Final Fee Application.

221.    Following the Final Fee Conference, Selmer provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Final Fee Conference.  As a result of these discussions, Selmer offered and the Fee Examiner accepted a negotiated adjustment of $5,350.00 for fees and expenses incurred in the Final Fee Period.  The negotiated

adjustment resolves the concerns of the Fee Examiner regarding the Selmer Final Fee Application, and the Fee Examiner does not object to an order approving the Selmer Final Fee Application.

       *v.*     *FTI Consulting, Inc.*

222.     On October 27, 2017, the Committee filed the *Application for Entry of an Order Authorizing the Employment and Retention of FTI Consulting, Inc., as Financial Advisor to the Official Committee of Unsecured Creditors* Nunc Pro Tunc *to September 28, 2017* [Docket No. 336] (the "FTI Retention Application").  On November 29, 2017, the Court entered the *Amended Order Authorizing Retention of FTI Consulting, Inc. as Financial Advisor for the Official Committee of Unsecured Creditors* Nunc Pro Tunc *to September 28, 2017* [Docket No. 784] (the "FTI Retention Order").[37]

223.     In the FTI Retention Application, FTI Consulting, Inc. ("FTI") describes its services as financial advisor to the Committee as follows:

- assisting in the review of financial related disclosures, including the Debtors' Schedules of Assets and Liabilities, Statement of Financial Affairs and Monthly Operating Reports;

- assisting in the preparation of analyses required to assess any proposed use of cash collateral, including assessment and monitoring of the Debtors' short-term cash flow,  liquidity, and operating needs;

- assisting with the review of any proposed key employee retention and other employee benefit programs;

- assisting with the review of the Debtors' long-term financial projections, including cash generating capacity and identification of potential cost savings, including overhead and operating expense reductions and efficiency improvements;

- assisting in the review of the claims reconciliation and claims estimation process, including  an entity and priority level assessment of claims;

---

[37] The FTI Retention Order amended the *Order Authorizing Retention of FTI Consulting, Inc. as Financial Advisor for the Official Committee of Unsecured Creditors* Nunc Pro Tunc *to September 28, 2017* [Docket No. 438].

- assisting in the review and analysis of the Debtors' intercompany activities and claims;

- assisting in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers;

- assisting in the review of all pre-petition transactions;

- assisting in the review and/or preparation of information and analysis necessary for the confirmation of any disclosure statement and plan of reorganization in these chapter 11 proceedings; and

- assisting in the prosecution of Committee responses/objections to the Debtors' motions, including attendance at depositions and provision of expert reports/testimony on case issues as required by the Committee.

See FTI Retention Application, ¶ 10.

### 1. **FTI Interim Fee Application**

224.    On March 12, 2018, FTI filed the *First Interim Fee Application of FTI Consulting, Inc., for Compensation for Services and Reimbursement of Expenses as Financial Advisor to the Official Committee of Unsecured Creditors for the Period from September 28, 2017 through December 31, 2017* [Docket No. 1069] (the "FTI Interim Fee Application").  In the FTI Interim Fee Application, FTI seeks approval of fees of $2,877,421.50 and expenses of $68,777.38.  In the FTI Interim Fee Application, FTI indicates that it voluntarily adjusted its fees by $7,389.00 and its expenses by $994.57 for the First Interim Fee Period.  *See* FTI Interim Fee Application, at 4 n.1.

225.    In the FTI Interim Fee Application, FTI indicates that its timekeepers performed 4,194.20 hours of work at a blended rate of $686.05 per hour for professionals.  *See* FTI Interim Fee Application, at 2.

226.    On April 24, 2018, the Fee Examiner and his counsel participated in the Interim Fee Conference with FTI to discuss the FTI Interim Fee Application.  The Fee Examiner and his counsel presented their observations regarding FTI's compliance with the Review Guidelines in

the FTI Interim Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses. Specifically, the Fee Examiner and his counsel identified certain of FTI's time entries that:  (1) had numerous professionals attending hearings, meetings, or conference calls; (2) did not include sufficient detail; and (3) had blocked billed or lumped time entries..   Additionally, the Fee Examiner and his counsel identified certain expense items that were vague, improperly billed, or exceeded the Expense Rubric. Following the Interim Fee Conference, FTI provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Initial Conference.

227.    The Fee Examiner and FTI continued to discuss the FTI Interim Fee Application. To facilitate continued discussions regarding the FTI Interim Fee Application and in light of the deadline for final fee applications in the Chapter 11 Cases, FTI and the Fee Examiner agreed to continue the hearing on the FTI Interim Fee Application until the hearing on FTI's final fee application.  Pending the hearing on FTI's final fee application, the Fee Examiner consents to the payment of the Holdback Disbursement to FTI.

### 2.  **FTI Final Fee Application**

228.    On June 1, 2018, FTI filed the *Final Fee Application of FTI Consulting, Inc., for Compensation for Services and Reimbursement of Expenses as Financial Advisor to the Official Committee of Unsecured Creditors for the Period from September 28, 2017 through April 17, 2018* [Docket No. 1315] (the "FTI Final Fee Application").  In the FTI Final Fee Application, FTI sought approval of fees of $4,619,047.75 and expenses of $125,657.90 for the Final Fee Period.  In the FTI Final Fee Application, FTI indicates that it voluntarily adjusted its fees by an additional $1,567.00 for the Final Fee Period.  *See* FTI Final Fee Application, at 4.

229.     In the FTI Final Fee Application, FTI indicates that its timekeepers performed 6,641.2 hours of work at a blended rate of $695.51 per hour for professionals for the Final Fee Period.  *See* FTI Final Fee Application, at 1.

230.     On July 25, 2018, the Fee Examiner and his counsel participated in the Final Fee Conference with FTI to discuss the FTI Final Fee Application.  The Fee Examiner and his counsel presented their observations regarding FTI's compliance with the Review Guidelines in the FTI Final Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.   Specifically, the Fee Examiner and his counsel identified certain of FTI's time entries that:  (1) had numerous professionals attending hearings, meetings, or conference calls; and (2) did not include sufficient detail.   Additionally, the Fee Examiner and his counsel identified certain expense items that were vague, improperly billed, or exceeded the Expense Rubric.

231.     Following the Final Fee Conference, FTI provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Final Fee Conference.  As a result of these discussions, FTI offered and the Fee Examiner accepted a negotiated adjustment its fees and expenses by $50,000.00 for fees and expenses incurred in the Final Fee Period.  The negotiated adjustment resolves the concerns of the Fee Examiner regarding the FTI Final Fee Application, and the Fee Examiner does not object to an order approving the FTI Final Fee Application.

         *vi.*     *Machado, Meyer, Sendacz e Opice Advogados*

232.     On December 1, 2017, the Committee filed the *Application for Approval of the Employment of Machado, Meyer, Sendacz e Opice Advogados as Brazilian Counsel to the Official Committee of Unsecured Creditors, Effective as of November 7, 2017* [Docket No. 778] (the "Machado Retention Application").  On December 19, 2017, the Court entered the *Order*

*Application for Approval of the Employment of Machado, Meyer, Sendacz e Opice Advogados as*
*Brazilian Counsel to the Official Committee of Unsecured Creditors, Effective as of November 7,*
*2017* [Docket No. 836] (the "Machado Retention Order").

233.    In the Machado Retention Application, the Committee states that it required the
services of  Machado, Meyer, Sendacz e Opice ("Machado") as Brazilian counsel to "advise the
Committee on the prospects of a litigation pending in Brazil concerning the flag status of non-
Debtor subsidiary Seabras Servicos de Petroleo, S.A.'s vessel, Sapura Esmeralda."  *See* Machado
Retention Application, ¶ 6.

234.    On June 1, 2018, Machado filed *the Final Application of Machado, Meyer,*
*Sendacz E Opice Advogados for Allowance of Compensation for Services Rendered as Brazilian*
*Counsel to the Official Committee of Unsecured Creditors for the Period from November 7, 2017*
*through January 31, 2018* [Docket No. 1316] (the "Machado Final Fee Application").   In the
Machado Final Fee Application, Machado sought approval of fees of $76,953.34 for the Final
Fee Period.

235.    In the Machado Final Fee Application, Machado indicates that its timekeepers
performed 194.70 hours of work at a blended rate of $395.24 per hour for professionals for the
Final Fee Period.  *See* Machado Final Fee Application, at 1.

236.    On August 3, 2018, the Fee Examiner and his counsel participated in the Final
Fee Conference with Machado to discuss the Machado Final Fee Application.   The Fee
Examiner and his counsel presented their observations regarding Machado's compliance with the
Review Guidelines in the Machado Final Fee Application.   The Fee Examiner and his counsel
also raised questions regarding certain time entries and expenses.     Specifically, the Fee

Examiner and his counsel identified certain of Machado's time entries that: (1) did not include sufficient detail; and (2) had blocked billed or lumped time entries.

237.    Following the Final Fee Conference, Machado provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Final Fee Conference. As a result of these discussions, Machado offered and the Fee Examiner accepted a negotiated adjustment of $1,855.00 for fees and expenses incurred in the Final Fee Period. The negotiated adjustment resolves the concerns of the Fee Examiner regarding the FTI Final Fee Application, and the Fee Examiner does not object to an order approving the FTI Final Fee Application.

>   *vii.    Patton, Moreno & Asvat*

238.    On November 11, 2017, the Committee filed the *Application for Approval of the Employment of Patton, Moreno & Asvat as Panamanian Counsel to the Official Committee of Unsecured Creditors, Effective as of October 18, 2017* [Docket No. 441] (the "<u>PMA Retention Application</u>"). On December 1, 2017, the Court entered the *Order Approving Application for Approval of the Employment of Patton, Moreno & Asvat as Panamanian Counsel to the Official Committee of Unsecured Creditors, Effective as of October 18, 2017* [Docket No. 782] (the "<u>PMA Retention Order</u>").

239.    In the PMA Retention Application, the Committee states that it required the services of Patton, Moreno & Asvat ("<u>PMA</u>") as Panamanian counsel to advise the Committee on Panamanian law. *See* PMA Retention Application, ¶ 6.

240.    On June 1, 2018, PMA filed the *First and Final Fee Application of Patton, Moreno & Asvat for Allowance of Compensation for Services Rendered as Panamanian Counsel to the Official Committee of Unsecured Creditors for the Period from October 18, 2017 through April 17, 2018* [Doc. No. 1317] (the "<u>PMA Final Fee Application</u>"). In the PMA Final Fee

Application, PMA sought approval of fees of £15,165.00 (approximately $21,483.00) and expenses of £180.00 (approximately $253.80) for the Final Fee Period.

241.    In the PMA Final Fee Application, PMA indicates that its timekeepers performed 69 hours of work at a blended rate of £220.80 (approximately $311.34) per hour for professionals for the Final Fee Period. *See* PMA Final Fee Application, at 1.

242.    The PMA Final Fee Application did not include detailed time entries. The Fee Examiner and his counsel, therefore, were unable to initially review the PMA Final Fee Application for compliance with the Review Guidelines.

243.    Counsel to the Fee Examiner engaged in correspondence with PMA to obtain Fee Details related to the PMA Final Fee Application. On August 15, 2018, the Fee Examiner and his counsel participated in the Final Fee Conference with PMA to discuss the PMA Final Fee Application.  The Fee Examiner and his counsel presented their observations regarding PMA's compliance with the Review Guidelines in the PMA Final Fee Application.

244.    As a result of these discussions, PMA offered and the Fee Examiner accepted a negotiated adjustment its fees and expenses by $2,000.00 for the Final Fee Period.  The negotiated adjustment resolves the concerns of the Fee Examiner regarding the PMA Final Fee Application. The Fee Examiner therefore does not object to the entry of an order approving the PMA Final Fee Application.

  *viii.    Quinn Emanuel Urquhart & Sullivan UK LLP*

245.    On November 1, 2017, the Committee filed the *Application for Approval of the Employment of Quinn Emanuel Urquhart & Sullivan, UK LLP as English Counsel to the Official Committee of Unsecured Creditors, Effective as of October 16, 2017* [Docket No. 399] (the "Quinn Retention Application").  On November 29, 2017, the Court entered the *Amended Order Approving Application for Approval of the Employment of Quinn Emanuel Urquhart & Sullivan,*

*UK LLP as English Counsel to the Official Committee of Unsecured Creditors, Effective as of October 16, 2017* [Docket No. 791] (the "Quinn Retention Order").[38]

246.    In the Quinn Retention Application, the Committee states that it required the services of Quinn Emanuel Urquhart & Sullivan UK LLP ("Quinn") as English counsel because "[n]umerous documents related to the [Debtors' prepetition secured debt facilities] purport to be governed by English law [and] certain of the Debtors are incorporated in the United Kingdom." *See* Quinn Retention Application, ¶ 6.

247.    On June 12, 2018,[39] Quinn filed the *Amended First and Final Application Quinn Emanuel Urquhart and Sullivan UK LLP for Allowance of Compensation for Services Rendered as English Counsel to the Official Committee of Unsecured Creditors for the Period from October 16, 2017 through January 31, 2018* [Docket No. 1370] (the "Quinn Final Fee Application").  In the Quinn Final Fee Application, Quinn sought approval of fees of $97,172.00 and expenses of $284.52 for the Final Fee Period.

248.    In the Quinn Final Fee Application, Quinn indicates that its timekeepers performed 95.00 hours of work at a blended rate of $1,117.00 per hour for professionals and $315.00 per hour for paraprofessionals for the Final Fee Period.  *See id.*

249.    On August 9, 2018, the Fee Examiner and his counsel participated in the Final Fee Conference with Quinn to discuss the Quinn Final Fee Application.  The Fee Examiner and his counsel presented their observations regarding Quinn's compliance with the Review

---

[38] The Quinn Retention Order amended the *Order Approving Application for Approval of the Employment of Quinn Emanuel Urquhart & Sullivan, UK LLP as English Counsel to the Official Committee of Unsecured Creditors, Effective as of October 16, 2017* [Docket No. 447] entered on November 9, 2017.

[39] On June 1, 2018, Quinn timely filed the *First and Final Fee Application of Quinn Emanuel Urquhart and Sullivan UK LLP for Allowance of Compensation for Services Rendered as English Counsel to the Official Committee of Unsecured Creditors for the Period from October 16, 2017 through January 31, 2018* [Docket No. 1319] (the "Original Quinn Final Fee Application").  Although Quinn timely filed the Original Quinn Final Fee Application, such application was missing "certain exhibits which were inadvertently omitted in the original filing."  *See* Quinn Final Fee Application, p. 3, n.2.

Guidelines in the Quinn Final Fee Application.  The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.   Specifically, the Fee Examiner and his counsel identified certain of Quinn's time entries that:  (1) did not include sufficient detail; and (2) had blocked billed or lumped time entries.

250.    Following the Final Fee Conference, Quinn provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Final Fee Conference. As a result of these discussions, Quinn offered and the Fee Examiner accepted a negotiated adjustment of $6,000.00 for fees and expenses incurred in the Final Fee Period.  The negotiated adjustment resolves the concerns of the Fee Examiner regarding the Quinn Final Fee Application, and the Fee Examiner does not object to an order approving the Quinn Final Fee Application.

ix.    *Zuill & Co*

251.    On November 1, 2017, the Committee filed the *Application for Approval of the Employment of Zuill & Co as Bermuda Counsel to the Official Committee of Unsecured Creditors, Effective as of October 9, 2017* [Docket No. 395] (the "Zuill Retention Application"). On November 29, 2017, the Court entered the *Amended Order Approving Application for Approval of the Employment of the Employment of Zuill & Co as Bermuda Counsel to the Official Committee of Unsecured Creditors, Effective as of October 9, 2017* [Docket No. 789] (the "Zuill Retention Order").[40]

252.    In the Zuill Retention Application, the Committee states that it required the services of Zuill & Co ("Zuill") as Bermuda counsel because "[i]n connection with that investigation as well as during the course of the Chapter 11 cases, the Committee will require the

---

[40] The Zuill Retention Order amended the *Order Approving Application for Approval of the Employment of Zuill & Co. as Bermuda Counsel to the Official Committee of Unsecured Creditors, Effective as of October 16, 2017* [Docket No. 439] entered on November 9, 2017.

expertise in the laws of Bermuda as certain of the Debtors are Bermuda companies." *Zuill Retention Application*, ¶ 6.

253.    On June 1, 2018, Zuill filed the *First and Final Application of Zuill & Co for Allowance of Compensation for Services Rendered as Bermuda Counsel to the Official Committee of Unsecured Creditors for the Period from October 9, 2017 through April 17, 2018* [Docket No. 1314] (the "Zuill Final Fee Application").  In the Zuill Final Fee Application, Zuill sought approval of fees of $211,010.00 and expenses of $5,158.00 for the Final Fee Period.

254.    In the Zuill Final Fee Application, Zuill indicates that its timekeepers performed 299.60 hours of work at a blended rate of $650.00 per hour for professionals for the Final Fee Period.  *See* Zuill Final Fee Application, at 1.

255.    On August 6, 2018, the Fee Examiner and his counsel participated in the Final Fee Conference with Zuill to discuss the Zuill Final Fee Application.  The Fee Examiner and his counsel presented their observations regarding Zuill's compliance with the Review Guidelines in the Zuill Final Fee Application.   The Fee Examiner and his counsel also raised questions regarding certain time entries and expenses.   Specifically, the Fee Examiner and his counsel identified certain of Zuill's time entries that (1) did not include sufficient detail; and (2) were for invoicing tasks.

256.    Following the Final Fee Conference, Zuill provided the Fee Examiner and his counsel with additional information pertaining to the matters raised in the Final Fee Conference.  As a result of these discussions, Zuill offered and the Fee Examiner accepted a negotiated adjustment of $2,000.00 for fees and expenses incurred in the Final Fee Period.  The amount of this adjustment resolves the concerns of the Fee Examiner regarding the Zuill Final Fee

Application. The Fee Examiner therefore does not object to the entry of an order approving the Zuill Final Fee Application.

## **Conclusion**

257.    The Fee Examiner and his counsel reviewed fees and expenses requested by twenty-two (22) Retained Professionals.  After such review, the Fee Examiner and his counsel engaged in conferences with each Retained Professional to discuss any concerns, findings, or questions regarding the respective fee application.  Pursuant to these discussions, the Fee Examiner reached consensual resolution on proposed negotiated adjustments for all of the Retained Professionals for an aggregate savings to the estate of $1,171,722.60 for fees and expenses incurred in the Final Fee Period.

258.    Eight (8) of the Retained Professionals also provided certain voluntary adjustments as reflected in their respective Fee Applications.  The aggregate amount of these voluntary adjustments is $2,678,995.47 for fees and expense incurred in the Final Fee Period. The negotiated adjustments and the voluntary adjustments resulted in a total savings to the estate of $3,850,718.07[41] for services performed during the Chapter 11 Cases. The total adjustment summary is detailed in **Exhibit A**.  These cumulative adjustments resolve the concerns of the Fee Examiner regarding the Final Fee Applications.  The Fee Examiner does not object to entry of orders approving all of the Final Fee Applications.

Dated:  August 16, 2018

By: */s/ Charles A. Beckham, Jr.*
Charles A. Beckham, Jr., Fee Examiner

- and -

**HAYNES AND BOONE, LLP**

By: */s/ Arsalan Muhammad*
Arsalan Muhammad
Texas State Bar No.  24074771
Kelli S. Norfleet
Texas State Bar No.  24070678
Martha Wyrick
Texas State Bar No. 24101606
Kelsey Zottnick
Texas State Bar No. 24102687
1221 McKinney Street, Suite 2100
Houston, Texas 77010
Telephone:  713-547-2000
Facsimile:  713-547-2600
E-mail:  arsalan.muhammad@haynesboone.com
kelli.norfleet@haynesboone.com
martha.wyrick@haynesboone.com
kelsey.zottnick@haynesboone.com

**COUNSEL FOR THE FEE EXAMINER**

---

[41] This figure does not included any adjustments the Debtors were able to negotiate with the Non-Estate Retained Professionals.

**Exhibit A**

**Summary of Final Fee Applications**

## Summary of Final Fee Applications[1]

| | Applicant | Fee Period | Final Fees Requested | Final Expenses Requested | Voluntary Adjustment | Negotiated Adjustment | Cumulative Adjustment |
|---|---|---|---|---|---|---|---|
| 1. | Alvarez & Marsal North America and Alvarez & Marsal Europe [Doc. No. 1304] | 09/13/2017 – 04/17/2018 | $11,953,967.50 | $1,236,768.45 | | $100,000.00 | $100,000.00 |
| 2. | Baker Tilly Virchow Krause LLP [Doc. No. 1307] | 09/12/2017 – 02/28/2018 | $5,146,687.50 | $13,701.65 | $703,390.55 | $100,000.00 | $803,390.55 |
| 3. | Cole Schotz P.C. [Doc. No. 1312] | 09/28/2017 – 04/17/2018 | $1,038,376.00 | $28,625.26 | $40,417.11 | $40,000.00 | $80,417.11 |
| 4. | Conyers Dill & Pearman Limited [Doc. No. 1305] | 09/13/2017 – 04/17/2018 | $815,631.25 | $105,440.51 | | $11,651.10 | $11,651.10 |
| 5. | Ernst & Young LLP [Doc. No. 1292] | 09/12/2017 – 04/17/2018 | 4,036,727.16 | $424,973.84 | $34,663.19 | $80,000.00 | $114,663.19 |
| 6. | FTI Consulting, Inc. [Doc. No. 1315] | 09/28/2017 – 04/17/2018 | $4,619,047.75 | $125,657.90 | $9,951.07 | $50,000.00 | $59,951.07 |
| 7. | Houlihan Lokey Capital, Inc. [Doc. No. 1322] | 09/12/2017 – 04/17/2018 | $24,485,000.00 | $195,046.92 | | $52,193.80 | $52,193.80 |
| 8. | Jackson Walker LLP [Doc. No. 1329] | 09/12/2017 – 04/17/2018 | $476,872.00 | $158,975.01 | | $10,000.00 | $10,000.00 |
| 9. | Kirkland & Ellis LLP and Kirkland & Ellis International LLP [Doc. No. 1333] | 09/12/2017 – 04/17/2018 | $20,306,823.00 | $1,078,097.02 | $709,407.50 | $264,032.36 | $973,439.86 |
| 10. | KPMG LLP [Doc. No. 1321] | 09/12/2017 – 04/17/2018 | $2,037,544.35 | $92,731.22 | $38,246.78 | $10,500.00 | $48,746.78 |
| 11. | Kramer Levin Naftalis & Frankel LLP [Doc. No. 1331] | 09/27/2017 – 04/17/2018 | $11,524,232.25 | $516,063.50 | $453,678.63 | $160,000.00 | $613,678.63 |
| 12. | Machado, Meyer, Sendacz e Opice Advogados [Doc. No. 1316] | 11/07/2017 – 01/31/2018 | $76,953.34 | $0.00 | | $1,855.00 | $1,855.00 |
| 13. | Patton, Moreno & Asvat [Doc. No. 1317] | 10/18/2017 – 04/17/2018 | $21,483.00 | $253.80 | | $2,000.00 | $2,000.00 |
| 14. | Perella Weinberg Partners LP [Doc. No. 1318] | 10/05/2017 – 04/17/2018 | $1,228,296.25 | $18,134.94 | | $13,000.00 | $13,000.00 |
| 15. | PricewaterhouseCoopers LLP [Doc. No. 1335] | 09/12/2017 – 04/16/2018 | $6,126,586.02 | $106,871.56 | $689,240.64 | $25,000.00 | $714,240.64 |
| 16. | Quinn Emanuel [Doc. No. 1319] | 10/16/2017 – 01/31/2018 | $97,172.00 | $284.52 | | $6,000.00 | $6,000.00 |
| 17. | Advokatfirmaet Selmer DA [Doc. No. 1313] | 10/06/2017 – 04/17/2018 | $374,804.52 | $88.89 | | $5,350.00 | $5,350.00 |
| 18. | Skadden, Arps, Slate, Meagher & Flom LLP [Doc. No. 1338] | 09/12/2017 – 04/17/2018 | $2,369,145.46 | $832,239.24 | | $48,140.34 | $48,140.34 |
| 19. | Slaughter and May [Doc. Nos. 1060 & 1320] | 09/12/2017 – 12/31/2017 / 01/01/2018 – 04/17/2018 | $3,096,953.98 / $5,677,719.39 | $75,254.23 / $90,500.80 | | $170,000.00 | $170,000.00 |
| 20. | Advokatfirmaet Thommessen AS [Doc. Nos. 1334, 1336, and 1345] | 09/13/2017 – 04/17/2018 | $335,507.00 | $549.00 | | $20,000.00 $- | $20,000.00 |
| 21. | Willkie Farr & Gallagher LLP [Doc. No. 1310] | 09/13/2017 – 04/17/2018 | $112,530.00 | $168.15 | | $- | $- |
| 22. | Zuill & Co. [Doc. No. 1314] | 10/09/2017 – 04/17/2018 | $211,010.00 | $5,158.00 | | $2,000.00 | $2,000.00 |
| | | **TOTALS** | **$106,169,069.72** | **$5,105,584.41** | **$2,678,995.47** | **$1,171,722.60** | **$3,850,718.07** |

[1] All non-U.S. Dollar amounts herein have been converted to U.S. Dollars pursuant to the conversion rates provided in the relevant Final Fee Applications.

**Exhibit B**

**The Fee Examiner's Introductory Memorandum dated March 13, 2018**

**haynes**boone

# MEMORANDUM

### Date: March 13, 2018

**To:**       Retained Professionals - *In re Seadrill Limited, et al.*, Case No. 17-60079

**From:**    Charles A. Beckham, Jr., the Fee Examiner

**Subject:**  Fee Examiner Review

---

## Overview

On February 7, 2018, Seadrill Limited and certain of its affiliates (the "Debtors") filed the *Debtors' Motion for Entry of an Order Appointing Fee Examiner and Establishing Procedures for Consideration of Requested Fee Compensation and Reimbursement of Expenses* [Doc. No. 963] (the "Motion"). On March 8, 2018, the Bankruptcy Court for the Southern District of Texas, Victoria Division (the "Court") granted the Motion and entered the *Order Appointing Fee Examiner and Establishing Procedures for Consideration of Requested Fee Compensation and Reimbursement of Expenses* [Doc. No. 1057] (the "Order").

Pursuant to the Order, the Court appointed me, Charles A. Beckham, Jr., as the Fee Examiner (the "Fee Examiner") in the Debtors' Chapter 11 Cases (the "Chapter 11 Cases") *nunc pro tunc* to February 1, 2018. Accordingly, on March 13, 2018, I filed the *Fee Examiner's Application for Entry of an Order Authorizing the Employment and Retention of Haynes and Boone LLP as Counsel to the Fee Examiner* Nunc Pro Tunc *to February 1, 2018]* [Doc. No. 1075] (the "Application"). The Application to employ Haynes and Boone LLP ("Haynes and Boone" or the "Firm") is currently pending the Court's approval.

The purpose of this memorandum is to introduce myself to you in my capacity as the Fee Examiner and explain my duties in the Chapter 11 Cases, request documents from the Professionals (as defined below) to aid my review, and provide a timeline regarding my review of requested compensation and expenses.

## Duties as Fee Examiner

My role as Fee Examiner, and Haynes and Boone's role as my proposed counsel, is to review fees and expenses requested by the following parties (each a "Professional," collectively, the "Professionals") according to procedures established in the Order and the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Doc.

**Haynes and Boone, LLP**
**Attorneys and Counselors**
1221 McKinney, Suite 2100
Houston, Texas 77010
Phone: 713.547.2000
Fax: 713.547.2600

haynes*boone*

No. 389] (the "<u>Interim Compensation Order</u>").  The Professionals whose fees and expenses I will review include:

- professionals in the Chapter 11 Cases requesting compensation and/or reimbursement of expenses for services rendered pursuant to sections 327, 328, 330, 331, or 1103 of title 11 of the United States Code (the "<u>Retained Professionals</u>");

- ordinary course professionals who are required to file formal fee applications under the *Order Authorizing the Employment and Compensation of Certain Professionals Utilized in the Ordinary Course of Business* [Docket No. 375], and the *Order Establishing Procedures for the Retention and Compensation of Committee Special-Purpose Professionals* [Docket No. 886]; and

- at the request of the Debtors, other requests for payment of professional fees by other parties in interest in these Chapter 11 cases.

In conducting these examinations, Haynes and Boone attorneys at my direction and I, will review the interim and final fee applications filed by each Professional (each an "<u>Application</u>," collectively, the "<u>Applications</u>").  To the extent possible, we will avoid duplicative review when reviewing final fee applications comprised of interim fee application requests that we have already reviewed.

**<u>Request for Certain Documents</u>**

To fulfill the responsibility of reviewing the Applications and preparing reports to the best of our ability, we need each professional's billing policy (if any) and engagement letter with their client.  To ensure expeditious processing of my review, by no later than **March 23, 2018**, please send these policies and engagement letter by email to the following individuals:

- The Fee Examiner, Charles A. Beckham, Jr.:  <u>charles.beckham@haynesboone.com</u>
- Counsel to the Fee Examiner, Kelli S. Norfleet:  <u>kelli.norfleet@haynesboone.com</u>
- Counsel to the Fee Examiner, Arsalan Muhammad: <u>arsalan.muhammad@haynesboone.com</u>

In addition, to supplement my review of the Applications, to the extent not included in the applicable Application, please include receipts for all expenses exceeding $500.00, and for all flights and hotels.

**<u>Timeline of the Review of the Applications</u>**

Professionals may file interim fee applications every three months commencing on the period ending on December 31, 2017 (each an "<u>Interim Fee Application</u>").  *See* Interim Compensation Order, pp. 3–4.  The Debtors and I anticipate that the Professionals may file most of the Interim Fee Applications for the first interim period (September 12, 2017 to December 31, 2017) in the first few weeks of March 2018.  For every interim period, the Court may hold a hearing on the Interim Fee Applications (each, a "<u>Fee Hearing</u>").  As of the date of this Memorandum, no Fee Hearing has been scheduled.

haynesboone

Generally, once a Professional files an Application, I have forty-five (45) days to serve the Professional with a report (each, an "Initial Report"). I am not required to file Initial Reports; I will serve Initial Reports in the exercise of my sole discretion. Once the Court sets a Fee Hearing, I have seven (7) days prior to the hearing to file a report with the Court (each, an "Examiner Report"). Any Professional may file a response to an Examiner Report within two (2) days of a Fee Hearing.

Within three (3) business days of filing monthly fee statements or Applications with the Court, the applicable Professional shall send the same in Adobe Acrobat and the fee detail containing the time entries and the expense detail in the LEDES electronic format to Kelli Norfleet, Arsalan Muhammad, and me at the email addresses listed above.

Please note, due to my recent appointment as the Fee Examiner and the high volume of Interim Fee Applications expected to be filed in the next few days and weeks, I may ask you for an extension of time to complete the review of your Interim Fee Application. Additionally, I may also seek a short continuance of any hearing on the Interim Fee Application.

**Conclusion**

Please let me know if you have any comments or questions about this memorandum or the fee review process generally.

| The Fee Examiner | Proposed Counsel to the Fee Examiner |
|---|---|
| Charles A. Beckham, Jr.<br>Haynes and Boone, LLP<br>1221 McKinney Street, Ste. 2100,<br>Houston, TX 77010<br>E-mail: charles.beckham@haynesboone.com<br>Phone: 713-547-2000 | Kelli S. Norfleet<br>Arsalan Muhammad<br>1221 McKinney Street, Ste. 2100,<br>Houston, TX 77010<br>E-mail: kelli.norfleet@haynesboone.com<br>        arsalan.muhammad@haynesboone.com<br>Phone: 713-547-2000 |